**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

SEP 13 2021

JEFFREY P. COLWELL
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.     21-CV-02140

(To be supplied by the court)

ERIC BRANDT , Plaintiff

v.

BENJAMIN GARCIA, KENNETH CHAVEZ,
DONNA STARR-GIMENO, JAMIE LUCERO, RYAN PHILLIPS,
BEVERLY RODRIGUEZ KRISTEN BRONSON,
MELISSA ORAZEN-SMITH, MARLEY BORDOVSKY,
PAUL PAZEN, BARBARA ARCHER, ELIZABETH SHARP,
CITY AND COUNTY OF DENVER

_____ , Defendant(s).

*(List each named defendant on a separate line. If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Section B. Do not include addresses here.)*

1ST AMENDED    **PRISONER COMPLAINT**

| NOTICE |
| --- |
| Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint. |

**A.    PLAINTIFF INFORMATION**

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address. Failure to keep a current address on file with the court may result in dismissal of your case.*

EOLIC BRANDT #191131 BENT COUNTY

(Name, prisoner identification number, and complete mailing address)

CORRECTIONAL FACILITY 11560 CR FF.75

(Other names by which you have been known)

LAS ANIMAS, CO 81654

*Indicate whether you are a prisoner or other confined person as follows: (check one)*

____    Pretrial detainee
____    Civilly committed detainee
____    Immigration detainee
__X__   Convicted and sentenced state prisoner
____    Convicted and sentenced federal prisoner
____    Other: (*Please explain*) _____

**B.    DEFENDANT(S) INFORMATION**

*Please list the following information for each defendant listed in the caption of the complaint. If more space is needed, use extra paper to provide the information requested. The additional pages regarding defendants should be labeled "B. DEFENDANT(S) INFORMATION."*

Defendant 1:    SEE ATTACHED

(Name, job title, and complete mailing address)

_____

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? ____ Yes ____ No (*check one*). Briefly explain:

_____

_____

Defendant 1 is being sued in his/her ____ individual and/or ____ official capacity.

2

Defendant 2: _____
(Name, job title, and complete mailing address)

_____

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? ___ Yes ___ No (*check one*).  Briefly explain:

_____

_____

Defendant 2 is being sued in his/her ___ individual and/or ___ official capacity.

Defendant 3: _____
(Name, job title, and complete mailing address)

_____

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? ___ Yes ___ No (*check one*).  Briefly explain:

_____

_____

Defendant 3 is being sued in his/her ___ individual and/or ___ official capacity.

## C.    JURISDICTION

*Indicate the federal legal basis for your claim(s): (check all that apply)*

X ___    42 U.S.C. § 1983 (state, county, and municipal defendants)

___    *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (federal defendants)

X ___    Other: (*please identify*) 42 §§ 1985, 1986, 1988
28 §§ 1 331, 1 367, 1391(b)

3

**D.    STATEMENT OF CLAIM(S)**

*State clearly and concisely every claim that you are asserting in this action. For each claim, specify the right that allegedly has been violated and state all facts that support your claim, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim. You do not need to cite specific legal cases to support your claim(s). If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s). Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

CLAIM ONE:    SEE ATTACHED

Supporting facts:

**E.    PREVIOUS LAWSUITS**

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? ___ Yes ___ No (*check one*).

*If your answer is "Yes," complete this section of the form. If you have filed more than one previous lawsuit, use additional paper to provide the requested information for each previous lawsuit. Please indicate that additional paper is attached and label the additional pages regarding previous lawsuits as "E. PREVIOUS LAWSUITS."*

Name(s) of defendant(s):    *VARIOUS*

Docket number and court:    *NOT AVAIL*

Claims raised:    *§1983*

Disposition: (is the case still pending?    *1. SETTLED*
has it been dismissed?; was relief granted?)    *OTHERS STILL PENDING*

Reasons for dismissal, if dismissed:    *NON EVER FOUND FRIVOLOUS*

Result on appeal, if appealed:    _____

**F.    ADMINISTRATIVE REMEDIES**

*WARNING: Prisoners must exhaust administrative remedies before filing an action in federal court regarding prison conditions. See 42 U.S.C. § 1997e(a). Your case may be dismissed or judgment entered against you if you have not exhausted administrative remedies.*

Is there a formal grievance procedure at the institution in which you are confined?

    ___X___ Yes ___ No (*check one*)

Did you exhaust administrative remedies?

    ___ Yes ___X___ No (*check one*)

*THIS SUIT DOES NOT RISE FROM CONDITIONS WHILE INCARCERATED*

5

**G.    REQUEST FOR RELIEF**

*State the relief you are requesting or what you want the court to do. If additional space is needed to identify the relief you are requesting, use extra paper to request relief. Please indicate that additional paper is attached and label the additional pages regarding relief as "G. REQUEST FOR RELIEF."*

SEE ATTACHED.

**H.    PLAINTIFF'S SIGNATURE**

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

_____
(Plaintiff's signature)

2021 SEP 09
_____
(Date)

(Form Revised December 2017)

6

# TABLE OF CONTENTS

| SECTION | PAGE # |
|---|---|
| - CLAIMS MATRIX | 8 |
| B. DEFENDANTS' INFORMATION | 9 |
| C. JURISDICTION AND VENUE | 16 |
| D. STATEMENTS OF FACT | 17 |
| INTRODUCTION | 17 |
| MONELL (MUNICIPAL) LIABILITY | 20 |
| GENERALLY | 20 |
| PUNISHING INSULTS | 29 |
| LEVERAGE PRIVATE CITIZENS | 42 |
| CLASS DISCRIM & CITIZEN RECORDERS | 55 |
| CLASS DISCRIM & "OCCUPY DENVER" | 75 |
| THE INSTANT MATTER EVENTS | 81 |
| OVERVIEW | 81 |
| THE FACTS IN DETAIL | 85 |
| I FIRST CONTACT | 85 |
| II GARCIA GOES BERZERK | 104 |
| III DAMAGE CONTROL / COVER-UP | 117 |
| IV FAILURE TO TRAIN / SUPERVISE | 124 |
| CLAIMS FOR RELIEF | 130 |
| I EQUAL PROTECTION #1 (CLASS OF ONE) | 132 |
| II SEIZURE #1 - WALLET | 134 |
| III ~~SEIZURE~~ SEARCH - WALLET | 136 |
| IV SEIZURE #2 - IDENTIFICATION | 138 |
| V SEIZURE #3 - EXCESSIVE FORCE | 141 |
| VI FALSE REPORTING | 144 |
| VII 5TH AMEND RETALIATION | 147 |
| VIII SEIZURE #4 - FALSE ARREST ⓑ | 149 |
| IX MALICIOUS PROSECUTION ① | 151 |
| X 1ST AMEND RETALIATION | 153 |
| XI CONSPIRACY / EQUAL PROT-CLASSES | 156 |
| XII SUPERVISORY LIABILITY | 158 |
| XIII FACIAL CHALLENGE - VIDEO BAN | 160 |
| E. PRAYER FOR RELIEF | 164 |

ⓑ AS-APPLIED CHALLENGE
PAGE 163

# CLAIMS MATRIX

**Legend:** √ = APPLIES  •  I = OFFICIAL CAPACITY  •  O = INDIVIDUAL CAPACITY  (I/O = both)

**Claim descriptions (columns):**
- • CLAIM DESCRIPTION
- I — MONELL (MUNICIPAL) LIABILITY
- # — EQUAL PROTECTION #1 / CLASS OF ONE
- II — SEIZURE #1 - WALLET
- III — SEARCH - WALLET
- IV — SEIZURE #2 / CONVERSION - IDENTIFICATION
- V — SEIZURE #3 / BATTERY / EXCESSIVE FORCE / ASSAULT
- VI — FALSE REPORTING / DEFAMATION
- VII — 5TH AMENDMENT
- VIII — SEIZURE #4 - FALSE ARREST (1)
- IX — MALICIOUS PROSECUTION (2)
- X — 1ST AMENDMENT RETALIATION
- XI — CONSPIRACY 1651 / EQUAL PROTECTION
- XII — SUPERVISORY LIABILITY
- XIII — CHALLENGE TO POLICE DEPT VIDEO BAN
- (1) — AS-APPLIED CHALLENGE JC§18-9-06 C.R.S.

## JURISDICTION

| Row | • | I | # | II | III | IV | V | VI | VII | VIII | IX | X | XI | XII | XIII | (1) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SUPPLEMENTAL 28 U.S.C. §1367 | | | | | | | √ | √ | | | | | | | | |
| 42 U.S.C. §1986 | | √ | | | | | | | | √ | √ | √ | √ | | | |
| 42 U.S.C. §1985 | | √ | | | | | | | | √ | √ | √ | | | | |
| 42 U.S.C. §1983 | √ | √ | √ | | | | | | | √ | √ | √ | √ | | | |

## VIOLATIONS

| Row | • | I | # | II | III | IV | V | VI | VII | VIII | IX | X | XI | XII | XIII | (1) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| STATE TORT | | √ | √ | | | | √ | √ | | | | √ | | √ | √ | |
| 14TH AMEND | | √ | √ | | | | √ | √ | | | | √ | | √ | √ | |
| 8TH AMEND | | | | | | | √ | | | | | | | | | |
| 5TH AMEND | | | √ | | | | | √ | √ | | | | | 正正 | | |
| 4TH AMEND | | √ | | | √ | √ | √ | | | √ | √ | | | 正正 | | |
| 1ST AMEND | √ | | | | | | | | | | | √ | | | √ | √ |

## DEFENDANTS

| # / NAME | • | I | # | II | III | IV | V | VI | VII | VIII | IX | X | XI | XII | XIII | (1) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 13 CITY AND COUNTY OF DENVER | O | | | O | O | O | O | | | O | O | O | O | O | O | O |
| 12 E. SHARP | | | | | | | | | | I | I | I | I | | | |
| 11 B. ARCHER | I/O | | | | | | | | | | | | I/O | I/O | I/O | I/O |
| 10 P. PAZEN | I/O | | | | | | | | | | | | I/O | I/O | I/O | |
| 9 M. BORDOVSKY | I/O | | | | | | | | | | | | I/O | I/O | | |
| 8 M. DRAZEN-SMITH | I/O | | | | | | | | | | | | I/O | I/O | I/O | |
| 7 K. BRONSON | I/O | | | | | | | | | | | | I/O | I/O | I/O | |
| 6 B. RODRIGUEZ | | | | | | | | I | I | I | I | I | I | I | | |
| 5 R. PHILLIPS | | | | | | | | | I | I | I/O | I/O | I/O | I/O | | I/O |
| 4 J. LUCERO | I/O | | | | | | | | I | I | I/O | I/O | I/O | I/O | | I/O |
| 3 D. STARR-GIMENO | I/O | | | | | I/O | I/O | I/O | I/O | I | I | I/O | I/O | I/O | | I/O |
| 2 K. CHAVEZ | I/O | | | | | | | | I | I | I/O | I/O | I/O | I/O | I/O | I/O |
| 1 B. GARCIA | | | I | I/O | I/O | I/O | I/O | I/O | I | I | I/O | I/O | I/O | I/O | | I/O |

(8)

B.  DEFENDANTS INFORMATION

DEFENDANT #1:  BENJAMIN GARCIA
                1331 N. CHEROKEE ST DENVER, CO 80205

BENJAMIN GARCIA IS A LAW ENFORCEMENT OFFICER
EMPLOYED BY THE CITY AND COUNTY OF DENVER,
BADGE #P00125, WHO WAS ACTING UNDER COLOR OF
STATE LAW AT ALL TIMES RELEVENT TO THIS
COMPLAINT, AND IS BEING SUED IN BOTH HIS
INDIVIDUAL AND OFFICIAL CAPACITIES.

DEFENDANT #2:  KENNETH CHAVEZ
                1331 N. CHEROKEE ST DENVER, CO 80205

KENNETH CHAVEZ IS A LAW ENFORCEMENT OFFICER
HOLDING THE RANK OF LIEUTENANT EMPLOYED BY THE
CITY AND COUNTY OF DENVER, BADGE # _____,
WHO WAS ACTING UNDER COLOR OF STATE LAW
AT ALL TIMES RELEVENT TO THIS COMPLAINT
AND IS BEING SUED IN HIS INDIVIDUAL AND
OFFICIAL CAPACITIES.

DEFENDANT #3:  DONNA STARR-GIMENO
                1331 N. CHEROKEE ST DENVER, CO 80205

DONNA STARR-GIMENO IS A LAW ENFORCEMENT OFFICER
HOLDING THE RANK OF LIEUTENANT EMPLOYED BY THE
CITY AND COUNTY OF DENVER, BADGE # P86005, WHO
WAS ACTING UNDER COLOR OF STATE LAW AT ALL
TIMES RELEVANT TO THIS COMPLAINT AND IS BEING

B. DEFENDANTS INFORMATION (CONTINUED).

SUED IN HER INDIVIDUAL AND OFFICIAL CAPACITIES.

DEFENDANT #4: JAIME E. LUCERO
1331 N. CHEROKEE ST DENVER, CO 80205

JAIME LUCERO IS A LAW ENFORCEMENT OFFICER HOLDING THE RANK OF SERGEANT EMPLOYED BY THE CITY AND COUNTY OF DENVER, BADGE #P98061, WHO WAS ACTING UNDER COLOR OF STATE LAW AT ALL TIMES RELEVANT TO THIS COMPLAINT AND IS BEING SUED IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES.

DEFENDANT #5: RYAN P. PHILLIPS
1331 N. CHEROKEE ST. DENVER, CO 80205

RYAN PHILLIPS IS A LAW ENFORCEMENT OFFICER HOLDING THE RANK OF POLICE OFFICER EMPLOYED BY THE CITY AND COUNTY OF DENVER, BADGE #P04106, WHO WAS ACTING UNDER FULL COLOR OF STATE LAW AT ALL TIMES RELEVANT TO THIS COMPLAINT AND IS BEING SUED IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES.

DEFENDANT #6: BEVERLY RODRIGUEZ
1331 N. CHEROKEE ST. DENVER, CO 80205
(720) 882-1147

BEVERLY RODRIGUEZ IS A SECURITY GUARD WORKING AS A SECURITY GUARD FOR THE CITY AND COUNTY

B. DEFENDANTS INFORMATION (CONTINUED).

OF DENVER WHO WAS ASSIGNED TO THE DENVER POLICE DEPARTMENT HEADQUARTERS AT ALL TIMES RELEVANT TO THIS COMPLAINT ACTING UNDER FULL COLOR OF STATE AUTHORITY. RODRIGUEZ, IN ADDITION TO BEING A PUBLIC SERVANT, ENGAGED IN SYMBIOTIC CONDUCT IN FURTHERANCE OF AN UNLAWFUL CONSPIRACY TO VIOLATE PLAINTIFFS RIGHTS WITH THE OTHER DEFENDANTS.

DEFENDANT #7: KRISTEN BRONSON (ATTY REG #: 28559   )
DENVER CITY ATTORNEY'S OFFICE
1937 BANNOCK ST ~~WELLINGTON WEB BUILDING~~
room 353   ~~100 WEST COLFAX (OR MAYBE 200 W. COLFAX?)~~
DENVER, CO 80202 DENVER, CO

KRISTEN BRONSON IS THE DENVER CITY ATTORNEY, AND AS SUCH IS THE ULTIMATE CHIEF LAW ENFORCEMENT OFFICIAL FOR THE CITY AND COUNTY OF DENVER. BRONSON WAS ACTING UNDER COLOR OF STATE LAW AT ALL TIMES RELEVANT TO THIS COMPLAINT AND IS BEING SUED IN HER INDIVIDUAL AND OFFICIAL CAPACITIES.

DEFENDANT #8: MELISSA DRAZEN-SMITH (ATTY REG #: 23161   )
MDS LEGAL CONSULTANT LLC
8700 E. JEFFERSON AVE
DENVER, CO 80237



B-4

B. DEFENDANTS INFORMATION (CONTINUED).

MELISSA DRAZEN-SMITH WAS, AT THE TIMES
RELEVANT TO THIS COMPLAINT, THE CHIEF
PROSECUTING ATTORNEY FOR THE CITY AND
COUNTY OF DENVER. DRAZEN-SMITH WAS
ACTING UNDER FULL COLOR OF STATE LAW
AT ALL TIMES RELEVANT TO THIS COMPLAINT
AND IS BEING SUED IN HER INDIVIDUAL AND
OFFICIAL CAPACITIES.

DEFENDANT #9: MARLEY BORDOVSKI (ATTY REG #: 23303 )
            DENVER CITY ATTORNEY'S OFFICE
            WELLINGTON WEB BUILDING
            201 WEST COLFAX AVE. DENVER, CO 80202

MARLEY BORDOVSKY WAS A LEAD PROSECUTING
            FOR THE CITY AND COUNTY OF DENVER
ATTORNEY, WHO REPLACED DRAZEN-SMITH AS
THE CHIEF PROSECUTING ATTORNEY DURING
THE PERIOD RELEVANT TO THIS COMPLAINT.
BORDOVSKY WAS ACTING UNDER FULL COLOR OF STATE
LAW AT ALL TIMES RELEVANT TO THIS COMPLAINT
AND IS BEING SUED IN HER INDIVIDUAL AND
OFFICIAL CAPACITIES.

DEFENDANT #10: PAUL M. PAZEN
            1331 N. CHEROKEE ST. DENVER, CO 80205

PAUL PAZEN IS A LAW ENFORCEMENT OFFICER



B. DEFENDANTS INFORMATION (CONTINUED).

EMPLOYED BY THE CITY AND COUNTY OF DENVER
AS THE DENVER POLICE CHIEF POSSESSING
POLICY MAKING AUTHORITY FOR THE DENVER
POLICE DEPARTMENT. PAZEN WAS ACTING
UNDER FULL COLOR OF STATE LAW AT ALL
TIMES RELEVANT TO THIS COMPLAINT AND
IS BEING SUED IN HIS INDIVIDUAL AND
OFFICIAL CAPACITIES.

DEFENDANT #11: BARBARA A. ARCHER
               1331 N. CHEROKEE ST. DENVER, CO 80205

BARBARA ARCHER IS A LAW ENFORCEMENT OFFICER
EMPLOYED BY THE CITY AND COUNTY OF DENVER
AS THE DEPUTY POLICE CHIEF FOR THE DENVER
POLICE DEPARTMENT POSSESSING POLICY MAKING
AUTHORITY. ARCHER WAS ACTING UNDER FULL
COLOR OF STATE LAW AT ALL TIMES
RELEVANT TO THIS COMPLAINT AND IS
BEING SUED IN HER INDIVIDUAL AND
OFFICIAL CAPACITIES.

DEFENDANT #12: ELIZABETH SHARP (ATTY REG # _____ )
               2ND JUDICIAL DISTRICT ATTORNEY'S OFFICE
               201 W. COLFAX AVE, DENVER, CO 80202

ELIZABETH SHARP IS A PROSECUTING ATTORNEY

 (3)

B- 6

B.   DEFENDANTS INFORMATION (CONTINUED).

EMPLOYED BY THE 2ND JUDICIAL DISTRICT
ATTORNEY'S OFFICE.   THE 2ND JUDICIAL DISTRICT
ATTORNEY IS THE CHIEF LAW ENFORCEMENT
OFFICE FOR DISTRICT ENCOMPASSING THE
CITY AND COUNTY OF DENVER.   SHARP WAS
ACTING UNDER FULL COLOR OF STATE LAW
AT ALL TIMES RELEVANT TO THIS COMPLAINT
FOR HER INVESTIGATIVE ROLL ADVISING POLICE
TO CHARGE PLAINTIFF WITH CRIMES AND IS
BEING SUED IN HER INDIVIDUAL AND OFFICIAL
CAPACITIES.

DEFENDANT #13; THE CITY AND COUNTY OF DENVER
("DENVER")

DEFENDANT DENVER IS A HOME-RULE MUNICIPALITY
UNDER ARTICLE XX§6 OF THE COLORADO CONSTITUTION
AND AS SUCH IS A POLITICAL SUBDIVISION OF
THE STATE OF COLORADO.   THE DENVER CITY
ATTORNEY'S OFFICE AND THE DENVER POLICE
DEPARTMENT ARE SUBDIVISIONS OF THE CITY
AND COUNTY OF DENVER.   DENVER'S, THE CITY
ATTORNEY'S OFFICE'S AND THE POLICE DEPARTMENT'S
CUSTOMS, POLICIES AND PRACTICES FORMED THE
MOVING FORCES THAT CAUSED DEPRIVATIONS
OF PLAINTIFF'S CIVIL RIGHTS, AND THUS IS

(14)

B-7

B. DEFENDANTS INFORMATION (CONTINUED).

A PROPER DEFENDANT PURSUANT TO 42 U.S.C. §1983.
DENVER IS RESPONSIBLE FOR THE POLICIES,
CUSTOMS AND PRACTICES OF IT'S SUBSIDIARY
DEPARTMENTS, INCLUDING THEIR FAILURE
TO PROPERLY TRAIN AND SUPERVISE.

— END OF SECTION B. DEFENDANTS INFORMATION —



INTENTIONALLY LEFT BLANK



C. JURISDICTION AND VENUE

This action arises under the Constitution and laws of the United States and is brought pursuant to 42 U.S.C. § 1983, and 42 U.S.C. § 1985.

Jursidiction is conferred on this Court pursuant to 28 U.S.C. § 1331.

This action also arises under General Tort: *PENDANT SUPPLEMENTAL JURISDICTION IS WITHIN THIS COURT'S DISCRETION PURSUANT TO 28 U.S.C. § 1367*

Jurisdiction supporting Plaintiff's claim for attorney fees and costs is conferred by 42 U.S.C. § 1988 in the event such fees become incurred.

Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b).

All of the events alleged herein occurred within the State of Colorado.

All of the parties were residents of the State of Colorado at the times relevant to the events giving rise to this Complaint.

16

# INTRODUCTION

## APOLOGY TO COURT

### AND PRAYER FOR INDULGENCE

THIS SUIT IS FOUNDED ON HUNDREDS OF FACTS SPANNING MORE THAN A DECADE. PLAINTIFF HAS MADE GREAT EFFORT TO ORGANIZE THESE FACTS IN A LOGICAL PATTERN. GREAT CARE HAS BEEN TAKEN TO AVOID REPETITION. PLAINTIFF HAS BEEN CRITICIZED BY THIS COURT FOR BEING "PROLIX", HOWEVER, PLAINTIFF IS NOW FACING POTENTIALLY DISPOSITIVE ADVERSE CONSEQUENCES FOR NOT ALLEGING SUFFICIENT FACTS IN THAT SAME PROCEEDING. PLAINTIFF IS NOT AN ATTORNEY. PLAINTIFF ASSERTS EACH OF THE FACTS PUT FORTH IN THIS COMPLAINT IS MATERIALLY RELEVANT TO THE CLAIMS AT HAND. PLAINTIFF IS AWARE OF THE LENGTHY PLEADING. UNFORTUNATELY, IT IS ALSO HAND-WRITTEN. PLAINTIFF HAS MADE GREAT EFFORT TO IMPROVE THE LEGIBILITY OF HIS HANDWRITING, AS TYPING IS NOT AN OPTION AT THIS TIME.

FOR THESE REASONS, PLAINTIFF APOLOGIZES FOR BOTH LENGTH AND HANDWRITING, AND RESPECTFULLY REQUESTS THIS COURT'S INDULGENCE.

## NATURE OF SUIT

THIS SUIT IS LOOSELY DERIVED FROM TWO PATHWAYS OF EVENTS. THE MOST DIRECT PATHWAY INVOLVES THE INCIDENT 2019AUG07 WHICH PRECIPITATED PLAINTIFF'S ARREST AND PROSECUTION. UNFORTUNATELY, THIS DISCRETE INCIDENT DID NOT OCCUR IN A CONVENIENT VACUUM. UNDERLYING THE VIOLATIONS OF THIS DISCRETE INCIDENT IS A RIVER OF UNDERCURRENTS WHICH AMPLIFIED THE INJURIES — AND ADDED MORE. THIS SECOND PATHWAY IS THE MORE COMPLICATED AND LESS DIRECT SERIES OF EVENTS WHICH REQUIRES THE MOST FACTS.

THE INSTANT CONDUCT OF DEFENDANTS RODRIGUEZ, GARCIA AND STAHL-GIMENO ON 2019AUG07 AS DESCRIBED IN ACTS I AND II ARE ALREADY RED. BUT THE ISSUES PUT FORTH IN ACTS III AND IV, AND AS DEVELOPED ALONG THE BACKDROP OF EVENTS PUT FORTH UNDER MONELL LIABILITY SECTIONS RENDER NOTHING LESS THAN A SOCIAL CATASTROPHE.

18

# ORGANIZATION

For years Denver has engaged in ever-escalating, direct targetted conspiracies to "GET ERIC BRANDT", among others. This suit is but an climax among many - both before and after the instant arrest. Plaintiff has compiled a "SHORT-LIST" of events containing more than 75 incidents spanning 11 years. Most of these events are indexed and described under the section "Monell Liability" in categories including a history of punishing citizens for insulting police (including plaintiff), a history of leveraging private citizens as tools to exact revenge thereof, a history of targeting and punishing citizens who record police, and a long-standing history targeting so-called "members of Occupy Denver".

These all lead into and form the foundation for the acts of 2019 Au.01. This instant matter is divided into 4 acts. Act I covers initial contact. Act II covers Garcia going violently berzerk. Act III involves the damage control/cover-up, and Act IV puts forth the supervisory liabilities.

Finally, claims I - XIII are stated against the backdrop of the facts alleged.

2. STATEMENT OF CLAIMS (CONTINUED)

# MONELL LIABILITY

1. THE CITY AND COUNTY OF DENVER HAS LONG-STANDING, WELL-ENTRENCHED, CUSTOMS, PRACTICES, AND IN SOME INSTANCES ACTUAL WRITTEN POLICIES TO COMMIT VIOLATIONS OF CITIZENS' RIGHTS IN THE MANNER AND OF THE GENRES DESCRIBED THROUGHOUT THIS COMPLAINT.

2. PLAINTIFF HAS COMPILED A DATABASE OF OVER 60 EVENTS DATING BACK TO 2009 IN WHICH HE HAS CLASSIFIED THE EVENTS GROUPING THEM INTO NUMEROUS RELEVANT CATEGORIES.

3. THERE IS KNOWN TO EXIST RECORDED FOOTAGE IN AT LEAST 83% OF THESE INCIDENTS.

4. PLAINTIFF ASSERTS IMPROPER, RETALIATORY MOTIVES TO BE A SUBSTANTIAL OR SOLE DRIVING FORCE BEHIND EACH INCIDENT IN AT LEAST 84% OF THE LIST.

5. IN AT LEAST 45% OF THESE EVENTS, ACTION INVOLVING DENVER'S TREATMENT OF THE HOMELESS COMMUNITY CAN BE DIRECTLY CONNECTED.

6. IN AT LEAST 44% OF EVENTS, OFFICIAL ACTION IN DIRECT RESPONSE TO INSULTS DIRECTED AT LAW ENFORCEMENT; 78% OF THESE INVOLVE THE WORD "FUCK"

7. OF THE EVENTS COMPILED, THE WORD

M-1

A. STATEMENT OF CLAIMS (CONTINUED)

"FUCK" IS A MOTIVATING FACTOR 39% OF THE TIMES.

8.      37% OF EVENTS OCCURRED ON, OR WERE DIRECTLY RELATED TO THE 16TH STREET MALL AND MEMBERS OF THE DOWNTOWN DENVER BUSINESS PARTNERSHIP. (THE KEY PLAYERS IN THE DRAFTING, LOBBYING, PASSAGE AND ENFORCEMENT OF THE LEGISLATIVE SUITE KNOWN AS "THE URBAN CAMPING BAN" WHICH CRIMINALIZES THE HOMELESS.)

9.      OPPOSITION AND RETALIATION ATTRIBUTED DIRECTLY TO THE PRESENCE AND USE OF CITIZEN CAMERAS EXISTS IN AT LEAST 35% OF INSTANCES.

10.      ALARMINGLY, CITIZEN-CREATED RECORDINGS MEMORIALIZED EVENTS WHICH DIRECTLY EXPOSED FRAUD AND FALSEHOODS COMMITTED BY PUBLIC OFFICIALS, DEPARTMENTS AND/OR OFFICERS IN AN ASTONISHING 21% OR MORE OF COMPILED EVENTS.

11.      ALSO DISTRESSING IS THE DIRECT improper USE OF "CIVILIANS" AS A VEHICLE TO "PROBABLE CAUSE" EMPLOYED TO TRY TO "LEGITIMIZE" RETALIATORY ADVERSE ACTIONS IN STUPEFYING 18% OF INTERACTIONS.

12.      BESIDES CATEGORICAL CLASSIFICATIONS SUCH AS LISTED ABOVE, PLAINTIFF'S COMPILATION ALSO

IV-2

(21)

Q. STATEMENT OF CLAIMS (CONTINUED)

ILLUMINATES A PATTERN OF INVOLVEMENT OF KEY LAW-ENFORCEMENT OFFICERS.

13.    OF PARTICULAR RELEVANCE TO THE INSTANT MATTER IS THE VERIFIABLE DIRECT PERSONAL INVOLVEMENT OF DEFENDANT LUCERO IN AT LEAST 10% OF EVENTS, AND DEFENDANT CHAVEZ IN A STAGGERING 29%.

14.    UPON INFORMATION AND BELIEF, CHAVEZ IS ACTUALLY INVOLVED IN MUCH MORE, BUT THE 29% FIGURE IS ONLY BASED UPON EVIDENCE ALREADY KNOWN TO PLAINTIFF.

15.    THAT A HIGH-RANKING LIEUTENANT WITH THE SINGLE LARGEST OF THE SIX DISTRICTS WITHIN THE CITY OF DENVER (DISTRICT 6) COULD BE PERSONALLY INVOLVED IN 29% OF EVENTS COMPILED IS ASTOUNDING.

16.    EVEN MORE ASTOUNDING IS THAT IN THE ELEVEN YEARS OF THE STUDY (2020 - 2009 = 11 YRS), DIRECT INVOLVEMENT BY CHAVEZ DOES NOT BECOME APPARENT IN PLAINTIFF'S RECORDS UNTIL 2018.

17.    AND IT IS ALMOST UNBELIEVABLE THAT THAT 72% OF ALL CHAVEZ INTERACTIONS INVOLVE BRANDT (PLAINTIFF) @ AND/OR LOMAX (BRANDT'S ASSOCIATE ARRESTED IN THIS INCIDENT WITH HIM).

18.    CHAVEZ IS ULTIMATELY INVOLVED IN 38% OF

M-3

0. STATEMENT OF CLAIMS (CONTINUED).

ALL EVENTS (18) OF 46) COMPILED SINCE 2018 - THE LAST TWO ~~OF~~ OF ELEVEN YEARS!

19.        OTHER PATTERNS OF OFFICERS' INVOLVEMENTS ALSO EMERGE THROUGH WHICH DEEP ROOTED ANIMUS AGAINST PLAINTIFF AND HIS ASSOCIATES, AND WELL ROOTED CUSTOMS TO RETALIATE AGAINST THEM EMERGE.

20.        IN FACT, PATTERNS EMERGE TARGETING NOT ONLY INDIVIDUALS (LOMBA: 22%), (BRANDT: 45%) (SEABANG: 21%), BUT ALSO CLASS DISCRIMINATIONS (CITIZENS WHO RECORD), (OCCUPY DENVER), AND ("THE RIGHT/WRONG KIND OF PROTESTORS" - WHERE BELONGING TO AT LEAST 1 JUDGE, "EXTINCTION REBELLION" ARE THE RIGHT PROTESTORS, AND "OCCUPY" ARE THE WRONG ONES!).

21.        FOR BREVITY OF COMPLAINT, NOT ALL OF THE MORE THAN 60 EVENTS ARE DESCRIBED IN THIS COMPLAINT, HOWEVER MANY ARE (PUT FORTH) WHICH ARE THE MOST ILLUMINATING TO SHOW LIABILITY TO THIS SUIT.

22.        IT MUST BE NOTED THAT DENVER'S MISCONDUCT IS NOT STRICTLY LIMITED TO PLAINTIFF AND HIS MOST WELL-KNOWN ASSOCIATES; THE LIST COMPILED EXPOSES AT LEAST SIXTEEN (16) DIFFERENT VICTIMS OF DENVER'S ABUSES, WHICH INVOLVE AT LEAST DOZENS OF DIFFERENT OFFICIALS.

187-4

Q. STATEMENT OF CLAIMS (CONTINUED)

23.      SOME OF THE ENUMERATED EVENTS OCCUR WELL AFTER THE EVENTS OF THE INSTANT MATTER, AND ARE PUT FORTH HEREIN TO DEMONSTRATE THE ONGOING AND IMMINENT THREAT OF FURTHER ABUSES AGAINST PLAINTIFF, HIS ASSOCIATES, OR MEMBERS OF VARIOUS CLASSES OF INDIVIDUALS.

24.      ON ~~___~~ 2020 , MARCY BRODUSKY TESTIFIED IN A HEARING INVOLVING DOZENS OF EMAIL RECORDS THE CITY PRODUCED RESPONSIVE TO SUBPOENA BY BRANDT'S DEFENSE COUNCIL. THE SUBPOENA DUCES TECUM COMPELLED THE CITY TO PRODUCE RECORDS RESPONSIVE TO THE QUESTION OF CITY ATTORNEY EMAILS RELATED TO ERIC BRANDT AND BRIAN LOMA. THE COURT REVIEWED THESE RECORDS IN CAMERA AND FOUND MANY OF THEM RELEVANT TO THE QUESTIONS RAISED BY THE DAILEY-SMITH EMAIL OF 2019.MAR.04. AS SUCH, THE COURT PERMITTED PLAINTIFF AND HIS COUNCIL TO EXAMINE THESE RECORDS, BUT JUDGED THEIR CONTENTS TO BE VIEWED ONLY, AND NEVER IN BRANDT'S POSSESSION. FURTHERMORE, JUDGE JACKSON FORBADE BRANDT FROM TAKING NOTES FROM, OR PUBLICALLY DISCLOSING THEIR CONTENTS. WHILE PLAINTIFF CANNOT, CONSISTENT WITH THAT ORDER REGARDING THE CRIMINAL PROSECUTION,

M-5

HE CAN, AND CERTAINLY DOES ASSERT, UPON
INFORMATION AND BELIEF, SUPPORTED BY THE
JUDGES OWN RECORD MADE IN OPEN COURT
THAT THE CITY DID PRODUCE A GREAT
NUMBER OF RECORDS IT FELT WERE
RESPONSIVE TO THE SUBPOENA, AND THE JUDGE
DID FIND MANY OF THEM TO BE OF SUFFICIENT
MERIT TO BE REVEALED TO DEFENSE,
ALBIET IN GASSED CIRCUMSTANCES. IT WAS
KRISTIN BRONSON WHO PRODUCED AND DEFENDED
THESE RECORDS. [EX 81]

✱ PAGES 26, 27 AND 28 WERE
RESERVED FOR THIS SECTION
BUT ARE NOT USED.

✱ PLEASE SKIP DIRECTLY TO
PAGE 29

A. STATEMENT OF CLAIMS (CONTINUED).

## PUNISHING INSULTS
### PUNISHING "CUSSING" (THE WORD "FUCK")

25. THE CITY AND COUNTY OF DENVER HAS A LONG-STANDING, WIDE-SPREAD PRACTICE AND CUSTOM OF PUNISHING CITIZENS FOR INSULTING COMMENTS.

26. DENVER HAS A PARTICULAR ISSUE WITH THE WORD "FUCK".

27. ON 2015SEP, BRANDT WAS FORCED TO LEAVE THE DOWNTOWN DETENTION CENTER LOBBY UNDER THREAT OF ARREST BY H.S.S. SECURITY AND DSD DEPUTY MELISSA CHAVEZ SIMPLY BECAUSE HE WAS WEARING A T-SHIRT EMBLAZONED WITH THE WORDS: "FUCK COPS". BRANDT CONTACTED CIVIL RIGHTS ATTY DAVID LANE WHO CONTACTED THE CITY ATTORNEY'S OFFICE. LANE INSTRUCTED BRANDT TO RETURN WHERE MS. CHAVEZ AND OTHER DEPUTIES INVITED HIM INSIDE UNDER DIRECTION OF CITY ATTORNEY. SIX YEARS LATER, AS DEMONSTRATED BY THE NEARLY 30 EVENTS IN PLAINTIFF'S DATABASE HEREIN, DESPITE THE CITY BEING AWARE AT LEAST BY THIS "FUCK COPS" SHIRT INCIDENT THERE WAS A SUBSTANTIAL RISK OFFICERS WOULD VIOLATE THE FIRST AMEND. BUT FAILED TO PROPERLY TRAIN AND SUPERVISE THEIR OFFICERS - A DIRE CONDITION WHICH PERSISTS TO THIS DAY. [EX 9]

29. On 2015-SEP ___, BRANDT WAS DRIVING A REMOTE CONTROL CAR WITH A STYROFOAM FLAG READING "FUCK COPS" ATTACHED TO THE TOP NEAR THE EXIT POINT OF "THE TASTE OF COLORADO". IT WAS CLOSING TIME ON THE LAST NIGHT AND SEVERAL DPD OFFICERS WERE STANDING TOGETHER. BRANDT DROVE FIGURE-EIGHT PATTERNS NEAR THEM AND MANY OBSERVERS LAUGHED AND TOOK VIDEO. EVENT SECURITY, A RETIRED DPD OFFICER, TOOK OBJECTION TO BRANDT'S DEMONSTRATION AND STOLE HIS CAR. WHEN BRANDT TRIED TO RECOVER HIS STOLEN CAR, HE DROPPED THE REMOTE CONTROL IN THE PROCESS. THE RETIRED COP PICKED UP THE REMOTE. ANOTHER OFFICER PEPPER-SPRAYED BRANDT IN THE EYES. THE RETIRED COP TACKLED BRANDT TO THE GROUND, PUT HIM IN A CHOKE HOLD, AND BEGAN BEATING BRANDT IN THE BACK OF THE HEAD WITH HIS REMOTE. BRANDT BIT THE MAN'S ARM TO BREAK FREE. THE NUMEROUS OFFICERS PRESENT, WITNESSING THE ENTIRE EVENT, DID NOTHING TO INTERVENE. A FEW DAYS LATER, DPD ISSUED A FELONY WARRANT FOR "ASSAULTING A RETIRED POLICE OFFICER". AFTER MONTHS OF PROSECUTION, HALO CAMERA FOOTAGE SURFACED EVIDENCING THAT BRANDT WAS NOT THE AGRESSOR AS THE OFFICERS HAD REPORTED, BUT WAS IN FACT THE VICTIM. CHARGES DISMISSED.[IOXIO]

I-2

(30)

29. ON 2016 SEP ___, WHILE ENGAGED IN A 24/7 PROTEST AT THE COURTHOUSE PLAZA, DPD CONDUCTED YET ANOTHER OF SOME 2-DOZEN RAIDS IN THE MIDDLE OF THE NIGHT. BRANDT STOOD BY THE FLAG POLES CHANTING "FUCK THE POLICE" AND HOLDING A LARGE "FUCK COPS" BANNER. SGT CONNOR HAD BRANDT ARRESTED AND CHARGED WITH OBSTRUCTING POLICE, CLAIMING BRANDT HAD APPROACHED THE OFFICERS TO INTERFERE WITH AN ARREST. DURING MOTIONS HEARING, CONNOR TESTIFIED THAT HALO FOOTAGE HAD BEEN PRESERVED, BUT NEVER PROVIDED TO DEFENSE. MIRACULOUSLY THE CITY ATTY SUDDENLY "FOUND" THE VIDEO, WHICH EVIDENCED THAT BRANDT HAD IN FACT NEVER INTERFERED. BRANDT SUBSEQUENTLY PREVAILED ON THE CHARGES. [IDX 11]

30. ON 2018 JUL 05, SUSAN GREENE WAS ARRESTED FOR PHOTOGRAPHING POLICE. (SEE # ___ .) WHEN SHE ASKED "ARE YOU FUCKING KIDDING ME", THE OFFICERS TOLD HER TO "ACT LIKE A LADY". THIS OBTUSE AND CHAUVINISTIC CONDUCT OBVIOUSLY BECAUSE THE OFFICERS WERE OFFENDED BY THE WORD "FUCK". [IDX 15].

31. ON 2018 SEP 23, BRIAN LOMA WAS ARRESTED AFTER SAYING "FUCK THE POLICE" AND "THESE FUCKERS" BY SGT GUZMAN, WITH THE CONCURRENCE OF DEFENDANT CHAVEZ. (SEE # ___). [IDX 17].

32. ALSO ON 2018 SEP 23, MIKEL WHITNEY WAS ALSO ARRESTED BY GUZMAN FOR "CUSSING IN PUBLIC"

FOR SAYING "I DID NOT TAKE A FUCKING PICTURE". [IDK 18]

33.  BOTH COMA AND WHITNEY HAD THEIR AFOREMENTIONED CHARGES DISMISSED IN 2019 JAN. BOTH FILED $1983 CLAIMS THROUGH KILMER, LANG, AND NEWMAN CASE NO 20-CV-02827.

34.  THE FOLLOWING DAY (ON 20180024) WHILE PROTESTING THE SEDARO, LOMA AND WHITNEY ARRESTS 2350, BRANDT WAS CARRYING A LARGE "FUCK COPS" FLAG AND CHANTING "FUCK THE POLICE" WHILE FLIPPING OFF A GROUP OF DPD OFFICERS - MANY OF WHOM HAD BEEN INVOLVED IN THE PREVIOUS DAYS' ARRESTS. CPL KITCHENS ANNOUNCED "UNFORTUNATELY, WE AS POLICE OFFICERS CANNOT BE OFFENDED; BUT IF A PRIVATE CITIZEN WOULD LIKE TO SIGN A COMPLAINT, I'LL BE HAPPY TO ARREST HIM." ONE DID. BRANDT WAS ARRESTED. BRANDT'S CHARGES WERE DISMISSED WITHIN THE WEEK, ALTHOUGH IT WOULD BE MONTHS BEFORE LOMA AND WHITNEY WOULD SEE RELIEF. DEFENDANT CHAVEZ WAS ALSO AWARE OF AND ENDORSED THIS ARREST. THE FACT THE CITY ATTY OFFICE IMMEDIATELY DISMISSED THIS CASE IS YET MORE EVIDENCE THE CITY KNEW THERE WAS SUBSTANTIAL RISK OFFICERS WOULD RETALIATE FOR INSULTING SPEECH. IT IS ALSO OBVIOUS DENVER POLICE ARE AWARE INSULTING THE

1-4                    (32)

POLICE WAS PROTECTED SPEECH, BUT THEY MISTAKENLY BELIEVED AND STILL BELIEVE THAT IF A PRIVATE CITIZEN IS "OFFENDED", THEN THEY CAN CIRCUMVENT THE LAW AND RETALIATE. THIS IS THE SAME IGNORANCE OF THE LAW AT THE CORE OF THE INSTANT MATTER. [10X 19]

35.    ON 2018 SEP 30 —, BRADE MIZRAHY WAS FILMING OPD GUZMAN, CPL CHAVEZ AND OTHER OPD OFFICERS HARASS AN ELDERLY MAN FOR SMOKING. WHEN THEY KICKED HIS CANE FROM UNDER HIM, MIZRAHY SPOKE UP AND INSULTED THEM. CPL CHAVEZ BELLY-BUMPED MIZRAHY REPEATEDLY (SEE A ___) [10X 25]

36.    ON 2018 NOV 04, BRANDT INSULTED CPL CHAVEZ WHO WAS ONCE AGAIN PERFORMING HIS SIGNATURE (SEE A ___) "BELLY BUMP" MOVES. CHAVEZ WENT BERZERK. [10X 27]

37.    FOLLOWING THE 2018 NOV 04 CHAVEZ INCIDENT, SGT GUZMAN, BEGAN TARGETTING BRANDT AND HIS ASSOCIATES VERY AGGRESSIVELY. AS A RESULT, THEY RESPONDED WITH MORE INSULTING PROTESTS. GUZMAN DIVERTED ENORMOUS RESOURCES TO ESCALATING HIS CONDUCT. THESE INCIDENTS ARE GROUPED BY PLAINTIFF TOGETHER AS "THE GUZMAN SERIES" AND INDEXED AS [10X 29].

38.    ON 2019 FEB ___ SEVERAL ACTIVISTS WATCHING A SECURITY WORKER ASSAULT BRIAN LOMA ON HIS LIVE-STREAM RESPONDED BY SHOWING UP

and commonality protests including "FUCK THE POLICE". Officer K.D. Smith cited Loma instead of his aggressor. Not knowing witness Bonnie K. was actually Loma's associate, he let slip to her that Loma "would not even be getting a citation if Eric Brandt and his crew" had not showed up to make a scene. (See ¶ ___.) [EOX 33]

39. On 2019JUN02, Kyle Shockley was video recording Brade Iniarra demonstrating in the public plaza (Wynkoop Plaza) speaking out against Denver's treatment of the homeless and DPD's treatment specifically. Union Station Security Kecia Slatter called 911 ~~[redacted]~~. ~~[redacted]~~
~~[redacted]~~
~~[redacted]~~
Officer Ingersol arrived and saw Iniarra demonstrating. Union Station Security Scott Webber told Ingersol Iniarra and Shockley had used the word "FUCK" and refused to leave. Despite "FUCK" on a public sidewalk being well-established as protected speech, Ingersol arrested them both charging them with trespass and disturbing the peace. Both Iniarra and Shockley filed §1983 claims via council Milo Schwab. [EOX 40]

6-6                      (34)

40.    ON 2019 JUN ___, WHILE DOWNTOWN WITH SEVERAL OTHER ASSOCIATES FOR JAIL SUPPORT ACTIVITIES. BRANDT AN THE NOLES FAMILY TRAVEL TO 7-ELEVEN AT 15TH AND COURT ST , WHICH IS LOCATED ACROSS THE STREET FROM BRANDT'S AREA RESTRICTION RETALIATORYLY IMPOSED BY THE CITY ATTORNEY (SEE [IOX 39, 36, 35, 33], AS THIS ISSUE IS CENTRAL TO THIS SUIT). TWO DPD MOTORCYCLE COPS, TINNAN AND CPL MOORE (SEE ALSO (AND IOX 19 = COSGRIFF) (IOX 34 = WESTBROOK) WITH WHOM BRANDT HAS ENDURED LONG-STANDING ABUSES, RODE PAST BRANDT WHILE HE WAS LIVE STREAMING HIS TRAVEL. BRANDT FLIPPED THEM OFF AND SHOUTED: "FUCK YOU!" AS THEY RODE PAST. WHEN BRANDT AND THE NOLES' RETURNED TO THE DETENTION CENTER, BRANDT WAS SURROUNDED BY TINNAN, MOORE, DEFENDANT CLAVET, AND OTHERS AND ARRESTED ON THE CHARGE OF VIOLATION OF A RESTRAINING ORDER - AREA RESTRICTION. BRANDT WAS NOT IN VIOLATION, AND HIS OWN VIDEO PROVED IT. THE CHARGES WERE EVENTUALLY DISMISSED. [IOX 44]

41.    ON 2019 JUL 22, KYLE SHOCKLEY WAS LIVE-STREAMING DPD HARASSING CARYN SEGARO ON THE 16TH STREET MALL WHEN R.D. SMITH ARRESTED HIM FOR DISORDERLY CONDUCT (FOR WHICH HE, HAVING NOT ENGAGED IN DISORDERLY CONDUCT, WAS NOT ACTUALLY CHARGED). WHILE BEING TRANSPORTED BY

F-7

(35)

R.O. SMITH TO A HOLDING CELL, SHOCKLEY ASKS SMITH "DO YOU KNOW ERIC BRANDT?" TO WHICH HE GOT NO RESPONSE. SHOCKLEY THEN SAID: "WELL? DO YA PUNK? ENJOY ALL THE PHONE CALLS!" SMITH CHARGED SHOCKLEY WITH A FELONY - "ATTEMPT TO INFLUENCE A PUBLIC SERVANT BY THREATS AND COERSION". THESE RETALIATORY FELONY CHARGES WERE DISMISSED A COUPLE WEEKS LATER. SHOCKLEY'S CELL PHONE, SEIZED AS EVIDENCE, WAS TO BE RETURNED TO HIM ON THE EVENT GIVING RISE TO THE INSTANT MATTER 2019JUL07. (MORE R.O. SMITH/BRANDT INTERACTION, SEE [IDX 33] ABOVE) (IDX 45).

42.    ON 2019JUL15, CORYN SODARO HECKLED THE MAYOR OVER HIS TREATMENT OF THE HOMELESS DURING HIS RE-ELECTION INNAGURATION. DEFENDANT KENNETH CHAVEZ PERSONALLY ARRESTED HER. DESPITE MANY OTHER HECKLERS AT THE EVENT, SODARO WAS THE ONLY PERSON ARRESTED. BRIAN LOMA WAS LIVE-STREAM RECORDING THE EVENT. MOMENTS PRIOR TO CHAVEZ ARRESTING SODARO, LOMA HAPPENED TO BE STANDING NEXT TO A GROUP OF OFFICERS WHERE HE CAPTURED CHAVEZ INSTRUCTING THEM THAT "OCCUPY" WAS UP BY THE BARRIERS, AND IF ANY OF THEM MAKES A PEEP - ARREST THEM. [IDX 47].

I-8

43.    ON 2019AUG07, WHILE ACCOMPANYING SHOCKLEY TO DPD HEADQUARTERS TO RECOVER HIS CELLPHONE (SEE ¶ [10X 45]), BENDT WAS ARRESTED AND CHARGED WITH DISORDERLY CONDUCT FOR ALLEGEDLY CALLING M.S.S. SECURITY GUARD BEVERLY RODRIGUEZ A "SHITBAG". THIS INCIDENT IS COVERED IN DETAIL ELSEWHERE AS IT IS THE FOUNDATION OF THE INSTANT MATTER [10X 99] EVEN IF THE ALLEGATION HAD BEEN TRUE, WHICH IT WAS NOT), IT WOULD NOT HAVE CONSTITUTED "FIGHTING WORDS". IT CLEARLY DEMONSTRATES DENVER'S DEEP-ROOTED PRACTICE OF CRIMINALIZING MERE INSULTS.

44.    FROM ±2019SEP – DEC, MYRIAD INSTANCES OF OSO BRETT GARGNANI CRACKING DOWN ON LONG-TIME DETRACTORS JANET MATZEN, AND CARYN SODANO. EACH HAD, FOR YEARS, BEEN OBJECTED TO GARGNANI'S KILLING OF INMATE MICHAEL MARSHALL, FOR WHICH THE CITY PAID A RECORD 4.07 MILLION DOLLARS TO MARSHALL'S FAMILY, AND GARGNANI GOT OFF SCOTT-FREE. ABUSING A NEW JOINT ORDER (JO#19-1), CLAIMING THE MIDDLE-FINGER GESTURE WAS IN VIOLATION OF THE STATE'S HARASSMENT BY OBSCENITY STATUTE (18-9-111(1)(6)), HE BEGAN EJECTING THE WOMEN. OTHERS RESPONDED BY FLIPPING HIM OFF AT VARIOUS TIMES FOR WHICH THEY WERE ALSO EXPELLED. (MOODY, TRIZARRY). IN ONE INSTANCE, TRIZARRY WAS EJECTED FOR DISPLAYING MERELY

AN IMAGE OF A CARTOON DEPICTION OF A MIDDLE-
FINGER ON HIS CELL PHONE, AND GANGSNAN
EXPELLS HIM. THEN ON 2019DEC11, BRANDT,
REALIZING THIS ABUSE IS BEING SHIELDED BY
A LACK OF RECORDING ABILITY (DUE TO 2019AUG09
RECORDING BAN JOB#19-2), BRANDT ASKED SHOCKLEY
TO RECORD FROM OUTSIDE THROUGH THE
WINDOW. BRANDT STANDS OUT OF THE WAY, UNDER
DOCKET MONITORS AND IN CLEAR VIEW OF SHOCKLEY'S
LIVE-STREAM, AND EXTENDS A MIDDLE-
FINGER GESTURE AT GANGSNAN. GANGSNAN
ADVISES (INCORRECTLY) THAT THE GESTURE IS ILLEGAL
AND INSTRUCTS BRANDT TO "PUT THAT AWAY." BRANDT
ASKS IF SEVERAL OTHER GESTURES ARE ALLOWED,
SUCH AS PINKY FINGER, INDEX FINGER, POINTING AT,
AND ALSO THUMBS-UP. EACH OF THESE OTHER
BENIGN OR ELSE SUPPORTIVE GESTURES WERE
ALLOWED, BUT THE INSULTING GESTURE WAS NOT.
BRANDT, KNOWING THE GESTURE WAS NOT "OBSCENE"
BY LEGAL DEFINITION, RESUMED HIS GESTURE, AND
GANGSNAN PHYSICALLY FORCED BRANDT OUT. HE
THEN FORCED INTARRA OUT FOR THE SAME
REASON. LATER, WHEN BRANDT RETURNED AFTER
HIS LAWYER ADDED HIM TO THE DOCKET,
GANGSNAN WOULD NOT ALLOW BRANDT BACK
IN, FALSELY CLAIMING HE HAD INFORMED

I-10

BRANDT HE COULD NOT RETURN (A FACT PROVEN BY TWO INDEPENDENT RECORDINGS CAPTURED BY SODARO AND TIFFANY, UNBEKNOWNST TO BRANDT), GARGSNANI CONVINCED DEFENDANTS LUCERO AND CHAVEZ TO ARREST BRANDT THE FOLLOWING MORNING, WITHOUT A WARRANT, ON THE CHARGE OF TRESPASSING. ADDITIONALLY, A SEPARATE PROSECUTION WAS COMMENCED CLAIMING BRANDT HAD THREATENED GARGSNANI IN A YOUTUBE VIDEO WHERE BRANDT HAD WARNED GARGSNANI A FEW WEEKS EARLIER THAT "YOU'RE GOING TO GET A LOT OF MIDDLE FINGERS". THESE NUMEROUS INSTANCES ARE GROUPED TOGETHER AS "THE GARGSNANI SERIES" AND INDEXED BY PLAINTIFF AS [IDX 52, 53, 54, 55, 56, 60, AND 76]. IT SHOULD BE NOTED ALSO THAT A WARRANT WAS ISSUED FOR TRESPASS AGAINST CAMMY SODARO AS WELL, WHO NOT ONLY HAD LONG OBJECTED TO GARGSNANI, BUT ALSO CALLED GARGSNANI ("A FUCKING FAT MURDERER PIG" DURING THE INCIDENT. HE CLAIMED SHE WAS KICKED OUT FOR RECORDING, WHICH, BECAUSE SHE IN FACT WAS RECORDING, SHE COULD PROVE HE NEVER KICKED HER OUT FOR IT. (SEE # ____ [IDX 60]).

45.    ON 2019DEC29, GARGSNANI VIOLENTLY ARRESTS MOODY AFTER MOCKING HIM FOR HIS DEAFNESS (SEE # ____ [IDX 56, 57 (BRANDT)]. THE GROUP WAS

E+ 11

(39)

HEAVILY INFILTRATED BY UNDERCOVER DPD OFFICERS.
INTIANI NOTICED A MAN WHO JUST SCREAMED
"UNDERCOVER". HE CALLED THE MAN OUT SAYING
"NOTHING LOOKS MORE LIKE AN UNDER-COVER,
THAN AN UNDERCOVER!" HE WAS IN FACT,
DISCERNING REVEALED THE MAN ACTUALLY POSSESSED
DEFENDANT CRAVEL BODY CAMERA ON HIM.
THEN, AFTER THE MOODY ARREST, INTIANI INSERTED
THE MILITIA OFFICERS - BUT NOT TOO BOISTROUSLY.
DEPUTIES ORDERED INTIANI OUT OF THE
BUILDING, WHERE CPL MOORE AND OTHER
DPD SURROUNDED HIM AT THE INTERSECTION
AND ARRESTED HIM. [IOX 58]

46.       HARDLY AN ISOLATED INCIDENT, ON 2020MAY—, WINSTON
NOLES WAS CAPTURED ON VIDEO BY SOCIAL-
MEDIA JOURNALIST JOHN REED (GHOST WRITER-YOUTUBE)
PROTESTING POLICE NEAR THE STATE CAPITOL
(LINCOLN & 13TH ST INTERSECTION). NOLES SHOUTED
OUT: "BAD COPS ARE POOP! AND THE GOOD COPS
THAT PROTECT BAD COPS ARE ALSO POOP! THAT
MEANS ALL COPS ARE POOP!" MULTIPLE DPD
OFFICERS TURNED THEIR RIOT WEAPONS ON
NOLES AND PELTED HIM WITH RUBBER
BULLETS AND PEPPERBALLS - ALL CAPTURED ON
REED'S VIDEO. [IOX 63]

(90)

I-115

47.    ON 2020 _____, JOHN REED WAS AGAIN
DOWNTOWN COVERING THE POST-FLOYD PROTESTS WHEN
HIS CAMERA CAPTURED A MAN AND HIS
PREGNANT WIFE DRIVING DOWN COLFAX WHEN
THEY FLIPPED OFF SEVERAL OFFICERS AND
SHOUTED "FUCK THE POLICE". DENVER POLICE
FOCUSSED THEIR RIOT WEAPONS DIRECTLY AT
THE COUPLE AND PELTED THEM RUBBER
BULLETS, PAINT BALLS, PEPPER BALLS, ETC - ALL
CAPTURED BY REED'S LIVE-STREAM. [10xQ] THIS

#47.5    APPALLING INCIDENT FOOTAGE WAS PICKED UP BY
MAIN-STREAM MEDIA AS AN OUTRAGEOUS CONTINUING
EXAMPLE THAT DENVER HAS NO INTENTION OF
RELINQUISHING THE POWER THEY ENJOY PUNISHING
CITIZENS WHO INSULT THEM - EVEN WHEN THEY
ARE BEING RECORDED, AND DESPITE THE
"FIRST AMENDMENT TRAINING BULLETINS".
48.    IT IS CLEAR DENVER'S CUSTOMS AND
PRACTICES CONSTITUTE THE CITY'S DE FACTO
POLICIES WHICH CLEARLY SUPPLANT THE WRITTEN
"FORMAL" POLICIES TO THE CONTRARY.
49.    THESE 28 INCIDENTS INDEXED HERE ARE BY
NO MEANS AN EXHAUSTIVE LIST - SADLY.

C-12                              (41)

0. STATEMENT OF CLAIMS (CONTINUED).

## LEVERAGING PRIVATE CITIZENS
## TO EXACT REVENGE

50. THE CITY AND COUNTY OF DENVER HAS A LONG-STANDING, WIDE-SPREAD PRACTICE OF ATTEMPTING TO USE "OFFENDED PRIVATE CITIZENS" AS AN OSTENSIBLE JUSTIFICATION TO RETALIATE AGAINST INDIVIDUALS WHO WOULD DARE TO CRITICIZE THEM.

51. IN ABOUT 18% OF PLAINTIFF'S LOGGED EVENTS, THE CITY AND COUNTY OF DENVER (DENVER POLICE, DENVER SHERIFF, AND AS PERTINENT TO THIS MATTER ALSO THE DENVER CITY ATTORNEY'S OFFICE) HAS EXPRESSLY SOUGHT TO AVOID LIABILITY FROM THEIR RETALIATORY ADVERSE ACTIONS BY DELIBERATELY SOLICITING THE HELP OF PRIVATE CITIZENS TO PLAY THE ROLE OF "OFFENDED VICTIM".

52. ON 2018 MAR ___, MARK IANNICELLI WAS DISTRIBUTING LITERATURE ADVOCATING JUROR'S POWERS OF JURY NULLIFICATION IN FRONT OF THE LINDSEY-FLANIGAN COURTHOUSE. THERE EXISTED AT THAT TIME A FEDERAL INJUNCTION ENJOINING DENVER FROM MOLESTING CITIZENS DISTRIBUTING THIS EXACT LITERATURE (SEE VERLO, MATTER, ETC V. DENVER 2015-CV-___ (TOXBJ), WHICH WAS SOUGHT AFTER IANNICELLI

AND ERIC BRANDT HAD BEEN ARRESTED AND CHARGED WITH 14 COUNTS OF FELONY JURY TAMPERING FOR THIS EXACT CONDUCT. ON THIS MORNING, BRANDT RELIEVED IANNICELLI WHILE HE TOOK A BREAK. DURING THIS RELIEF, KNOWN ABUSER DENVER SHERIFF'S DEPUTY JASON FOSS EXITED THE BUILDING ALONG WITH ANOTHER "FREQUENT FLYER" - DEPUTY MELISSA CHAVEZ (SEE ¶¶ ____, [IDX 9, BRANDT], [IDX 56, MOODY]) ~~EXIT~~ AND APPROACHED BRANDT AND ARRESTED HIM FOR "HARASSMENT". BRANDT PROTESTED THE ARREST AND TOLD THE CAPTAIN (CAP WHEN? WHO?) TO GO WATCH THE VIDEO, BECAUSE HE HAD HARASSED NO ONE. HE DID. SO HE RELEASED BRANDT AND ARRESTED IANNICELLI INSTEAD! AN ELDERLY WOMAN HAD COMPLAINED TO FOSS THAT SHE "FELT HARASSED" AND FELT SHE "SHOULD NOT HAVE TO TOLERATE PEOPLE GIVING OUT HANDBILLS" IN FRONT OF THE COURTHOUSE. IANNICELLI'S CHARGES WERE, OF COURSE, DROPPED, AND U.S. DISTRICT COURT JUDGE WILLIAM J. MARTINEZ ULTIMATELY FOUND FOSS IN CONTEMPT OF HIS INJUNCTION. [IDX 13] THE VIDEO SHOWED THE WOMAN WALK UP PAST IANNICELLI UNMOLESTED.

53.    AS MENTIONED IN (¶ ____ [IDX 17]) ON 2018SEP23, BRIAN LOMA WAS ARRESTED BY SGT GUZMAN WITH THE CONCURRENCE OF DEFENDANT

L-2        (43)

CHAVEZ, FOR DISORDERLY CONDUCT AFTER GUZMAN SOLICITED PRIVATE CITIZENS WHO WERE OFFENDED AT LOMA'S "CUSSING" WHERE HE SAID "FUCK THE POLICE" AND "THESE FUCKERS". ~~————~~

54.    THEN, WHEN THE PRIVATE CITIZENS SIGNING COMPLAINTS AGAINST LOMA WERE OBJECTED TO MIKEL WHITNEY ATTEMPTING TO PHOTOGRAPH THEM IN PUBLIC, GUZMAN THREATENED TO ARREST HIM SAYING "THESE PEOPLE ARE ABOUT TO SIGN A COMPLAINT AGAINST YOU TOO!" AS WHITNEY BACKED AWAY, HE SAID "I DID NOT TAKE A FUCKING PICTURE.". GUZMAN ARRESTED HIM FOR "CUSSING IN PUBLIC" AND USED THE PRIVATE CITIZENS "COMPLAINT" TO JUSTIFY. CHAVEZ WAS BRIEFED ON THE FACTS AND APPROVED THE ARREST. [IDX 18]

55.    DURING THIS MELEE, JANET MATLEN STOOD ACROSS THE STREET AND HECKLED THE COUNCIL SAYING "THIS IS BULLSHIT!". GUZMAN CAME UP TO MATLEN AND THREATENED HER WITH A FELONY ARREST FOR "WITNESS INTIMIDATION" IF SHE WERE TO SAY ANOTHER WORD. HECKLING FROM 60 FEET AWAY DOES NOT COME ANYWHERE CLOSE TO THE ELEMENTS OF WITNESS/VICTIM INTIMIDATION - BUT THE THREAT WAS CREDIBLE AND IT SHUT HER UP. [IDX 72]

L-3          (44)

56. ON 2018 SEP 24, WALKING HOME FROM COURT/JAIL SUPPORT ACTIVITIES REF THE PREVIOUS DAYS' ARRESTS OF CARYN SODARO, BRIAN LOMA, AND MIKEL WHITNEY, BRANDT ENGAGED IN A LIVE-STREAM AS HE WALKED DOWN THE 16TH STREET MALL; HE NOTICED OFFICERS TINNAN AND MOORE ON THEIR MOTORCYCLES AND SAID "FUCK YOU TINNAN" AND FLIPPED THEM OFF. IN ANOTHER HALF-BLOCK, HE NOTICED A GROUP OF DPD OFFICERS UNDER GUZMAN'S AND LT CHAVEZ' COMMAND. BRANDT POSTED UP ABOUT 15 FEET AWAY AND BEGAN CHANTING: "NO JUSTICE! NO PEACE! FUCK THE POLICE!" AND "HAPPY FUCK THE COPS DAY, EVERYONE!". HE ALSO HAD HIS ICONIC "FUCK COPS" BANNER, AND DISPLAYED A MIDDLE-FINGER IN THE OFFICERS' DIRECTION. ONE MAN ASKED THE OFFICERS: "CANT YOU JUST TAKE HIM?" CPL KITCHENS SAID: "UNFORTUNATELY, WE AS OFFICERS CANT BE OFFENDED. BUT IF A PRIVATE CITIZEN WOULD LIKE TO FILE A COMPLAINT, I'D BE HAPPY TO ARREST HIM!" PRIVATE CITIZEN SYLVIA COSGRIFF ANSWERED THE CALL AND BRANDT WAS ARRESTED. CPL ADOLF CHAVEZ WAS ROLLING UP IN HIS CRUISER AND IMMEDIATELY RADIOED GUZMAN: "HEY! I THINK THEY JUST GOT ERIC BRANDT! SOME PRIVATE CITIZEN DIDNT WANT TO HEAR WHAT HE WAS SAYING AND IS SIGNING

L - 2 - 5                    (45)

A COMPLAINT!" GUZMAN ASKED HOW MANY CITIZENS, AND CHAVEZ REPLIED "ONLY ONE THAT I KNOW OF," TO WHICH GUZMAN REPLIED "THAT'S FINE, AS LONG AS WE HAVE AT LEAST ONE, THEN WE'RE GOOD." DEFENDANT LT CHAVEZ WAS AWARE OF THIS ARREST AND TACITLY APPROVED. THIS ARREST, DETAILED EXTENSIVELY IN 20-CV-_____ BRANDT V. CHAVEZ, ET AL, ILLUMINATES THAT DENVER IS AT LEAST AWARE THAT INSULTING THE POLICE IS PROTECTED SPEECH, THAT THEY FIND IT "UNFORTUNATE", AND THAT, ~~THEY BELIEVE THAT~~ AS LONG AS THEY HAVE "AT LEAST ONE OFFENDED CITIZEN", THEN "THEY'RE GOOD" AND WOULD "BE HAPPY TO ARREST BRANDT". [SEE 10×19]

57.    ON 2018NOV05, IMMEDIATELY FOLLOWING THE EXTREMELY DISTURBING CPC CHAVEZ BELLY-BUMPING INCIDENT WHERE HE WENT BERZERK AND ATTACKED BRANDT (10×27), LT CHAVEZ, WORKING WITH CORNER BAKERY STAFF, WHO WERE UPSET THAT JANET MATZEN HAD RESUMED HER BOYCOTT PROTEST FOLLOWING CORNER BAKERY RENEGING ON THEIR AGREEMENT TO RENOUNCE THE URBAN CAMPING BAN (10×24,26), TRUMPED UP TRESPASS CHARGES AGAINST BRANDT. THEY ALLEGED THAT BRANDT HAD BEEN ON CORNER BAKERY PROPERTY ON 2018NOV04, BASING ON

(46)

windows, blocking patrons, screaming at patrons, screaming at staff, and refusing to leave the property when ordered by managers. Brandt was arrested on a warrant. During prosecution, it was revealed that multiple citizen recordings covering the entire period without gaps proved the incident never occurred. The City Attorney, then working with management, came up with a forged "no trespass warning" document dated to 2018SEP30, complete with a color photo of Brandt printed on the notice. The photo was taken 2018SEP30. They claim Brandt was given notice of trespass that day, and therefore, merely stepping onto Pavilions property 2018NOV04 constituted trespass. SEP 30 was a day CBS4 News was covering the boycott and the 2018SEP23 arrests. When it was revealed there was 100% complete video coverage of the event, and at no time was Brandt trespassed by anyone, rather than dismiss the charge, the City instead rolled back to "some undocumented incident in August" claiming Brandt was trespassed by management for being barefoot in the bowling alley.

C-9

(47)

AS IT WOULD TURN OUT, BRANDT ALSO HAD VIDEO
OF THAT EVENT! FINALLY, THE CITY GAVE UP
THEIR CASE AND DISMISSED THE CHARGES.
THIS BACK-DATED TRESPASS TECHNIQUE IS THE
IDENTICAL M.O. IN THE 500800 SEP23 TRESPASS
ARREST AS WELL. CHANCE, GUZMAN, AND THE
CITY ATTORNEY ATTEMPTED TO LEVERAGE PRIVATE
CITIZENS SPANNING 3 DISTINCT PRIVATE BUSINESSES
TO EXACT REVENGE AGAINST BRANDT IN RETALIATION
FOR HIS SPEECH CRITICAL OF CITY POLICY (
URBAN CAMPING BAN), AND/OR THE POLICE, AND/OR
SPECIFICALLY FOR THE EVENTS OF THE PREVIOUS
DAY. [10X 28, 27, 26, 24, 22].

58.        IN THE MONTHS FOLLOWING THESE COWER
BALCONY EVENTS, THE PROTESTS ESCALATED.
AND THE ~~DEFENDS~~ ARRESTEES BEGAN PREVAILING ON THEIR
CASES. [10X 17, COMA; 10X18, WHITNEY; 10X19, BRANDT; 10X 29,
GUZMAN SERIES; 10X30, MATEN]. THIS ~~SO~~ INFURIATED
THE CITY AND THE BUSINESSES INVOLVED WITH
THE DOWNTOWN BUSINESS PARTNERSHIP. COMING
INTO A MUNICIPAL ELECTION, DISCUSSIONS ABOUT THE
CITY'S ANTI-HOMELESS LEGISLATION WERE HEATING UP.
BOTH COMA AND BRANDT WERE REPEATEDLY INTERVIEWED
BY FOX31 NEWS. BOTH BRANDT AND COMA WERE
HIGHLY CRITICAL OF THE CITY, THE POLICE,
AND THE DOWNTOWN DENVER BUSINESS PARTNERSHIP. [10X31]

L-5

59.    THE CITY WAS DESPERATE TO GET RID OF BOTH BRANDT AND COMA. SO DESPERATE, IN FACT, THAT ON 2019MAR04, DEPUTY CITY ATTORNEY, AND THEN-LEAD-PROSECUTOR-REPLACED/SUCCEEDED BY DEFENDANT BORKOVSKY - INITIATED AN EMAIL CHAIN WITH NUMEROUS INFLUENTIAL BUSINESSES. THIS EMAIL WAS DISCOVERED, AS AN ENCODED FILE, BY COMA'S DEFENSE ATTORNEY, AS PART OF MULTIPLE DIGITAL FILES. THEY WERE UNABLE TO OPEN THE FILE AND SOUGHT ASSISTANCE FROM BRANDT. THIS FILE WAS IN COMPUTER FORMAT AND BRANDT WAS ABLE TO APPLY THE APPROPRIATE DECODER. THIS EMAIL CHAIN TURNED OUT TO BE A SMOKING GUN AND IS HEAVILY RELIED UPON IN THIS COMPLAINT. [IOx35]

60.    AS IT RELATES TO LEVERAGING CITIZENS, IT EXPRESSLY CALLED UPON THE DOWNTOWN DENVER BUSINESS PARTNERSHIP, EARL'S KITCHEN, SAGE PROPERTIES, THE DENVER PAVILIONS, AND THE CORNER BAKERY TO ASSIST THE CITY IN SECURING CONVICTIONS AND GET THE COURT TO IMPOSE "REAL SANCTIONS" AGAINST "ERIC BRANDT" AND "BRIAN LOMA" BY NAME. THE CITY ASKED FOR "VICTIM IMPACT STATEMENTS" TO EXPLAIN THE IMPACT OF "MR. BRANDT AND MR. LOMA'S BEHAVIOR ON YOU AND YOUR BUSINESSES."

61.    MR. BRANDT AND MR. LOMA HAD

L - 6

(49)

RECENTLY BEEN FEATURED ON TELEVISION NEWS (FOX 31) IN SEVERAL SEGMENTS, SPEAKING OUT CRITICALLY ABOUT THE 16TH STREET MALL BUSINESSES AND ODRP FOR THIER PROMINENT ROLES IN THE URBAN CAMPING BAN. FURTHERMORE, LOMA WAS THE CAMPAIGN MANAGER FOR A MAYORAL CANDIDATE RUNNING AGAINST MAYOR HANDCOCK AND WAS GAINING TRACTION. THIS WAS VERY ODD THAT OUT OF DOZENS OF DEMONSTRATORS, ONLY BRANDT AND LOMA WERE NAMED IN THIS EMAIL.

62.    THAT NOTWITHSTANDING, BUSINESSES DID RESPOND. CORNER BAKERY IN PARTICULAR ADVISED THE CITY JANET'S KITCHEN HOMELESS MEAL AND PROTEST BOYCOTTS HAD COST HIM 40% OF HIS SUNDAY SALES!

63.    THUS THE MOTIVES FOR THE ESCALATED ATTACKS AGAINST BRANDT AND LOMA WERE MOTIVATED BY IMPROPER PURPOSES — NAMELY TO SILENCE CRITICAL SPEECH BY SEEKING ASSISTANCE, OVER AND OVER AGAIN, BY LEVERAGING SO-CALLED "PRIVATE CITIZEN VICTIMS".

64.    (NOTE, IT WOULD LATER BE LEARNED THAT CORNER BAKERY WANTED TO RENOVATE THE URBAN CAMPING BAN AND WAS THREATENED WITH LEASE CANCELLATION).

(50)

65.    THE WEEKEND FOLLOWING THE DRAZEN-SMITH EMAILS, CORNER BAKERY SET UP AN OPPOSING P.R. STUNT IN THE LOCATION MATZEN HAD BEEN USING FOR HER BOYCOTT. NO MATTER; MATZEN JUST SET UP HER HOMELESS FEED ACROSS THE STREET FROM THEM. THEIR STUNT ACTUALLY CREATED MOTIVATION FOR DEMONSTRATORS TO BECOME EVEN LOUDER. LT CHAVEZ AND INCOMING LEAD PROSECUTING ATTORNEY, DEFENDANT MARLEY BORDOVSKY, SPENT THE MORNING SITTING INSIDE THE CORNER BAKERY ADVISING OPERATIONS. NOTHING OFFICIAL OCCURRED THAT MORNING, BUT THE FOLLOWING SUNDAY WAS DIFFERENT. [IDX 38]

66.    ON 2019.MAR.10, TO OVERCOME THE VOICES OF THE DEMONSTRATORS, CORNER BAKERY HIRED A LIVE BAND. JUST AS THE PREVIOUS SUNDAY, CHAVEZ AND BORDOVSKY ADVISED FROM INSIDE THE RESTAURANT. BRANDT WROTE UNSAVORY MESSAGES ON THE SIDEWALK WITH CHALK, AS WAS TYPICAL FOR HIM TO DO. CORNER BAKERY MANAGER SCOTT ALEXANDER CAME OUT WITH A BUCKET AND WASHED IT OFF, SO BRANDT RE-WROTE IT. ALEXANDER WASHED IT OFF AGAIN, SO BRANDT RESTORED IT AGAIN. WHEN ALEXANDER CAME BACK OUT WITH ANOTHER BUCKET, BRANDT STOOD IN HIS CHALK TO

BLOCK THE IMPENDING DELUGE. ALEXANDER TOOK CARE TO AIM DIRECTLY AT BRANDT'S BARE FEET AND DUMPED HIS BUCKET ON BRANDT'S LEGS AND FEET. AS STEAM BEGAN BILLOWING OUT FROM THE FLOOD WATERS, BRANDT BEGAN SCREAMING IN PAIN. ALEXANDER HAD USED SCALDING HOT WATER FOR HIS GRAND FINALE. BRANDT TRIED DESPERATELY TO GET A POLICE OFFICER TO TAKE HIS COMPLAINT, BUT THEY REFUSED. AT ONE POINT, OFFICER LISA DEEE AIKENS-NELSON WAS WALKING TOWARD THE CAMEA BAKERY WITH BLANK CRIMINAL COMPLAINTS. BRANDT BEGGED HER FOR ONE. SHE ADVISED BRANDT THAT HER LIEUTENANT [COMPUTE?] INSTRUCTED THAT BRANDT WAS NOT TO RECEIVE A COMPLAINT. BRANDT WAS ARRESTED AND CHARGED WITH DISORDERLY CONDUCT AND THREATS. SCOTT ALEXANDER WAS LISTED AS THE VICTIM, BUT WAS NOT RECIPROCALLY CHARGED. DESPITE EXCELLENT VIDEO FOOTAGE, IT TOOK MORE THAN TWO YEARS FOR BRANDT'S CHARGES TO FINALLY BE DISMISSED. [IDX 36]

67.    THE ABOVE EVENT WOULD BECOME THE GENESIS OF BRANDT'S TARGETED AREA DESTRUCTION PURSUANT TO THE 2019MAY04 DRAZE-SMITH EMAILS [SEE ¶¶ _____, [IDX 35, 39, 42]

68.    ON 2019JUN02, IRIZARRY AND SHOCKLEY WERE DEMONSTRATING AT WYNKOOP PLAZA AS DESCRIBED

previously (SEE ¶ ___, [IDX 40]) WHERE THE POLICE ARRESTED MURRAY AND SHOCKLEY BECAUSE OF THE MERE HYPOTHESIZATION THAT A CITIZEN MIGHT BE OFFENDED. WHEN MURRAY, SHOCKLEY, AND NUMEROUS OTHERS (INCLUDING BRANDT) RETURNED FOR AN EVEN MORE BOISTROUS DEMONSTRATION TWO DAYS LATER ON 2019JUN04, MURRAY IDENTIFIED AN EXTREMELY ~~[struck]~~ COMPULENT COOK FROM ONE OF THE RESTAURANTS WHO HAD BEEN RUDELY CRITICAL ABOUT HIS SPEECH ON JUN04. ~~[struck]~~ IN ORDER TO TEACH MURRAY A LESSON, THE SAME OFFICER—INGRAM—ARRESTED MURRAY ON A FELONY CHARGE OF WITNESS INTIMIDATION, CLAIMING THE MAN WAS INTIMIDATED WHEN MURRAY REFERENCED HIM AS "A FAT PIECE OF SHIT". THE MAN HAD NOT EVEN BEEN IDENTIFIED AS A WITNESS IN THE PREVIOUS MATTER UNTIL AFTER THE JUN04 ARREST, AND WAS NOT EVEN INTERVIEWED UNTIL SOME TIME LATER. [IDX 41]

69. BACK TO THE INSTANT MATTER AGAIN, ON 2019AUG07, AND AS DESCRIBED IN GREAT DETAIL ELSEWHERE, DENVER POLICE — AND IN PARTICULAR THE INSTANT DEFENDANTS — WERE STILL STUCK ON THE IDEA THAT SO LONG AS THEY HAVE A SIGNED COMPLAINT FROM A "PRIVATE

[1-10]

(53)

"CITIZEN", THEN THEY CAN JUSTIFY AN ARREST. EVEN THOUGH DEFENDANT RODRIGUEZ IS A PRIVATE CONTRACTOR, SHE IS PERFORMING A PUBLIC FUNCTION AKIN TO LAW ENFORCEMENT AS A SECURITY OFFICER, AND IS BY COLORADO LAW, A PUBLIC SERVANT. THAT NOT WITHSTANDING, THE PREMISE OF THE CHARGE IS THE ALLEGATION OF CALLING HER "A SHITBAG", WHICH STILL FAILS TO RISE TO FIGHTING WORDS) EVEN IF IT HAD BEEN TRUE. [IDK 49].

70.    MANY MONTHS LATER, AND DESPITE THE CITY'S ABSOLUTE AWARENESS THESE ISSUES AND RISKS EXISTED, ON 2019DEC11, DEPUTY CAROGNANI REMOVED BRANDT AND IRIZARRY FROM THE COURTHOUSE FOR "FLIPPING HIM OFF". GAROGNANI TRIED TO COUCH HIS ACTIONS UNDER THE GUISE THAT "OTHER PEOPLE" WERE PRESENT WHO MIGHT BE OFFENDED. AS A MATTER OF FACT, WHEN HE SUGGESTED THIS HYPOTHETICAL, BRANDT AND IRIZARRY TURNED TO ANYONE WHO MIGHT BE PRESENT TO ASK THEM IF THEY WERE OFFENDED. NOT ONLY DID NOT ONE PERSON EXPRESS OFFENSE OR LOBBY ANY COMPLAINT WHAT SO EVER, SOME PEOPLE SMILED, SOME GIGGLED, AND ONE MAN ACTUALLY APPROACHED BRANDT, SHOOK HIS HAND, AND THANKED HIM FOR HIS ACTIVISM! [IDK11]

(54)

0. STATEMENT OF CLAIMS (CONTINUED)

## CLASS DISCRIMINATION:
## "CITIZEN RECORDERS"

71. THE CITY AND COUNTY OF DENVER, THE DENVER POLICE DEPARTMENT, AND THE DENVER COURTS HAVE A LONG-STANDING, WIDE-SPREAD PRACTICE AND/OR CUSTOM OF DISCRIMINATING AGAINST CITIZEN CREATED RECORDINGS OF OFFICIALS' CONDUCT DATING BACK TO AT LEAST 2012.

THE FOLLOWING 20 INCIDENTS ILLUMINATE DENVER'S PROGRESSIVELY ESCALATING CONDUCT TAKING ADVERSE ACTIONS AGAINST PRIVATE CITIZENS IN RESPONSE TO THEIR RECORDING ACTIVITIES.

72. ON 2012 _____ 9 _____ WAS RECORDING AN OCCUPY DENVER DEMONSTRATION IN THE AMPITHEATER AREA OF CIVIC CENTER PARK. HE WAS ARRESTED, AND HIS RECORDING SEIZED, UNDER THE OSTENSIBLE GUISE OF "PARK CURFEW VIOLATION". AMONG THE MORE THAN 100 PEOPLE PRESENT IN THE PARK FOR THIS EVENT, HE WAS SINGLED OUT BECAUSE HE WAS VIDEO RECORDING THE EVENT. ON _____ 9 MUNICIPAL COURT JUDGE _____ DISMISSED HIS CHARGE, FINDING HIS VIDEO RECORDING CONDUCT TO BE PROTECTED FIRST-AMENDMENT ACTIVITY. [10 X 2]

73. ON 2014/AUG/14, LEVI FRAISER WITNESSED DENVER POLICE OFFICERS PUNCHING AN UNARMED CIVILIAN NUMEROUS

MC-1

(55)

D. STATEMENT OF CLAIMS (CONTINUED).

TIMES IN THE HEAD, AND TRIP A HEAVILY PREGNANT WOMAN TO THE GROUND. BELIEVING THE OFFICERS WERE COMMITTING ILLEGAL ACTS OF MISCONDUCT, FRAISER VIDEO-RECORDED THE OFFICERS WITH HIS TABLET DEVICE. UPON SEEING FRAISER RECORDING THEM, DENVER POLICE SURROUNDED HIM, THREATENED ~~THEM~~ HIM WITH ARREST, AND DEMANDED HE TURN OVER HIS VIDEO. WHEN FRAISER REFUSED, DENVER POLICE SEIZED HIS TABLET FROM HIM AND SEARCHED HIM ILLEGALLY. THIS WAS WAS DESPITE DENVER'S POLICY AND TRAINING ON THE FIRST AMENDMENT AND IN VIOLATION OF MR. FRAISER'S FIRST AMENDMENT RIGHTS TO RECORD THE POLICE, AND TO GATHER INFORMATION ON MATTERS OF PUBLIC CONCERN. MR. FRAISER FILED A §1983 LAWSUIT ( -CV- ) UPON THIS INCIDENT AND IN 2020, THE COURT FOUND THAT AT THE TIME OF FRAISER'S INCIDENT, THE RIGHT TO RECORD THE POLICE WAS NOT YET WELL ESTABLISHED. [EDX5]

74.   (SINCE FRAISER'S INCIDENT, HOWEVER, EVERY CIRCUIT THAT HAS TAKEN UP THE QUESTION HAS FOUND THAT RECORDING THE POLICE IS A FIRST-AMENDMENT PROTECTED ACTIVITY. AS RECENTLY AS 2021 JUN, U.S. DIST COURT FOR COLO MAGISTRATE JUDGE NINA WANG ACKNOWLEDGED THIS RIGHT IN -CV- , ABADE NIZARRY V. AGENT YEHIA (LAKEWOOD).)

75.   ON 2014 JUL      , ERIC BRANDT WAS ON THE 16TH STREET MALL WHEN HE NOTICED A DENVER

MC-2

(58)

D. STATEMENT OF CLAIMS (CONTINUED)

POLICE OFFICER NAMED "PHILLIPS" (IT IS NOT CLEAR TO PLAINTIFF AT THIS TIME IF THIS IS THE SAME PHILLIPS IDENTIFIED AS A DEFENDANT IN THIS SUIT) HARASSING A GROUP OF HOMELESS PERSONS. BRANDT SET UP HIS LAPTOP TO BEGIN RECORDING THE INCIDENT, WHICH WENT ON FOR SOME TIME. EVENTUALLY, PHILLIPS NOTICED BRANDT WAS RECORDING AND BEGAN FOCUSSING HIS ATTENTION ON BRANDT, HARASSING HIM, AND USING HIS FLASHLIGHT ON STROBE-MODE TO OBSCURE BRANDT'S RECORDING. DESPITE BEING ADVISED THIS STROBE WAS CAUSING A DISRUPTION TO A MAN WITH SEIZURE DISORDERS, PHILLIPS CONTINUED STROBING HIS FLASHLIGHT AT BRANDT'S CAMERA, FORCING THE OTHER MAN TO SHIELD HIS EYES. PHILLIPS WAS DISCIPLINED FOR HIS MISCONDUCT, AFTER BRANDT LODGED THE COMPLAINT. [ IDX 6]

76.      ON 2015 MAY 26 (?), THE COLORADO STATE LEGISLATURE PASSED 12B15-1290 EXPRESSLY CODIFYING CITIZENS' RIGHT TO RECORD POLICE. LAW ENF. WAS GIVEN A FULL YEAR TO IMPLEMENT POLICIES AND TRAIN OFFICERS BEFORE THE NEW LAW WENT INTO EFFECT.

77.      DESPITE THESE LAWS, ON 2018 JUL 05, SUSAN GREENE, A JOURNALIST WITH THE COLORADO INDEPEN- DANT, WAS ON HER WAY TO THE BANK WHEN SHE OBSERVED DENVER POLICE OFFICERS SURROUNDING A

MC-3

9. STATEMENT OF CLAIMS (CONTINUED).

NAKED BLACK MAN ACROSS THE STREET FROM THE STATE CAPITOL. CONCERNED BOTH AS A PUBLIC CITIZEN AND AS A JOURNALIST BY THE QUESTIONABLE APPEARANCE OF AN UNCLOTHED AFRICAN-AMERICAN MAN, NON-THREATENING, AND IN HANDCUFFS, GREENE PARKED HER VEHICLE AND BEGAN TAKING PICTURES FROM A PUBLIC SIDEWALK WHERE SHE WAS NOT OBSTRUCTING THE POLICE IN ANY WAY. DENVER POLICE OFFICERS ORDERED HER TO STOP TAKING PICTURES, AND WHEN SHE REFUSED, ADVISING THEM THAT TAKING PICTURES FROM A PUBLIC SIDEWALK IS HER RIGHT, THE OFFICERS FORCEFULLY AND PAINFULLY ARRESTED HER. WHEN SHE RESPONDED WITH: " ARE YOU FUCKING KIDDING ME?", THE OFFICERS, NEARLY IN UNISON, BLURTED OUT: "ACT LIKE A LADY." MS. GREENE FILED A §1983 LAWSUIT ( -CV- ) FOR FREE SPEECH, EXCESSIVE FORCE, AND RETALIATION VIOLATIONS WHICH DENVER SETTLED IN 2019 FOR $50,000 IN ADDITION TO FIRST AMENDMENT TRAINING FOR DPD OFFICERS. THIS LAWSUIT AND SETTLEMENT IS STRONG EVIDENCE THAT DENVER KNEW THESE VIOLATIONS WERE OCCURING AT THE TIME OF THE INSTANT MATTER. [10X15]

78.    ON 2018 SEP 23, BRIAN LOMA WAS ARRESTED DEMONSTRATING ON THE 16TH STREET MALL SPEAKING OUT AGAINST (DENVER POLICE / CITY / DOWNTOWN PARTNERSHIP) ABUSES AGAINST THE HOMELESS

MC-4                    (55)

O. STATEMENT OF CLAIMS (CONTINUED).

AND AGAINST THE IMMEDIATELY PRECEEDING ARREST OF ORYN SERRANO IN RETALIATION FOR HER ACTIVISM FEEDING THE HOMELESS AND PROTESTING THE URBAN CAMPING BAN ([10x18].). LOMA WAS ON A PUBLIC SIDEWALK IN THE CENTER PEDESTRIAN MEDIAN WHEN HE SAID:" FUCK THE POLICE". CPL KITCHENS, WHO HAD BEEN OBSERVING "THE OCCUPY GROUP" WITH HIS SERGEANT (GUZMAN) AND OTHER OFFICERS ASKED GUZMAN:" HEY, ISN'T THAT DISTURBING THE PEACE?". GUZMAN AGREED, BUT INDICATED THEY NEEDED A PRIVATE CITIZEN TO COMPLAIN THEY WERE OFFENDED BEFORE THEY COULD ARREST HIM. A FEW MOMENTS LATER, LOMA REFERS TO THE PARTNERSHIP AND URBAN CAMPING BAN AS :" THESE FUCKERS...", TO WHICH A PRIVATE CITIZEN SHOUTS AT HIM FROM ACROSS THE STREET TO "STOP CUSSING IN FRONT OF CHILDREN." GUZMAN LITERALLY JUMPED UP TO ACTION SAYING :" THAT'S IT! THAT'S ALL WE NEED!" THE ARRESTED LOMA SAYING :" THAT'S IT (NOW YOU GET TO GO TO JAIL, BUDDY!" GUZMAN APPROACHES THE CITIZEN ASKING HIM TO "HELP US OUT" BY SIGNING A COMPLAINT THAT HE WAS
[10x2]
OFFENDED. AS LOMA WAS BEING ARRESTED, MIKEL WHITNEY ATTEMPTED TO PHOTOGRAPH THE INCIDENT WITH HIS CELLPHONE, THE COMPLAINING WITNESS GOT UPSET WITH WHITNEY ASSERTING WHITNEY NEEDED HIS PERMISSION TO RECORD HIM. DESPITE THE FACT

(59)

D. STATEMENT OF CLAIMS (CONTINUED)

THAT PUBLIC PHOTOGRAPHY IS A FIRST-AMENDMENT-PROTECTED ACTIVITY, GUZMAN RUSHED TO WHITNEY AND THREATENED HIM WITH ARREST SAYING THE CITIZEN WAS ABOUT FILE CHARGES ON HIM TOO. WHEN WHITNEY BACKED AWAY WITH HIS HANDS UP AND SAID: " I DID NOT TAKE A FUCKING PICTURE!" GUZMAN INSTANTLY GRABBED HIM AND TOLD HIM HE WAS UNDER ARREST "FOR CUSSING"; [10X18]. BOTH COMA AND WHITNEY'S CHARGES WERE EVENTUALLY DISMISSED. THE FILED ACTION 20-CV-02827 THROUGH THEIR COUNCIL WITH KILMER, CANG, AND NEWMAN.

79.    ON 2018OCT——, ABADE INZARRY WAS ON THE 16TH STREET MALL WHEN HE NOTICED DENVER POLICE INCLUDING GUZMAN ACCOST AN HOMELESS MAN FOR SMOKING. HE BEGAN RECORDING THE INCIDENT AND CAPTURED THE OFFICERS KICKING THE MAN'S CANE OUT FROM UNDER HIM, CAUSING HIM TO FALTER. UPON NOTICING INZARRY RECORDING THEM CORPORAL CHAVEZ APPROACHED INZARRY AND BEGAN "BELLY BUMPING" HIM WITH HIS ENOURMOUS ABDOMEN REPEATING TO HIM "GET OUT OF MY FACE!" WITH EACH BUMP BACKWARDS. [10X25]

80.    A FEW WEEKS LATER, ON 2018NOV04, WHILE BRANT WAS PROTESTING CPL CHAVEZ FOR HIS MISSING BODY CAMERA FOOTAGE WHERE HE HAD TOLD BRIAN COMA DURING HIS 2018.SEP23 ARREST ABOUT DENVER [10X17] POLICE'S PLAN TO "GET RID OF CAROLYN SOBANO FOR GOOD,

D. STATEMENT OF CLAIMS (CONTINUED).

IRIZARRY WAS AGAIN RECORDING THE INCIDENT. CPL CHAVEZ TURNED HIS ATTENTION TO IRIZARRY AGAIN AND BEGAN "BELLY BUMPING" IRIZARRY AGAIN. IRIZARRY WAS BELLY-BUMPED BACKWARDS FOR MORE THAN 50 FEET WITH CHAVEZ REPEATEDLY SCREAMING "GET OUT OF MY FACE!" BRANDT SHOUTED AT CHAVEZ; "[WHAT DO YOU MEAN] GET OUT OF MY? [HOW ABOUT YOU] GET OUT OF MY FACE!". CHAVEZ TURNED AROUND, WENT ABSOLUTELY BERZERK AND ATTACKED BRANDT. IT TOOK BOTH GUZMAN AND DEFENDANT LUCERO TO PULL HIM OFF OF BRANDT. DEFENDANT CHAVEZ DIRECTED CPL CHAVEZ BE DRIVEN OUT OF THE AREA. CIVILIANS OBSERVING THIS INCIDENT ON IRIZARRY'S LIVE STREAM, APPALLED AT THIS INCIDENT, FILED A COMPLAINT WITH INTERNAL AFFAIRS. ALTHOUGH LT CHAVEZ AND LUCERO DID NOT TRY TO DISCIPLINE CPL CHAVEZ, I.A. FOUND HIM TO HAVE VIOLATED POLICY, AND DISCIPLINED HIM, AND HE WAS RE-ASSIGNED TO DISTRICT 2. CHAVEZ BECAME HIGHLY PERSONALLY VESTED IN THE FOLLOWING MONTHS. IN MANY, MANY, INCIDENTS TARGETTING BRANDT AND HIS ASSOCIATES. [C.10X 27]

81. _____ ON _____, ELIJAH WESTBROOK WITNESSED DENVER POLICE SURROUNDING A HALF-DRESSED HOMELESS MAN ON THE 16TH STREET MALL. CONCERNED

PAGE 7                    (61)

D. STATEMENT OF CLAIMS (CONTINUED)

THAT THE OPTICS APPEARED THAT THE POLICE MIGHT
BE ENGAGED IN MISCONDUCT, HE PULLED OUT HIS
CAMCORDER AND BEGAN RECORDING FROM A PUBLIC
SIDEWALK AND WAS NOT OBSTRUCTING THE OFFICERS IN
ANY WAY. CPL MARIE MOORE, A COMMON ABUSER
KNOWN TO PLAINTIFF, ACCOSTED WESTBROOK FORCING
HIM ACROSS THE STREET AND THREATENING HIM
WITH ARREST. WHEN WESTBROOK OBSERVED
NUMEROUS OTHER CITIZENS ENGAGED IN ACTIVITIES
IN CLOSE PROXIMITY TO THE OFFICERS AND
THEIR SCENE, INCLUDING PEOPLE ASKING THE OFFICERS
DIRECTIONS, OR THOSE BUYING CUPCAKES FROM THE
ADJACENT KIOSK, WESTBROOK CROSSED THE STREET
AND STOOD FARTHER AWAY THAN THOSE OTHERS.
MOORE BECAME ENRAGED AND PHYSICALLY PUSHED
WESTBROOK ACROSS THE STREET, THREATENING HIM AGAIN.
WESTBROOK PUBLISHED THIS VIDEO ON SOCIAL MEDIA
UNDER THE YOUTUBE CHANNEL NAME "SILENT CITIZEN".   [10x34]

82.    ON 2018DEC ___, SGT GUZMAN STAKED OUT JANET
MATSEN AND CONDUCTED A MULTI-OFFICER FELONY-
LEVEL TRAFFIC STOP BECAUSE HER FRONT LICENCE
PLATE WAS NOT MOUNTED WHERE HE FELT WAS
APPROPRIATE. BRIAN LOMA WAS ON FOOT WHEN
HE NOTICED THE STOP AND INITIATED A LIVE-
STREAM VIDEO. DESPITE PERSONALLY KNOWING
LOMA, WHO HAS NEVER HAD ANY SHOWING OF VIOLENCE,

MC-8                        (59)

Q. STATEMENT OF CLAIMS (CONTINUED)

AND NO LEGITIMATE CONCERN FOR HIS SAFETY, GUZMAN FORCED COMA BACK, AND THEN STILL UNSATISFIED WITH COMA'S PRESENCE, ACCOSTED HIM AGAIN AND SEARCHED HIM FOR WEAPONS. [10x30]

83.    ON 2019 FEB ____, BRIAN COMA WAS WALKING A FRIEND (BONNIE) FOLLOWING DINNER ON THE 16TH STREET MALL WHEN THEY OBSERVED A PRIVATE SECURITY GUARD BOTHERING AN APPARENTLY HOMELESS MAN. COMA INITIATED A LIVE-STREAM VIDEO AND BEGAN RECORDING THE INTERACTION. WHEN THE SECURITY GUARD (FELICIA) NOTICED HIM, SHE ASSAULTED HIM AND TRIED TO SEIZE HIS CAMERA. HE EVADED HER AND KEPT RECORDING. FELICIA CALLED DENVER POLICE AND PO SMITH RESPONDED WITH SEVERAL OTHERS. MULTIPLE PEOPLE WATCHING FELICIA ASSAULT COMA ON HIS LIVE-STREAM REACTED BY DRIVING TO THE SCENE TO RECORD AND SUPPORT COMA, INCLUDING (BRANDT,) (RIZARRY), DAVID ARCHBELL, MICHAEL SEXTON AND WINSTON NOLES. OFFICER SMITH WAS SUFFICIENTLY IRRITATED THAT HE SPOKE WITH BONNIE, NOT REALIZING SHE WAS ASSOCIATED WITH COMA, TELLING HER "[COMA] WOULD NOT EVEN BE GETTING A CITATION IF ERIC BRANDT AND HIS CREW HAD NOT SHOWN UP AND MADE A SCENE."    EVENTUALLY, COMA'S CHARGES WOULD BE DROPPED, BUT NOT BEFORE THE CITY WOULD USE THIS INCIDENT TO IMPOSE AN

63

2. STATEMENT OF CLAIMS (CONTINUED)

INAPPROPRIATE AREA RESTRICTION AGAINST LOMB
BANNISHING HIM FROM THE 16TH STREET MALL
(DISCUSSED IN MORE DETAIL LATER). [10x33]

84.    ON 2021JUN21, AT 1004PM, MICHAEL SEXTON,
WINSTON NOLES, AND JOHN REED OBSERVED SEVERAL DENVER
POLICE OFFICERS SURROUNDING SEVERAL APPARENTLY HOMELESS
PERSONS IN CIVIC CENTER PARK, EACH ENGAGED IN
RECORDING THESE INTERACTIONS. EACH WAS ARRESTED
AND CHARGED WITH VIOLATING THE CITY'S PARK
CURFEW. SEVERAL INTRIGUING OUTCOMES CAME
FORTH. FIRSTLY, ONLY THE 3 VIDEOGRAPHERS
WERE PROSECUTED - NONE OF THE HOMELESS WERE
CITED. SECONDLY, ONE OF THESE HOMELESS
ACTUALLY HAD A WARRANT FOR FAILURE TO
APPEAR ON A CAMPING-BAN CITATION, BUT WAS
INSTRUCTED TO "ADD ON TO THE WARRANT DOCKET"
RATHER THAN BE TAKEN INTO CUSTODY. THIRDLY,
THE VIDEOGRAPHERS WERE INFORMED THEY WOULD
BE ALLOWED TO TRAVERSE THE PARK WITHOUT
CITATION, BUT BECAUSE THEY "STOPPED TO RECORD",
THEY MUST BE CITED. FINALLY, OFFICER MENDER
INTERROGATED NOLES AS TO WHETHER HE WAS
ASSOCIATED WITH "ERIC BRANDT", AS A RESULT OF
HIS VIDEO RECORDING THEM. HE INFORMED NOLES
THAT [THEY] HAVE TO DEAL WITH BRANDT
RECORDING THEM ALL THE TIME. [10x 44]

MC-10                            (64)

D. STATEMENT OF CLAIMS (CONTINUED).

85.    IN THE MONTHS FOLLOWING THE 2018 SEP - FEB 2019 ARRESTS, LOMB WAS FORCED TO MAKE NUMEOUS TRIPS TO DENVER GOVERNMENT BUILDINGS FOR COURT-RELATED OBLIGATIONS. THESE BUILDINGS INCLUDED THE WELLINGTON WEBB BUILDING, THE BANNOCK BUILDING, THE POLICE ADMINISTRATION BUILDING, THE DENVER DETENTION FACILITY, AND THE MAIN COURTHOUSE. EACH OF THESE BUILDINGS EMPLOYS H.S.S. SECURITY TO CONDUCT SECURITY SCREENING FUNCTIONS. LOMB, A MEDICAL CANNABIS PATIENT, WAS OBJECTED TO HAVING TO FORFEIT FOR DESTRUCTION HIS PRESCRIPTION CANNABIS, WHERE OTHER PRESCRIBED CONTROLLED SUBSTANCES WERE NOT CONFISCATED FROM OTHERS (SUCH AS MORPHINE, CODINE, PERCOCET, ETC), HE RECORDED HIS INTERACTIONS, AS DID OTHERS OF THE GROUP, WHICH RESULTED IN SEVERAL VIDEOS BEING PUBLISHED WHICH NOT ONLY GREATLY EMBARRASSED THE CITY, BUT ALSO RESULTED IN VIEWERS BEING MOTIVATED TO COMPLAIN ABOUT THE ISSUE, AND/OR THE MISCONDUCT OF THE STAFF. DEFENDANTS RODRIGUEZ AND GARCIA WERE THE SUBJECT OF SOME OF THESE EVENTS, IF NOT AWARE. [10X 32]

86.    CONTEMPORANEOUSLY, BRANDT AND IRIZARRY WERE ENGAGED IN SIMILAR VIDEO PUBLISHING CONDUCT OVER A DIFFERENT ISSUE. SPECIFICALLY, BRANDT AND IRIZARRY WERE EMBARRASSING THE

MJC-11

(65)

MUNICIPAL PUBLIC DEFENDER'S OFFICE BY ENGAGING
MISCONDUCT, AND ACTUAL FRAUD, IN THEIR
INAPPROPRIATE DEMANDING OF APPLICANTS TO
FORCE THEM TO PROVIDE EVIDENCE OF SUPPORT
RESOURCES DISALLOWED BY THE SUPREME
COURT'S PUBLISHED PROCEDURES. [10x 38]

~~THIRD INCIDENT~~

87.    ONE INCIDENT ON 2019 JUN 21, DEFENDANT
RODRIGUEZ BECAME PARTICULARLY IRRITATED
WITH BARNOT AND COMB, WHO HAD BEEN TRYING
TO DETERMINE HER IDENTITY TO LODGE COMPLAINTS
AGAINST HER FOR HER REPEATED INCIDENTS OF
CANTANKEROUS AND UNPROFESSIONAL BEHAVIOR.
SHE WAS UPSET ABOUT BARNOT RECORDING HER,
AND SHE TURNED TO BARNOT AND BOLDLY
FLIPPED HIM OFF ~ ON CAMERA. [10x 43]

88.    BY THIS DATE, DENVER POLICE HAD ALREADY
BEEN GIVEN A TRAINING BULLETIN BY DEFENDANT POLICE
CHIEF PAZEN, DEFENDANT DEPUTY CHIEF ALGARD,
AND CITY ATTORNEY MARLEY BORDOVSKY ADVISING
THEIR OFFICERS ABOUT THE RIGHTS OF CITIZENS
TO RECORD POLICE. THIS BULLETIN WAS PUBLISHED
ON 2019 JUN 06, AND EXPRESSLY ADDRESSED CITIZENS
WHO RECORD POLICE AS LABELING THEM "FIRST
AMENDMENT AUDITORS". [10x 54]

66

MK-12

2. STATEMENT OF CLAIMS (CONTINUED)

89.      ALSO IN JULY, 2019, ANOTHER YOUTUBER, ALAN
MOODY, WAS ARRESTED IN CONNECTION WITH HIS FILMING
INTERACTIONS WITH STATE OFFICIALS OVER ISSUES
HE HAD SEEKING THE AMERICANS WITH DISABILITIES
ACT COORDINATOR. MOODY IS DEAF. BRANDT HAD
ACCOMPANIED HIM THAT DAY, WHEN THEY WERE BOTH
EXPELLED. A WEEK LATER, MOODY WAS ARRESTED
ON A WARRANT FOR "DISRUPTING GOVERNMENT OPERATION",
WHICH HE ULTIMATELY PREVAILED UPON. THE DPD
DETECTIVE ARRESTING MOODY UNCAPPED A 3-RING
BINDER DURING HIS TRANSFER BOLDLY LABELLED:
"FIRST AMEND TARDS" (AS IN RETARDS). THIS
DEMONSTRATES A SYSTEMIC BIAS AGAINST THOSE WHO
WOULD ENGAGE IN RECORDING AND PUBLISHING VIDEOS
ABOUT THE POLICE OR GOVERNMENT. [10X73] *SEE

90.      THIS WAS ALL DESPITE THE FIRST AMENDMENT
TRAINING BULLETIN PUBLISHED 2019JUN06 EXPRESSLY
ADDRESSING "A RECENT INCREASE OF INDIVIDUALS CONDUCTING
'FIRST AMENDMENT AUDITS'", THAT THEY MAY "FILM
ENCOUNTERS WITH LAW ENFORCEMENT OFFICERS OR
OTHER PUBLIC OFFICIALS IN PUBLICALLY ACCESSIBLE
AREAS [OR BUILDINGS] ", AND THAT THOSE ENCOUNTERS
"MAY BE POSTED ONLINE AND MAY ALSO SERVE AS
THE BASIS FOR FILING A LAWSUIT". [10X74]

91.      IN THIS SAME BULLETIN, PAZEN EXPRESSLY
PUTS FORTH: "REMEMBER THAT ALL CITIZENS HAVE

MC-13                                    67

THE RIGHT TO RECORD POLICE OFFICERS IN PUBLIC PLACES." [10x74]

92. THE CONTENTS OF THAT 20190JUN06 BULLETIN MAKE IT CLEAR THAT THE CITY ATTORNEY'S OFFICE, THE CITY OF DENVER, AND THE DENVER POLICE KNEW THERE EXISTED A SUBSTANTIAL RISK THAT THEIR OFFICERS WERE LIKELY TO COMMIT VIOLATIONS AGAINST CITIZENS RECORDING THEM.

93. AND YET MANY VIOLATIONS WOULD ENSUE.

94. DESPITE EXPRESSLY ACKNOWLEDGING CITIZENS RIGHTS TO RECORD POLICE IN PUBLICALLY ACCESSIBLE AREAS OF THE PUBLIC BUILDINGS, NUMEROUS CITY DEPARTMENTS, EMBARRASED BY THE "RECENT INCREASE" IN RECORDINGS, PAZEN, ARCHER, BRONSON, AND BERDOWSKI, CREATED A CONTRARY AND CONFUSING POLICY BANNING RECORDING IN THEIR POLICE DEPARTMENT LOBBIES. AND THIS DESPITE THESE LOBBIES BEING PUBLICALLY ACCESSIBLE PLACES. [10x46]

95. — ADDING TO A ___ — THIS "FIRST AMEND TARDS" BINDER FLOPPED OPEN WHEN IT LANDED AND DISPLAYED FOR MOODY TO SEE PAGES CONTAINING BIOGRAPHICAL INFORMATION TO INCLUDE FULL COLOR PHOTOGRAPHS OF VARIOUS KNOWN YOUTUBERS AND BRANDT ASSOCIATES. MOODY SPECIFICALLY RECOGNIZED DAVID ARCHBELL.

MC-14                    ⑥⑧

2. STATEMENT OF CLAIMS (CONTINUED)

96.    THE EVENTS OF THE INSTANT MATTER, WHICH OCCURED ON 2019 AUG 07 ARE COVERED IN DETAIL ELSEWHERE, HOWEVE IT WILL BE MENTIONED HERE THAT COMB WAS ARRESTED VIOLENTLY BY DEF. GARCIA OVER THE RECORDING ISSUE. [IOX 49]

97.    THIS RECORDING BAN WAS APPRENTLY IMPLEMENTED 2019 JUN 10 - JUST FOUR DAYS AFTER THE TRAINING BULLETIN. THE POLICE APPARENTLY DECIDED THEY DESERVED SPECIAL TREATMENT THAT OTHER PUBLIC AREAS DID NOT HAVE.

98.    TWO DAYS AFTER THE INCIDENT EVENTS, THE MUNICIPAL PUBLIC DEFENDER, ACCORDING TO TESTIMONY BY ALICE NORMAN - LEAD PUBLIC DEFENDER - WORKED WITH THE MUNICIPAL AND DISTRICT COURTS PRESIDING JUDGES TO IMPLEMENT A SERIES OF RULES BANNING RECORDINGS IN PUBLIC AREAS OF THE COURTHOUSE. THIS WAS DONE IN DIRECT RESPONSE TO BRANDT AND INIZARRY'S WORKS EXPOSING HER DEPARTMENTS ISSUES. JOINT ORDER 19-2 BANNING RECORDINGS IN THE PUBLIC AREAS OF THE COURTHOUSE (WHICH CONTAINS THE PUBLIC AREA OF THE PUBLIC DEFENDER'S OFFICE) WAS ENACTED 2019 AUG 09 IN ORDER SHIELD THE GOVERNMENT FROM EXPOSURE OF FRAUD AND RIDICULE. [IOX 50]

MC-15

69

99. THIS JO19-2 WAS THE PREMISE FOR BRIAN LOMA BEING REMOVED FROM A CITY COUNCIL MEETING, AS WERE MEMBERS OF DENVER HOMELESS OUT LOUD (DHOL) AND OTHERS, BY LAW ENFORCEMENT, DUE TO THEIR LACK OF UNDERSTANDING THAT THE RECORDING BAN DID NOT ENCOMPASS NON-COURTROOM AREAS OF THE BANNOCK BUILDING, OR WELLINGTON WEBB BUILDING. THIS FURTHER EXEMPLIFIES THAT THE BAN WAS IMPLEMENTED AT THE REQUEST OF, AND FOR THE BENEFIT OF - THE PUBLIC DEFENDER. IT ALSO DEMONSTRATES THE HYPER-SENSITIVITY OF DENVER TO HAVING THEIR CONDUCT RECORDED BY CITIZENS AND THEIR DESPERATE (KNEE-JERK) REACTIONS TO TRY AND ELIMINATE THE PROBLEM. [10X 51]

100. ~~ON NOT~~ BEGINNING IN ABOUT SEPTEMBER, 2019, DENVER SHERIFF DEPUTIES BECAME VERY ANTAGONISTIC AND AGRESSIVE WITH SO-CALLED "MEMBERS OF OCCUPY [DENVER]. THIS WAS PARTICULARY TRUE OF DEPUTY GAREGNANI. THESE OFFICERS KNEW THEIR MISCONDUCT COULD NOT BE RECORDED, AND THEREFORE, THE WERE ABLE TO CONTROL THE NARRATIVE WITH IMPUNITY. IT WAS CLEAR TO BRANDT AND HIS ASSOCIATES THAT GAREGNANI, IN PARTICULAR,

MC#15                    (70)

WAS AWARE OF HIS NEW POWERS, AND ENJOYED ABUSING THEM. [10X52]

101.    ON 2019DEC11, GARGNANI WAS ENGAGED IN MISCONDUCT AGAINST BRANDT AND IRIZARRY WHEN HE NOTICED WHAT HE BELIEVED TO BE CARYN SODARO RECORDING HIM. HE REMINDED SODARO SHE COULD NOT RECORD INSIDE THE COURTHOUSE. HE THEN WALKED AWAY FROM HER, AND SHE THEN TURNED AWAY AND LEFT THE BUILDING. LATER THAT DAY, SHE RETURNED AND GARGNANI, THROUGH DEFENDANT LUCERO AND DEFENDANT CILKER, INITIATED A CRIMINAL TRESPASS PROSECUTION AGAINST SODARO FALSELY CLAIMING HE HAD BICKED HER OUT FOR RECORDING EARLIER THAT DAY. [10X53]

102.    THE DPD ARREST OF LOMB IN THE INSTANT MATTER AND THE SODARO ARREST ON 2019DEC11 SHOW THE CITY WILL CRIMINALLY PROSECUTE "FIRST AMENDMENT AUDITORS" OR THOSE DARING TO RECORD THEM. AND LIKE THE INSTANT MATTER, BOTH INCIDENTS DEMONSTRATE THEY ARE WILLING TO LIE WHEN THEY KNOW THEY CANNOT BE RECORDED. IT TURNS OUT BOTH CASES ACTUALLY DID HAVE RECORDINGS, AND BOTH RECORDINGS PROVE THEY ACTUALLY LIED. BUT IT DOES NOT STOP THERE.

MC-17                            (71)

103.    ON 2019 DEC 29, DEPUTY GARZNANI WAS TAUNTING ALAN MOODY, AGAIN, BY BRUSHING PAST HIM AND PRETENDING TO SPEAK TO HIM (MOUTHING WORDS TO A KNOWN DEAF MAN, THEN WALKING AWAY WITH A SMIRK ON HIS FACE), AS USUAL. THIS CAUSED MOODY TO FOLLOW GARZNANI FOR WHICH GARZNANI SLAMMED HIM INTO A WALL AND ARRESTED HIM. THIS CAUSED A DISRUPTION IN THE CORRIDOR TO WHICH AN OUT-OF-TOWN VISITOR FROM OKLAHOMA, ANDREW BRAME, OBSERVED INTENTLY. DSO DEPUTY (WAYNE DARKO) BELIEVING BRAME WAS RECORDING, BUT WITHOUT ANY PROBABLE CAUSE, GRABBED BRAME, DRUG HIM OUTSIDE, AND KICKED HIM OUT OF THE COURTHOUSE. DARKO NEVER HAD ANY EVIDENCE TO PROVE HIS ALLEGATION. HE WAS RELYING ON A MERE HUNCH BECAUSE BRAME WAS IN ASSOCIATION WITH "OCCUPY" [DX 57]

104.    ON 2020 JAN. ____ , KEVIN DETRIVILLE, PREVIOUSLY UNKNOWN TO BRAME OR HIS ASSOCIATES, WENT TO DENVER POLICE DISTRICT 5 STATION WHILE LIVE-STREAMING HIS TRIP ON HIS FACEBOOK PAGE "DJ K.O.T. THE PARTY". DETRIVILLE WAS OUTSIDE ON THE SIDEWALK WHEN TWO DENVER POLICE OFFICER CAME TO THE LOBBY DOOR, OPENED IT, AND INQUIRED AS TO WHETHER

MC18

THEY COULD HELP HIM. HE ASKED FOR A COMPLAINT FORM. DURING THIS ENCOUNTER, THE OFFICERS NOTICED HE WAS RECORDING THEM. BECAUSE OF THE BAN ON RECORDING INSIDE THE LOBBY, AND BECAUSE THE OFFICERS WERE HOLDING THE DOOR OPEN, THUS RESULTING IN DETNVILLE RECORDING PAST THE OFFICERS AND INTO THE LOBBY, THE OFFICERS BACKSTED HIM, AS THEY HAD LOMA, AND CHARGED HIM WITH "UNLAWFUL CONDUCT ON PUBLIC PROPERTY." HIS CHARGES WERE ULTIMATELY DISMISSED. UPON INFORMATION AND BELIEF, DETNVILLE HAS FILED A §1983 SUIT. [COV61]

105.    ON 2020 AUG 25, MICHAEL SEXTON WAS VIDEO RECORDING AND LIVE STREAMING DENVER POLICE CONDUCTING YET ANOTHER "HOMELESS SWEEP". DPD LT SEAN FARRIS, WHO NOTABLY WAS THE I.A. OFFICER THAT INVESTIGATED AND DISCIPLINED OFFICER PHILLIPS FOR HIS 2019 FLASHLIGHT STROBE INCIDENT (SEE ¶___; EXBEJ), WAS STANDING SEVERAL FEET INSIDE OF POLICE TAPE LINE WHEN HE STOOD UP, PULLED OUT A BOTTLE OF PEPPER SPRAY, AND LUNGED AT SEXTON, WHO WAS STANDING OUTSIDE THE POLICE LINE HOLDING HIS CAMERA OVERHEAD, RECORDING OTHER OFFICERS ENGAGE FORCEFULLY WITH SEVERAL HOMELESS PERSONS. VIDEO CAPTURED FROM PROFILE BY A DIFFERENT

73

JOURNALIST SHOWS LT FRANKS LUNGE AT SEXTON, COME UP FROM UNDERNEATH SEXTONS FACE, AND DEPLOY PEPPER SPRAY DIRECTLY UP AT HIS FACE. THE FORCE WAS SUFFICIENT TO BLOW SEXTON'S GLASSES UP AND OFF HIS FACE. [10X 64]

106.    THE PRECEDING 23 INCIDENTS DEMONSTRATE A DECADE-LONG SYSTEMIC DISCRIMINATION AGAINST CITIZENS WHO WOULD RECORD PUBLIC OFFICIALS AND EXPOSE THEIR MISCONDUCT BY THE CITY AND COUNTY OF DENVER. THE WIDE-SPREAD CUSTOM AND PRACTICE IS BOTH UNWRITTEN, AND PARTIALLY WRITTEN AND ENCOMPASSES NEARLY A DOZEN INDIVIDUALS—MANY OF WHOM ARE NOT DIRECTLY ASSOCIATED WITH BRANDT.

107.    THE CITY DISCRIMINATES AGAINST A CLASS OF INDIVIDUALS BASED ON THEIR CONDUCT OF RECORDING PUBLIC OFFICIALS.

108.    THE CITY REFERS IN THEIR OWN RECORDS TO THIS CLASS OF PERSONS VARIOUSLY NOT LIMITED TO: "COP WATCHERS"; "COP BLOCKERS"; "FIRST AMENDMENT AUDITORS"; "FIRST AMEND TARDS"; "THOSE WHO WANT TO FILM POLICE [OR OTHER PUBLIC OFFICIALS]"; AND OTHERS.

109.    PLAINTIFF ASKS THIS COURT SIMPLY TO RECOGNIZE THESE AS A SINGLE CLASS OF "CITIZEN RECORDERS"

WC-21

D. STATEMENT OF CLAIMS (CONTINUED).

## CLASS DISCRIMINATION:
## "OCCUPY DENVER"

110.  THE CITY AND COUNTY OF DENVER HAS A LONG-STANDING, WIDE-SPREAD PRACTICE AND/OR CUSTOM OF DISCRIMINATING AGAINST INDIVIDUALS THE CITY ASSOCIATES WITH SO-CALLED "OCCUPY DENVER".

111.  THE DENVER POLICE AND THE DENVER SHERIFF'S DEPARTMENT OPENLY REFER TO "OCCUPY" WITHIN SPEECH, RADIO TRAFFIC, AND REPORTS.

112.  DENVER REGULARLY TARGETS INDIVIDUALS FOUND IN ASSOCIATION WITH CERTAIN INDIVIDUALS, CLASSIFYING THOSE INDIVIDUALS COLLECTIVELY.

113.  IN A SIMILAR MANNER, DENVER ALSO GROUPS INDIVIDUALS IN ASSOCIATION, OR WHO ENGAGE IN FREE SPEECH ACTIVITIES SUCH AS PROTESTING OR RECORDING POLICE AS PRESUMPTIVELY ASSOCIATES OF ERIC BRANDT, EVEN REFERRING TO THOSE INDIVIDUALS AS "BRANDT'S CREW", AS WELL AS "OCCUPY" OR "OCCUPY DENVER".

114.  DENVER HAS TARGETED OCCUPY DENVER SINCE AT LEAST THE 2012 CIVIC CENTER PARK VIDEO RECORDING INCIDENT DESCRIBED EARLIER. [10#2]

115.  DENVER HAS TARGETED OCCUPY DENVER WHILE THE GROUP HAS FED THE HOMELESS ON THE

O-1

(73)

16TH STREET MALL EVERY WEEK SINCE 2012. THESE NUTRITIONS AND HOT MEALS WERE ACCOMPANIED BY DEMONSTRATIONS SPEAKING OUT AGAINST THE URBAN CAMPING BAN, AGAINST DENVER AND THE DENVER POLICE AND AGAINST 16TH STREET MALL BUSINESSES WITH MEMBERSHIP WITH THE DENVER DOWNTOWN BUSINESS PARTNERSHIP. (THE DDBP DRAFTED, LOBBIED AND PASSED THE U.C.B.) THERE WERE DOZENS OF DENVER POLICE INTRUSIONS ONTO THESE DEMONSTRATIONS AND MANY ARRESTS. THE FIRST DOCUMENTED ARREST WAS JANET MATZEN IN 2013. SHE WAS ACQUITTED OF DISTURBING THE PEACE. JANET MATZEN PERSONALLY FUNDED, COOKED, AND SERVED THESE MEALS FOR MORE THAN 8 YEARS. [10X 4] ("JANET'S KITCHEN")

116.   JANET MATZEN WAS ALSO A PARTY TO THE 2015 JURY NULLIFICATION LAWSUIT AGAINST DENVER (VERLO, MATZEN, F.I.J.A V. DENVER) WHICH SPARKED THE COURTHOUSE PLAZA PROTESTS AND RESULTED IN AN INJUNCTION AND ULTIMATELY CONTEMPT CITATION AGAINST DENVER. [10X 4, 8, 11, 12, 13]

117.   THE 2018 ARRESTS AT THE CORNER BAKERY WERE EACH ASSOCIATED WITH JANET'S KITCHEN. DENVER REFERRED TO JANET'S KITCHEN PERJORATIVELY AS "OCCUPY DENVER". [10X 16, 17, 18, 19, 22, 23, 24, 26, 28, 29, 30, ⊕ 36,]

0-2

118.    ON 2018SEP30, CBS4 NEWS DID A SEGMENT ON THE ISSUES SURROUNDING DENVER'S ARRESTS OF SODANO, LOMA, WHITNEY, AND BRANDT. THIS SEGMENT FOCUSSED ON THE GROUP'S WORK FIGHTING DENVER'S ANTI-HOMELESS CONDUCT. THE SEGMENT AIRED THAT EVENING AND WAS POSTED ON CBS4 NEWS' WEBSITE. A FEW DAYS LATER, THE STORY WAS PULLED OFF THEIR SITE. ON 2019MAR __ AT THE MLK MARCH, LOMA SPOKE WITH THE REPORTER INVOLVED. SHE ADVISED HIM THE STORY WAS PULLED BECAUSE THE CITY, THE POLICE, AND THE DDBP, ALL WHOM HAD DECLINED TO COMMENT AT THE TIME, PRESSURED PRODUCERS CLAIMING THE SEGMENT WAS UNFAIRLY BIASED. [10X22, 37]

119.    DURING BRIAN LOMA'S 2018SEP23 ARREST, CPL CHAVEZ TRANSPORTED LOMA TO THE JAIL. DURING THIS TRANSPORT, CHAVEZ ~~BRAG~~ BOASTED HOW DENVER POLICE WERE GETTING RID OF CARYN SODANO BY NAME. SODANO IS ONE OF THE MOST STEADFAST SUPPORTERS OF OCCUPY DENVER MOVEMENT. IT WAS THIS BODY CAMERA, WHICH WAS NEVER PRODUCED, THAT BRANDT WAS DEMANDING OF CHAVEZ ON 2018NOV04 JUST BEFORE CHAVEZ WENT BERZERK ON HIM. [10X17, 27]

120.    IN THE MONTHS FOLLOWING THE 2018SEP23

INCIDENTS), AND LEADING UP TO THE 2019.MAR.04 DRAZEN-SMITH EMAIL CHAIN, DENVER POLICE UNDER DIRECTION OF LT CHAVEZ AND SGT GUZMAN TARGETED NUMEROUS INDIVIDUALS WHO, BEING MOTIVATED BY THE STORIES BEING PUBLISHED ABOUT THE U.C.B. AND JANET'S KITCHEN, CAME DOWN TO THE MEALS AND DEMONSTRATIONS TO SUPPORT, ASSIST, OR BROADCAST. THEY WERE STALKED, SOMETIMES AT GREAT RESOURCE DIVERSION, AND VIOLENTLY POUNCED ON IF THEY WERE PERCEIVED TO COMMIT THE SLIGHTEST INFRACTION. UPON INFORMATION AND BELIEF, THIS WAS MOTIVATED BY A DESIRE TO IDENTIFY THESE "NEWCOMERS" TO THE GROUP. MANY OF THEIR PHOTOS AND BIOGRAPHICAL WRITE-UPS WOULD BECOME PART OF THE "LIST OF OCCUPY MEMBERS", AND WERE INCORPORATED INTO THE "FIRST AMEND THINGS" BINDER. [10X 28, 29, 30] (10X 29 IS REFERRED TO AS "THE GUZMAN SERIES" AND ENCOMPASSES MANY OF THESE INCIDENTS IN AGGREGATE)

7.21.    WE KNOW DENVER CLASSIFIES PEOPLE WHO ASSOCIATE WITH "OCCUPY DENVER" BECAUSE THEY ADMIT IT THROUGH THEIR OWN DOCUMENTS AND WORDS. DEFENDANT DRAZEN-SMITH MAKES NUMEROUS REFERENCES TO ~~XXXXXXXX~~

O-4                          (78)

"DIFFICULTY WHEN THERE ARE PEOPLE IN 'THE GROUP';"
AND "WE CONTINUE TO PROSECUTE 'THOSE FOLKS' VIGOROUSLY,
BUT HAVE HAD LIMITED SUCCESS IN GETTING A
PENALTY THAT ~~THEM~~ REALLY DETERS THEIR
BEHAVIOR". "THE GROUP" IS "OCCUPY"; "THOSE
FOLKS" ARE "OCCUPY"; AND "THEIR" BEHAVIOR
IS "OCCUPY PROTESTS". GUZMAN'S RADIO TRAFFIC
DURING THIS PERIOD IS REPLEAT WITH REFERENCES
TO INDIVIDUALS AT JANET'S KITCHEN AS
"OCCUPY". AND THE POLICE AND SHERIFF'S
REPORTS ARE RIDDLED WITH COMMENTS
SUCH AS "THE OCCUPY GROUP". DEFENDANT
CHAVEZ WAS RECORDED BY COMM ON THE
2019JUL15 SECOND ARREST AS ADVISING HIS
OFFICERS THAT "OCCUPY" WAS UP IN THE
AUDIENCE, AND THAT IF "THEY" MAKE ANY
OUTBURSTS, TO ARREST THEM. [10K 29,30,35, 53]

122. ON 2019DEC18, A DENVER MUNICIPAL JUDGE
EJECTED "ALL OCCUPY DENVER" FROM "THE
ENTIRE COURTHOUSE" BECAUSE HE FEARED
A DISRUPTION, REFERRING TO THEM AS "THE
WRONG KIND OF PROTESTORS". ("OCCUPY" WAS
NOT EVEN IN THE COURTROOM) [10K 54]

123. AFTER OBSERVING A PHOTO ARRAY WITH
SEVERAL ASSOCIATES PICTURES AT THE INFO DESK OF
THE COURTHOUSE, A PUBLIC RECORDS REQUEST

O-5                    (79)

For any documents concerning "Occupy Denver," a photo array was produced with nearly a dozen individuals identified.① Only 3 - Lang, Sodaro, and Brandt, had professed open support for the Occupy movement. All the others depicted were those recently found in association with Brandt. In particular, this included Michael Sexton [10x 44 - Civic Center Park recording], Winston Noles [10x 44, 49 (instant matter), 62 (portrayed for calling cops "poor")], Kyle Shockley [10x 40,41 (Union Station), 45 ("do you know Eric Brandt"), 49 (instant matter), 56, 57, 58 (20190529 incidents - witness), and Alan Moody (a CCAP volunteer targeted by Gargiuli in particular). None of these individuals had any historic ties to "Occupy," but were classified, and targeted, as a result of their association with plaintiff Assidr. [10x 78].

124. Upon information and belief, Defendants Patzer, Archer, Boroushey, Orazen-Smith, and Bronson had numerous communications involving other city officials referencing "Occupy".

125. Defendants wrote their "enemy bulletins" referencing "groups" of individuals which we know to refer to "Occupy". [10x 46, 74]

O-6    ⑧0    ① See Attachment A "Occupy Denver"

2. STATEMENT OF CLAIMS (CONTINUED).

# THE ACTS

126.    THE CITY'S LIABILITY PURSUANT TO MONELL WAS ESTABLISHED IN THE PRECEDING MAJOR SECTION.

IT ALSO ESTABLISHED THROUGH THAT EXPOSE OF OTHER ACTS IS A DEEP-SEATED ANIMUS AGAINST PLAINTIFF WHICH IS PARTICULARLY STRONG WITH DEFENDANTS RODRIGUEZ, LUCERO, CITY ATTORNEYS, AND ESPECIALLY CHAVEZ.

127.    THIS ANIMUS EXTENDS BEYOND MERELY THIS PLAINTIFF AND ENCOMPASSES CLASSES OF INDIVIDUALS OF WHICH PLAINTIFF IS A MEMBER.

128.    AND IT HAS BEEN DEMONSTRATED THAT NOT ONLY THAT THE CITY KNOWS THAT GOVERNMENT AGENTS CANNOT BE CRIMINALLY "OFFENDED" BY PUBLIC CRITICISM, BUT THAT THERE IS A CUSTOM OF LEVERAGING SO-CALLED "PRIVATE CITIZENS" AS "VICTIMS" IN ORDER TO CIRCUMVENT THIS CONDITION IN ORDER TO EXACT REVENGE AGAINST DETRACTORS.

129.    DUE TO THE COMPLEXITY OF THIS SUIT, PLAINTIFF ORGANIZES THE DETAILS OF THE INSTANT MATTER VIS-A-VIS THE AFOREMENTIONED

A-0

ACTS OF THE CITY, AND DEMONSTRATE HOW THE PRESENT CONDUCT IS CONSISTENT WITH THESE EVENTS, AS A SERIES OF FOUR ACTS.

## ACT I: FIRST CONTACT

130.    ACT I BRINGS HISTORICAL LINKAGE OF THE ACTORS INVOLVED IN THE EVENTS COVERING THE MOMENT KYLE SHOCKLEY ENTERS THE BUILDING THROUGH ERIC BRANDT'S REFUSAL TO ANSWER DEFENDANT GARCIA'S QUESTIONS.    BOTH ACTS I AND II ARE TOLD FROM TWO PERSPECTIVES. THE FIRST VERSION OF EVENTS IS FROM THE PLAINTIFF'S PERSPECTIVE. PLAINTIFF'S VERSION OF EVENTS IS PUT FORTH HERE AS ASSERTION OF ACTUAL EVENTS, WHICH ARE WELL SUPPORTED BY HIS OWN OBSERVATIONS, DISCUSSIONS WITH HIS FELLOW ASSOCIATES, SHOCKLEY, BRIAN LOMA, AND CHAIM SOOARO, AND MOST IMPORTANTLY, BY OBJECTIVE RECORDED EVIDENCE — BOTH HALO SURVEILLANCE SOURCES, AND CRITICALLY, BECAUSE IT ALSO CAPTURES VIDEO AND AUDIO OF THE EVENTS. THE SECOND PERSPECTIVE PROVIDES THE VERSION OF EVENTS AS TOLD THROUGH THE WRITTEN REPORTS OF THE INVOLVED PUBLIC SERVANTS DEFENDANTS RODRIGUEZ, GARCIA, AND STARR-GIMENO, AS WELL AS NON-DEFENDANT

P. 1

OFFICER TRAN. NOTABLY, OFFICER TRANS VERSION OF EVENTS IS MORE ON TRACK WITH PLAINTIFF'S VERSION. THE OTHER THREE ARE REMARKABLY UNTRUE. ACT I SUPPORTS THE FACT THAT THERE EXISTED NO PROBABLE CAUSE TO SUPPORT BRANDT'S ARREST AND PROSECUTION. ACT I ALSO THAT IT WAS THE GOVERNMENT'S OUTRAGEOUS CONDUCT, AND NOT ANY MISCONDUCT ON THE PART OF PLAINTIFF, THAT PRECIPITATED THIS INCIDENT.

## ACT II : GARCIA GOES BERZERK

131. ACT II DEMONSTRATES DEFENDANT GARCIA UTTERLY LOOSING HIS COOL IN RESPONSE TO BRANDT'S EXERCISE OF HIS RIGHT TO NOT ANSWER GARCIA'S QUESTIONS. IT DEMONSTRATES THAT GARCIA'S CONDUCT WAS OBJECTIVELY UNREASONABLE IN EVERY ASPECT. ACT II ENDS WITH BRANDT'S ARREST.

## ACT III : DAMAGE CONTROL – THE COVER-UP

132. ACT III BRINGS FORTH THE AFTERMATH OF ACTS I AND II. ACT III IS FOUNDED ON BOTH DIRECT EVIDENCE, AND LOGICAL REASONABLE INFERENCES DRAWN FROM INCORPORATION

OF THE HISTORICAL LINKAGES PUT FORTH IN THE MONELL LIABILITY SECTIONS. ACT III BRINGS IN THE SUPPLEMENTAL DEFENDANTS CHAVEZ, LUCERO, PHILLIPS AND SHARP AS DIRECT PARTICIPANTS. IN ACT III., DEFENDANTS STAND HOURS SCRAMBLING TO COME UP WITH SOME PLAUSIBLE THEORY TO SUPPORT THEIR UNLAWFUL CONDUCT. DEFENDANTS KNOW THEY HAVE A LIABILITY PROBLEM, AND THEY HATCH A SCHEME TO MISDIRECT THE NARRATIVE TO PLAINTIFF IN ORDER TO CONCEAL THEIR OWN MIS-CONDUCT. THIS ACT SHOWS NOT ONLY THE DEFENDANTS NEED TO COVER UP THE INSTANT CONDUCT, BUT ALSO THEIR SADISTIC NEED TO EXACT REVENGE AGAINST BRANDT.

ACT IV : SUPERVISORY LIABILITY -
FAILURE TO ADEQUATELY TRAIN AND SUPERVISE

133. ACT IV INCORPORATES THE REMAINING CITY DEFENDANTS PAZEN, ARCHER, BOORSON, BORKOWSKY AND ORTEN-SMITH. THE CITY WAS NOT ONLY AWARE THEIR CUSTOMS, PRACTICES AND POLICIES WERE LIKELY TO CAUSE THE VIOLATIONS DESCRIBED, BUT THAT THERE EXISTED A POLICY TO TARGET BRANDT AND COMA SPECIFICALLY.

A-3

(84)

# ACT I: FIRST CONTACT

134. KYLE SHOCKLEY IS A SOCIAL-MEDIA JOURNALIST PUBLISHING REGULAR CONTENT ON HIS YOUTUBE CHANNEL "MONKEY 83". SHOCKLEY MOVED TO THE DENVER AREA AND BEGAN ASSOCIATING WITH PLAINTIFF IN EARLY 2019. SHOCKLEY IMMEDIATELY RECOGNIZED A NEED TO SPEAK OUT AGAINST POLICE MISCONDUCT IN DENVER, AND LIKE OTHERS WHO WOULD DARE SPEAK OUT AND CRITICIZE THE POLICE, QUICKLY BECAME VICTIMIZED BY THEM. ON 2019 JUN 02, SHOCKLEY WAS ARRESTED WITH ABADE ILLEGALLY FOR FREE SPEECH CONDUCT IN FRONT OF UNION STATION [IDX 40], AND HE WAS ALSO ARRESTED ON 2019 JUL 22 WHILE VIDEO RECORDING A POLICE ENCOUNTER INVOLVING CARYN SODARO, WHEREIN HE ASKED THE ARRESTING OFFICER: "DO YOU KNOW ERIC BRANDT? WELL? DO YA, PUNK?" OFFICER R.D. SMITH CHARGED SHOCKLEY WITH FELONY "ATTEMPT TO INFLUENCE A PUBLIC SERVANT BY THREATS OR COERCION", AND SEIZED HIS RECORDING DEVICE AS EVIDENCE. ~~THIS~~ THE CHARGES WERE QUICKLY DISMISSED AGAINST SHOCKLEY, AND HE RECEIVED AN ORDER RELEASING HIS DEVICE FROM EVIDENCE. ON THAT DATE, 2019 AUG 07, SHOCKLEY WENT TO DENVER POLICE HEADQUARTERS TO RECOVER

A 1-1

THIS DEVICE.

135. THE DENVER POLICE HEADQUARTERS (HQ) IS THE CENTRAL ADMINISTRATIVE LOCATION FOR THE ENTIRE DEPARTMENT, AND IS LOCATED AT 1331 CHEROKEE STREET IN DENVER, COLORADO.

136. HQ HAS A PUBLICALLY ACCESSIBLE LOBBY FROM WHICH MEMBERS OF THE GENERAL PUBLIC MAY ENTER TO CONDUCT A WIDE-ARRAY OF ACTIVITIES RELATED TO POLICE BUSINESS.

137. SOME OF THE ACTIVITIES INCLUDE, AMONG OTHERS, GENERAL QUESTIONS, CHECKING IN FOR APPOINTMENTS WITH DETECTIVES, REGISTERING FOR CONCEALED GUN PERMITS, OBTAINING FINGER-PRINTING, REPORTING CRIMES, BICYCLE REGISTRATIONS, REPORTING OR RECOVERING LOST PROPERTY, SEX-OFFENDER REGISTRATION, CONDUCTING INTERVIEWS, RECOVERING EVIDENCE, OBTAINING POLICE RECORDS, ETC.

138. OTHER ANCILLARY ACTIVITIES ENGENDERED ALSO INCLUDE BROWSING THE VARIOUS ARTWORK, RESPECT THE FALLEN OFFICER'S DISPLAY, STUDY THE HISTORIC LAW ENFORCEMENT TOOLS AND ARTIFACTS DISPLAYS, ETC.

139. IT IS ALSO PERFECTLY ACCEPTABLE TO MERELY OBSERVE POLICE AND STAFF IN PERFORMANCE OF THEIR DUTIES IN THIS OPEN-TO-THE-PUBLIC PLACE.

A1-2

86

140. BRIAN COMA ACCOMPANIED SHOCKLEY AND ENTERED THE LOBBY WITH HIM.

141. COMA HAS A LONG HISTORY WITH DENVER POLICE DATING BACK TO 2011 DURING THE "OCCUPY DENVER" PROTESTS, AND CONTINUING IN EARNEST TO THE PRESENT DAY. [IOX 3, 8, 16, 17, 18, 19, 22, 24, 26, 29, 30, 33, 41, 47, 51, 55, 29], 80]

142. COMA HAS BEEN PROMINENTLY FEATURED IN MAIN-STREAM MEDIA (CBS4, FOX31) SPEAKING OUT AGAINST DENVER POLICE AND URBAN CAMPING BAN. [IOX 22, 31, 51, 33, 79, 80]

143. COMA WAS ALSO ONE OF THE EXPRESSLY NAMED TARGETS OF THE 2019 MAY 04 DRAZEN-SMITH EMAIL CHAIN WHICH RESULTED IN COMA'S RETALIATORY AREA RESTRICTION. [IOX 33, 39]

144. AND IT WAS LARGELY COMA'S CANNIBIS ACTIVISM WITH DENVER'S PUBLIC BUILDINGS AND THEIR SECURITY STAFF WHICH WAS THE CATALYST IN THE POLICE BAN ON RECORDINGS AT POLICE LOBBIES WHICH PLAINTIFF IS CHALLENGING, AND THE ROOT OF COMA'S INSTANT ARREST. [IOX 46]

145. DUE TO THE GENUINELY HIGH RISK THAT CITY AGENTS WOULD ENGAGE IN MISCONDUCT DURING THIS ENCOUNTER, AND DESPITE THE BAN ON RECORDING, COMA WAS, NEVERTHELESS, RECORDING THIS EVENT IN SECRET.

A-3

146. IN PARTICULAR, LOMA WAS CONCERNED THAT THE WAS STILL HAVING ISSUES WITH THE VERY SECURITY STAFF PRESENT ON THIS DAY, AND ESPECIALLY DEFENDANT RODRIGUEZ, WHO WAS HABITUALLY INSOLENT, AND WHO HAD BEEN SLOW TO COME UP TO SPEED WITH THE POLICY CHANGES ALLOWING MEDICAL CANNIBIS - WHICH LOMA HIMSELF HAD ACHIEVED. [10x 32]

147. TRUE TO FORM, RODRIGUEZ WAS IMMEDIATELY CURT AND TESTY WITH LOMA, BUT NEVERTHELESS SCREENED HIM THROUGH SECURITY.

148. AN UNIDENTIFIED, UNASSOCIATED CITIZEN WAS ALSO SCREENED THROUGH BEHIND SHOCKLEY AND LOMA.

149. NONE OF THESE THREE WERE ASKED ABOUT THE NATURE OF THEIR VISIT. THIS IS CONSISTENT WITH PAST EXPERIENCES. THERE EXISTS NEITHER A POLICY NOR A GENERAL PRACTICE OF ASKING INDIVIDUALS TO DISCLOSE THEIR REASONS TO ENTER THE LOBBY WITH SECURITY STAFF.

150. IT WAS LOMA WHO DIRECTED SHOCKLEY TO THE BLACK PHONE IN THE BACK OF THE LOBBY, USED TO CONTACT PROPERTY AND EVIDENCE. HE ALSO FIELDED QUESTIONS FROM THE UNIDENTIFIED WOMAN.

151. RODRIGUEZ RETURNED TO HER DESK ABOUT 20 FT SO TO THE EAST OF THE SCREENING STATION.

152. ALL VISITING PUBLIC MUST PROCESS THROUGH THIS SECURITY SCREENING PROCEDURE.

A1-4                    (88)

153. THIS SCREENING PROCEDURE REQUIRES PERSONS TO PLACE PERSONAL BELONGINGS IN A BIN TO BE X-RAYED, AND THEN WALK THROUGH A METAL DETECTING PORTAL.

154. THIS SCREENING PROCEDURE IS LIMITED IN SCOPE TO THE DETECTION AND PRECLUSION OF DANGEROUS CONTRABAN SUCH AS WEAPONS, EXPLOSIVES, OR ILLEGAL DRUGS WHICH ARE NOT PERMITTED IN THE FACILITY.

155. ONLY WHEN THE SCREENING PROCESS REVEALS SUSPICIOUS OBJECTS, SECURITY PERSONS PERFORM FURTHER, MORE INDIVIDUALIZED SCREENING PROCEDURES WHEREIN THE CITIZEN IS ASKED TO REMOVE SUSPICIOUS OBJECTS FROM THEIR BELONGINGS FOR A MORE DETAILED INSPECTION.

156. WHEN MERELY PROHIBITED, BUT OTHERWISE LAWFUL OBJECTS ARE DETECTED, CITIZENS ARE GIVEN THE OPTION TO REMOVE THE ITEM FROM THE BUILDING AND RE-SCREEN, OR ELSE CONSENT TO CONFISCATION /DESTRUCTION.

157. ONLY IN THE EVENT THAT AN ITEM GIVES RISE TO PROBABLE CAUSE OF A CRIME BEING COMMITTED IS THE ITEM SEIZED BY ON-DUTY LAW ENFORCEMENT AS EVIDENCE.

158. RODRIGUEZ IS EMPLOYED THROUGH THE CITY AND COUNTY OF DENVER THROUGH H.S.S. SECURITY TO PROVIDE THESE SCREENING FUNCTIONS AND WAS ASSIGNED TYPICALLY TO HQ DURING THE TIMES RELEVANT TO THIS COMPLAINT.

A1-5

(89)

159. AS SUCH, PURSUANT TO 318-1-901 C.R.S, RODRIGUEZ IS A PUBLIC SERVANT; COLORADO MODEL JURY INSTRUCTIONS E: 306 DEFINES "PUBLIC SERVANT" AS "ANY OFFICER OR EMPLOYEE OF GOVERNMENT ... OR OTHERWISE PERFORMING A GOVERNMENTAL FUNCTION."

160. SHOCKLEY, HAVING NOT PREVIOUSLY BEEN EXPOSED TO RODRIGUEZ, FOUND HER RUDENESS SURPRIZING AND COMMENTED ABOUT IT.

161. IN THE PAST INTERACTIONS, COMA, BRANDT, AND OTHERS HAD ATTEMPTED TO LODGE COMPLAINTS AGAINST RODRIGUEZ, BUT WERE LARGELY THWARTED FROM DOING SO BECAUSE SHE WOULD REMOVE HER NAME TAG AND REFUSED TO IDENTIFY HERSELF.

162. COMA BRIEFLY EXPLAINED THIS NAME-HIDING, GAME-PLAYING HISTORY TO COMA.

163. A FEW MINUTES AFTER SHOCKLEY AND COMA SCREENED THROUGH, BRANDT AND SODARO ENTERED THE BUILDING.

164. BRANDT AND SODARO WERE ACCOMPANYING SHOCKLEY AND COMA MERELY TO OBSERVE THE RETURN OF SHOCKLEY'S PHONE.

165. BRANDT AND SODARO WERE ENGAGED IN A CONVERSATION AS THEY ENTERED, AND APPROACHED THE SCREENING STATION.

166. BOTH BEING VERY FAMILIAR WITH THESE

ENTRY SCREENING PROCEDURES, EACH INSTINCTIVELY PLACED THEIR BELONGINGS IN BINS AND APPROACHED THE SCREENING PORTAL TO WAIT FOR INSTRUCTIONS.

167.    BOTH SODANO AND BRANDT HAVE LONG HISTORIES WITH DENVER POLICE.

168.    SODANO'S HISTORY GOES BACK TO 2011 DURING THE "OCCUPY DENVER" PROTESTS AND CONTINUES THROUGH PRESENT DAY. SHE IS A LEGENDARY ACTIVIST IN THE METRO AREA. [IDX 3,8,16,22,24, 26,31,47,52,53,54,55,56,57,58,60,71,73,78,79] AND MANY MANY OTHER INCIDENTS.

169.    SODANO HAS BEEN DIRECTLY TARGETED BY DEFENDANT CHAVEZ SINCE 2018SEP23 [IDX 16], AND IS ENGAGED IN CIVIL LITIGATION (21-CV-01879 SODANO V. CHAVEZ) FOR HIS TARGETED ARREST JUST TWO WEEKS EARLIER AT THE MAYORAL INAUGURATION, IN WHICH LOMA HAD RECORDED CHAVEZ PLANNING HIS UNLAWFUL ARREST OF SODANO [IDX 47].

170.    BRANDT'S HISTORY WITH DENVER POLICE GOES BACK TO 2014 [IDX 6], BECAME NOTORIOUS DURING THE 2015 JURY NULLIFICATION PLAZA OCCUPATION, [IDX 7,8,9,10,11,12,13], AND HE BECAME A DIRECT TARGET OF CHAVEZ' AT LEAST AS OF THE CPL CHAVEZ INCIDENT 2018NOV04. [IDX 19,27,28, 35,42,60,75,58].

171.   AS BRANDT STOOD PATIENTLY AT THE SCREENING PORTAL, RODRIGUEZ APPROACHED HIM AND SAID: "YOU BETTER WATCH IT!"

172.   IT SHOULD BE MENTIONED THAT IN BRANDT'S PREVIOUS ENCOUNTER WITH RODRIGUEZ 2019JUN21, RODRIGUEZ WAS IRRITATED WITH BRANDT'S PRESENCE, AND IN PARTICULAR HIS VIDEO CAMERA, AND SHE SNARLED AT HIM AND CRISPLY "FLIPPED HIM THE BIRD". IN THAT VIDEO, WHICH BRANDT INCORPORATES HERE BY REFERENCE, ONE CAN SEE THE HOLES IN RODRIGUEZ' UNIFORM WHERE SHE HAD REMOVED HER NAME BADGE. BELOW IS A SCREEN SHOT FROM THAT VIDEO: *



* NOTICE FELLOW OFFICERS MEMORIALS IN BACKGROUND

72

A1-8

173. After Rodriguez agressively engaged Brandt telling him "you better watch it!", Brandt told her "you watch it. you work for me." He advised her to do her job to screen him through security.

174. At this, Rodriguez waved defendant officer Benjamin Garcia over from behind the information desk.

175. Garcia is a uniformed Denver police officer with more than 19 years experience with the Denver Police Department (Badge P00125)

176. Upon information and belief, Garcia was relegated to desk duty as a result of adverse disciplinary history landing on "the Brady list".

177. Garcia took over the scene, and Brandts very brief interaction with Rodriguez was over.

178. Garcia stomped up to Brandt and said: "I'm in charge of this space! Goodbye! Leave!"

179. Garcia then turned to Rodriguez and asked her: "What's he here for?"

180. Brandt calmly officer: "I'm here for my business." As Sodano simultaneously said "That's none of your business."

181. Garcia snapped back: "Yeah! It is our business! Turn around and leave!"

182. Brandt was very calm in response, simply saying: "I don't have to leave, Garcia."

93

183. GARCIA RETORTED; "YOU'RE IN OUR BUILDING!"

184. BRANDT TRANQUILLY SAID: "NO, YOU'RE IN OUR BUILDING, GARCIA."

185. GARCIA BARKED: "NO. I'M NOT."

186. BRANDT UNEXITEDLY SAID: "UH, YES."

187. GARCIA ASKED: "WHAT ARE YOU HERE FOR?"

188. BRANDT SAID: "I DON'T ANSWER QUESTIONS."

189. THE PRECEDING DESCRIBES THE ENTIRE FIRST CONTACT EVENT AS SUPPORTED BY THE OBJECTING RECORDINGS, THESE RECORDINGS, WHICH ARE CENTRAL TO THIS CASE, INCLUDE MULTIPLE SILENT HALO SECURITY RECORDING ANGLES, AND LOMA'S RECORDING WHICH ALSO HAS AUDIO AVAILABLE. ACT I CONCLUDES AT THIS JUNCTURE BECAUSE GARCIA'S CONDUCT FOLLOWING REQUIRED HIM TO HAVE ESTABLISHED PROBABLE CAUSE. ANY PROBABLE CAUSE FOR BRANDT'S ARREST AND PROSECUTION MUST BE OBJECTIVELY KNOWN TO GARCIA BY THIS TIME.

190. THE PROBABLE CAUSE STATEMENT FILED BY DEFENDANT PHILLIPS STATES: "INVESTIGATION DISCLOSED DEFENDANT BRANDT ENTERED THE LOBBY TO POLICE HQ AND POINTED AT [THE] PRIVATE SECURITY GUARD AND USED LEWD COMMENTS (SHIT BAG) DIRECTED AT HER."

191. EVEN IF THIS HAD BEEN TRUE, IT FALLS FAR SHORT OF THE NECESSARY "FIGHTING WORDS" BAR TO MEET THE REQUIREMENTS OF THE CRIME

A1-10

(91)

ALLEGED: "DISORDERLY CONDUCT"

192.    § 18-9-106 (1)(a) PROVIDES:
99 A PERSON COMMITS DISORDERLY CONDUCT IF HE
OR SHE INTENTIONALLY, KNOWINGLY, OR RECKLESSLY:
(a) MAKES A COARSE AND OBVIOUSLY
OFFENSIVE UTTERANCE, GESTURE, OR
DISPLAY IN A PUBLIC PLACE AND
THE UTTERANCE, GESTURE, OR DISPLAY
TENDS TO INCITE AN IMMEDIATE BREACH
OF THE PEACE.

193.    PURSUANT TO ERIC BRANDT V. WESTMINSTER,
18-9-106(1)(a) EXPRESSLY LIMITS LIABILITY TO ACTUAL
FIGHTING WORDS. (18-CV-1356___).

194.    PURSUANT TO PEOPLE IN INTEREST OF R.C., APP
2016, 411 P.3d. 1105, CERTIORARI DENIED 2017 WL 566,4821,
SPEECH THAT EMBARRASSES OR DISGRACES ANOTHER IS
INSUFFICIENT TO QUALIFY AS "FIGHTING WORDS", BEYOND
THE SCOPE OF CONSTITUTIONAL PROTECTION AND SUBJECT
TO LIABILITY UNDER THE DISORDERLY CONDUCT STATUTES,
EVEN VULGAR AND INSULTING SPEECH THAT IS LIKELY
P AROUSE ANIMOSITY OR INFLAME ANGER, OR EVEN
TO PROVOKE A FORCEFUL RESPONSE FROM
THE OTHER PERSON, IS NOT PROHIBITED.

195.    ALSO PURSUANT TO R.C., UTTERING THE WORD
"COCKSUCKER", THOUGH VULGAR AND PROFANE, IS NOT
A CRIME UNDER DISORDERLY CONDUCT STATUTE UNLESS ITS
MERE UTTERANCE WOULD TEND TO PROVOKE A
REASONABLE PERSON TO IMMEDIATELY RETALIATE
WITH VIOLENCE.

196.    ON 2019 JUN 06, 66 DAYS PRIOR TO THIS INCIDENT,

POLICE CHIEF PAZEN PUBLISHED A "FIRST AMENDMENT TRAINING BULLETIN". [TOX 74]

197.     THIS BULLETIN PROVIDES IN RELEVANT PARTS
        " YOU MAY ENCOUNTER INDIVIDUALS ... WHO
        MAY INSULT YOU IN AN ATTEMPT TO
        PROVOKE A RESPONSE FROM YOU. WHEN
        THAT HAPPENS, REMEMBER THAT CRITICISM,
        INSULTS, PROFANITY, OBSCENE GESTURES, AND
        DISPARAGING COMMENTS BY THEMSELVES
        ARE PROTECTED ~~SPEECH~~ BY THE FIRST
        AMENDMENT.

        AND " NOTE: CONTENT OF SPEECH BY ITSELF MAY
        NOT BE THE BASIS OF A CITATION OR
        ARREST UNLESS IT IS A PHYSICAL THREAT.

        AND ALSO A CHART ENTITLED:
        " WHAT IS PROTECTED SPEECH UNDER
        THE U.S. CONSTITUTION

        ▶ CRITICISM OF THE OFFICER, THE DEPARTMENT,
        THE CITY, OR THE EMPLOYEE:

        ▶ CURSE WORDS (NOT INCLUDED WITH A TRUE THREAT)

        ▶ NAME CALLING

        ▶ USING THE MIDDLE FINGER

        ▶ YELLING / RAISED VOICE

        ▶ OFFENSIVE LANGUAGE

        ▶ INSULTS TO OTHERS

        NOT PROTECTED SPEECH:

            ▶ THREATS ("I'LL KILL YOU IF YOU TOUCH ME")
            AND THE OFFICER REASONABLY BELIEVES
            THEY WILL BE HARMED.

            ▶ CHALLENGES TO FIGHT
            AND THE OFFICER REASONABLY BELIEVES
            THE INDIVIDUAL INTENDS TO FIGHT.

        AND " FOCUS ON PHYSICAL CONDUCT. THE WORDS
        USED CAN BE REFERENCED IN YOUR
        REPORT FOR NECESSARY ADDED CONTEXT.

AFF#2                              96

99 HOWEVER, THEY SHOULD NOT BE USED ALONE FOR THE REASON FOR THE CHARGE UNLESS THE WORDS ARE A THREAT OF VIOLENCE.

198. SIMPLY PUT, BRANDT'S CONDUCT WAS NOT IN ANY VIOLATION OF ANY LAW; EVEN THE ALLEGED CONDUCT WOULD HAVE BEEN PROTECTED SPEECH BASED ON COLORADO LAW, CASE LAW, AND EVEN THE DEPARTMENTS MOST RECENT TRAINING BULLETIN.

199. BUT IT GETS WORSE. BEFORE MOVING ON TO ACT II, WHERE GARCIA GOES BERZERK, PLAINTIFF WILL FIRST PUT FORTH THE SAME ACT I STORY AS WRITTEN FICTICIOUSLY IN THE OFFICIAL REPORTS. IT IS IMPORTANT TO REMEMBER THAT THANKS TO BRIAN LOMA'S RECORDING, IT IS INDISPUTABLE THAT THE FOREGOING VERSION IS THE TRUTH AND THE FOLLOWING VERSION IS AN OUTRAGEOUS LIE.

200. ANOTHER INTERESTING POINT IS THAT DESPITE THOSE OUTRAGEOUS REPORTS, THE ULTIMATE PROBABLE CAUSE STATEMENT WAS WATERED DOWN TO MERE "LEWD COMMENTS (SHIT BAG).

201. DEFENDANTS RODRIGUEZ, GARCIA, AND STARR-GIMENO SUBMITTED STATEMENTS CONCERNING THIS INCIDENT. BOTH RODRIGUEZ & STARR-GIMENO SIGNED

AI-13

(97)

THEIR STATEMENTS UNDER THE PRE-PRINTED AFFIRMATION "I HAVE READ THE FOREGOING STATEMENT AND THE FACTS CONTAINED THEREIN ARE TRUE TO THE BEST OF MY KNOWLEDGE AND BELIEF"; GARCIA ENTERED HIS STATEMENT USING THE CITY'S OFFICIAL LAW ENFORCEMENT REPORTING SYSTEM, WHICH BY DEPARTMENT POLICY, IS EQUIVALENT TO SIGNING UNDER SIMILAR AFFIRMATION.

202.    RODRIGUEZ PUT FORTH THE FOLLOWING VERSION OF EVENTS. NOTE SHE DID NOT USE ANY PUNCTUATION, SO THE PUNCTUATION USED IS INFERRED. ADDITIONALLY, FOR BREVITY, ONLY THOSE STATEMENTS WHICH STARKLY CONTRAST THE FACTS OF REALITY ARE PUT FORTH.

   "THE MAN LOOKED OVER TOWARD ME AT THE SECURITY DESK AND SAID "LOOK, THAT SHITBAG STILL WORKS HERE.""
   "I ASKED THE MAN "WHAT ARE YOU HERE FOR?""
   "HE SAID "I DON'T HAVE TO TELL YOU, SHITBAG.""
   "[HE AND THE WOMAN] STARTED TO CALL [ME] NAMES."
   "THE MAN SAID "I DON'T HAVE TO TELL YOU WHAT THE FUCK I'M HERE FOR.""

203.    THANKS TO THE CAMP RECORDING, WE KNOW BRANDT DID NOT CALL RODRIGUEZ A SHITBAG AT ALL, MUCH LESS REPEATEDLY; BRANDT AND SORIANO DID NOT STAND THERE CALLING RODRIGUEZ NAMES; RODRIGUEZ NEVER ASKED BRANDT WHAT HE WAS THERE FOR; AND "I DON'T ANSWER QUESTIONS." IS A FAR CRY FROM "I DON'T HAVE TO TELL YOU WHAT THE FUCK I'M HERE FOR."

204.    IT IS OBVIOUS RODRIGUEZ WAS INTENDING TO

MISCHARACTERIZE BRANDT AS A BELIGERENT, OUT-OF-CONTROL AGGRESSOR; SHE FURTHER ATTEMPTS TO MISDIRECT ATTENTION AWAY FROM HER OWN MISCONDUCT WHILE GIVING THE READER THE MISIMPRESSION SHE WAS BEING POLITELY DUTIFUL AND BECAME SOME UNDESERVING VICTIM.

205. RODRIGUEZ IS NO VICTIM; SHE IS A PERPETRATOR.

206. DEFENDANT LIEUTENANT DONNA STARR-GIMENO SUBMITTED A WRITTEN STATEMENT. THE FOLLOWING FALSEHOODS ARE EXCERPTED:

"I WAS WORKING IN THE POLICE HEADQUARTERS WHEN I HEARD A LARGE DISTURBANCE IN THE FRONT LOBBY. THERE WERE THREE PARTIES ATTEMPTING TO GO THROUGH SECURITY AND THEY WERE YELLING AND SCREAMING AT THE SECURITY PERSONNEL. WHEN I ARRIVED, A PARTY LATER IDENTIFIED AS ERIC BRANDT WAS CURSING, YELLING AT THE TOP OF HIS LUNGS AND THREATENING THE FEMALE GUARD."

207. STARR-GIMENO IS A LIEUTENANT WHO HAS 33 YEARS EXPERIENCE WITH THE DENVER POLICE DEPARTMENT. (BADGE # 86005).

208. THE FIRST PROBLEM WITH HER STATEMENT IS THAT SHE DID NOT COME TO THE LOBBY BECAUSE SHE HEARD A LARGE DISTURBANCE, BUT BECAUSE SHE WAS ADVISED BRANDT WAS IN THE LOBBY.

209. OFFICER BIHN TRAN, CONSISTENT WITH HIS TRAINING, ADVISED HER TO COME TO THE LOBBY. [IDX 79:] "WHEN YOU FIND YOURSELF IN A SITUATION WITH AN 'AVDITOR' I NOTIFY A SUPERVISOR."

210. TRAN MEMORIALIZED THIS IN HIS REPORT.

211. OFFICER BIAN TRAN IS A 28 YEAR VETERAN OF THE DENVER POLICE DEPARTMENT, BADGE # P91013, AND IS NOT A DEFENDANT IN THIS SUIT. HIS REPORT IS MARKEDLY DIFFERENT FROM HIS DEFENDANT COLLEGUES, AND SUBSTANTIALLY COMPARABLE TO THE OBJECTIVE RECORDINGS.

212. NEXT, WE KNOW THERE WERE NOT 3 PARTIES TRYING TO ENTER SECURITY. WHEN STARR-GIMENO ENTERED THE LOBBY, ONLY BRANDT AND SODARO WERE TRYING TO ENTER SECURITY. (SHOCKLEY & LOMA WERE ALREADY INSIDE)

213. FURTHERMORE, BY THE TIME SHE ARRIVED, THE EXCHANGE WITH GARCIA WAS IN A PURELY CONVERSATIONAL TONE - SO THE ASSERTION THAT "[THE THREE OF THEM] WERE YELLING AND SCREAMING AT SECURITY PERSONNEL" WAS PURELY FICTION.

214. STARR-GIMENO, IN AN OBVIOUS ATTEMPT TO PORTRAY BRANDT AS A VIOLENT CRIMINAL, SHE FLAT OUT LIED WHEN SHE SAID "WHEN I ARRIVED, BRANDT WAS CURSING, YELLING AT THE TOP OF HIS LUNGS," [AND MOST INCIDFOUSLY FALSE], "THREATENING THE FEMALE GUARD."

215. THANKS TO HALO AND THE COMA RECORDING, IT IS INDISPUTABLE THAT STARR-GIMENO IS LYING.

216. DEFENDANT GARCIA'S OFFICIAL REPORT IS SO LITTERED WITH LIES IT IS HARD TO FIND A SINGLE SENTENCE THAT IS TRUTHFUL.

A1-88

(100)

217. FOR THIS REASON, GARCIA'S VERSION IS PUT FORTH ONE LIE AT A TIME RATHER THAN IN GROUP AS HAD BEEN DONE WITH RODRIGUEZ AND STANA-GIMENO.

" USO SECURITY RODRIGUEZ ADVISED ME THAT [BRANDT] WAS CAUSING A DISTURBANCE AT THE ENTRY TO H.Q. SHE STATED THAT HE WAS SCREAMING, CUSSING AND NOT FOLLOWING DIRECTIONS IN ORDER TO GET INTO THE BUILDING."

1. RODRIGUEZ TOLD GARCIA BRANDT WAS "HARASSING ME IN MY WORKPLACE".

THIS IS CORROBORATED BY BRANDT'S EYE-WITNESS TO HER CONVERSATION WITH GARCIA, AND HER OWN STATEMENT.

2. WE KNOW BRANDT WAS NOT SCREAMING AND YELLING, NOT ONLY FROM TRAN'S REPORT:" TRAN COULD NOT HEAR WHAT WAS BEING SAID.", BUT BECAUSE OF LOMA'S RECORDING. IF BRANDT HAD BEEN SCREAMING, GARCIA - OR AT THE VERY LEAST, LOMA'S RECORDING - WOULD HAVE HEARD IT.

3. BRANDT WAS NOT REFUSING TO FOLLOW ORDERS - SHE NEVER GAVE ANY, NOR DID SHE REPORT IN HER STATEMENT THAT BRANDT WASN'T FOLLOWING ORDERS; FURTHERMORE, DIRECTIVES NOTWITHSTANDING, BRANDT WAS CLEARLY FULLY COMPLIANT WITH WRITTEN/POSTED DIRECTIONS & CUSTOMS-

AR-17                              (101)

218.   "I STEPPED OUTSIDE FROM THE INFORMATION DESK TO ADDRESS THE SUSPECT AND ADVISE HIM OF THE TROUBLE HE WAS CAUSING."

219.   GARCIA CERTAINLY DID NOT ADVISE BRANDT "OF THE TROUBLE HE WAS CAUSING." WHAT HE DID INSTEAD WAS STORM UP TO BRANDT AND SNAP "I'M IN CHARGE OF THIS SPACE! GOODBYE! LEAVE!" GARCIA HAD ALREADY DRAWN HIS CONCLUSION AND SUMMARILY DECIDED TO EVICT BRANDT.

220.   "MR. BRANDT IMMEDIATELY STARTED CURSING AT ME AND STATED HE DIDN'T HAVE TO FOLLOW ANY ORDERS BECAUSE THIS WAS HIS BUILDING."

221.   - BECAUSE OF THE LONG RECORDING, WE KNOW THIS IS A LIE. BRANDT DID NOT IMMEDIATELY START CURSING AT GARCIA. BRANDT SIMPLY, AND CALMLY SAID HE DID NOT HAVE TO LEAVE. WITHOUT PROBABLE CAUSE, BRANDT'S ASSERTION IS NOT A REFUSAL TO FOLLOW "ANY" ORDERS - MERELY A STATEMENT OF LEGAL FACT. BRANDT WAS MORE THAN WILLING TO FOLLOW ANY "LAWFUL" ORDERS; THE ORDER TO LEAVE WAS NOT LAWFUL.

222.   "MR. BRANDT WOULD NOT ALLOW ME TO QUESTION WHY HE WAS ENTERING THE BUILDING, AND KEPT SCREAMING "FUCK THE POLICE!"

223.   MR. BRANDT DID NOTHING TO PREVENT GARCIA FROM ASKING ANY QUESTIONS.

224. ALL MR. BRANDT DID WAS ADVISE GARCIA THAT HE DOES NOT ANSWER QUESTIONS.

225. IT IS RATHER DISTURBING IS GARCIA'S LIE THAT BRANDT "KEPT SCREAMING 'FUCK THE POLICE'". THIS IS A CALCULATED FALSEHOOD DESIGNED DELIBERATELY TO CONVINCE THE READER THAT BRANDT WAS CAUSING A DISRUPTION WHERE NO LEGITIMATE DISRUPTION ACTUALLY EXISTED.

228 ALL THREE GOVERNMENT AGENTS MALICIOUSLY SUBMITTED FALSE STATEMENTS DELIBERATELY DESIGNED TO JUSTIFY THEIR UNLAWFUL ACTIONS AND CURTAIL JUSTICE.

229 THEIR STATEMENTS FACTICIOUSLY VILLAINIZE BRANDT WHILE FACTICIOUSLY COUCHING THEIR OWN BEHAVIORS AS PROFESSIONAL, POLITE, AND APPROPRIATE.

230 PSYCHIATRISTS WOULD DIAGNOSE THEIR MISCONDUCT AS THE CRIMINAL THINKING PATTERN LABELLED AS "PROJECTION".

226. "MY LIEUTENANT (STARR - GILMER NO. ID #86005) CAME OUT TO TRY AND TALK TO MR. BRANDT, BUT ALL HE DID CURSE HER OUT AND NOT LISTEN TO HER."

227. THIS STATEMENT BELONGS ON THE BOUNDARY BETWEEN ACT I AND II, AND WILL BE MENTIONED HERE BECAUSE IT SHOWS THAT BRANDT WAS NOT UNDER ARREST AT THIS POINT. ALSO - BRANDT DIDN'T CURSE HER OUT.

(03)

A1-19

## ACT II : GARCIA GOES BERZERK

228. ACT I LEAVES OFF JUST BEFORE GARCIA LOOSES CONTROL. WE LEARN THAT 3 OF THE 4 DENVER AGENTS INVOLVED WROTE FALLACIOUS REPORTS IN AN ATTEMPT TO JUSTIFY WHAT HAPPENS NEXT IN ACT II. WE LEARN THAT THANKS TO ONE OFFICER'S REPORT (TRAN) AND BRIAN LOMA'S VIDEO AND AUDIO RECORDING, THAT THE TRUTH OF THE MATTER IS THAT PLAINTIFF BRANDT WAS CALM AND COLLECTED AND BEHAVED COMPLETELY LAWFULLY. THE MOST IMPORTANT THING MOVING INTO ACT II IS THAT NO REASONABLE OFFICER CONFRONTED WITH THE TRUTHFUL CIRCUMSTANCES COULD POSSIBLY BE HONESTLY COMPELLED TO BELIEVE ANY PROBABLE CAUSE EXISTED FOR ANY CRIME WHATSOEVER.

229. IN ACT II, GARCIA WILL COMMIT NUMEROUS VIOLATIONS THROUGH WHAT CAN BE APPROPRIATELY CHARACTERIZED AS OUTRAGEOUS GOVERNMENT CONDUCT. THE APPROPRIATE WORD IS "BERZERK".

230. AS WITH ACT I, ACT II IS DIVIDED FIRST INTO PLAINTIFF'S OBJECTIVELY SUPPORTED VERSION, AND THEN DEFENDANTS' PORTRAYAL AS FALSELY WRITTEN IN THEIR SIGNED REPORTS.

231. THE LAST ACTION OF ACT I WAS GARCIA ASKING BRANDT WHAT HE WAS THERE FOR AND BRANDT

AII-0                    (104)

Had calmly replied: "I don't answer questions."

232. Garcia next looked over to the bin Brandt had placed his belongings into for x-ray.

233. Garcia located and picked up Brandt's wallet from the bin. This fact is corroborated by HALO footage and Rodriguez' statement.

234. Garcia then searched Brandt's wallet, located his identification card, and removed it.

235. Garcia returned the wallet to the bin and kept the ID in his hand.

236. Garcia had no legal justification to seize Brandt's wallet, search it, and seize Brandt's ID.

237. Brandt reached out to retrieve his stolen ID.

238. When Brandt tried to grab his ID back, Garcia snarred it away from Brandt and began playing a sort of "keep away" game with Brandt saying "try it again" and then moving the target again.

240. Starr-Gimeno stood by and did nothing to intervene.

241. Removing and searching Brandt's wallet exceeded the scope of the limited search for unauthorized contraban. Garcia had no reason to believe Brandt's ID was contraban.

A2-1                           (105)

242.   BRANDT DEMANDED HIS ID BACK REPEATEDLY.

243.   SODARO SAID:" YOU CAN'T GRAB HIS SHIT LIKE THAT," SEVERAL TIMES.

244.   BRANDT SAID:" THAT'S AN UNLAWFUL SEIZURE, GARCIA. GIMME MY FUCKING SHIT BACK,"

245.   BRANDT INSISTED GARCIA GIVE HIM HIS ID, LET HIM PROCESS THROUGH SECURITY, AND CONDUCT HIS BUSINESS.

246.   GARCIA EXCLAIMED:" YOU'VE CAUSED A DISTURBANCE; YOU'RE DONE."

247.   BRANDT INSISTED HE HAD NOT CAUSED THE DISTURBANCE AND HE WAS NOT AUTHORIZED TO CONDUCT AN INVESTIGATION LIKE THAT.

248.   BRANDT EXPRESSLY TOLD GARCIA:" THIS IS A SEARCH FOR WEAPONS - NOT FOR MY I.D."

250.   GARCIA, STILL HOLDING BRANDT'S ID, TOLD BRANDT:" YOU NEED TO LEAVE."

251.   BRANDT TOLD GARCIA:" I'M NOT GONNA LEAVE."

252.   GARCIA RETORTED:" THEN YOU'RE GONNA GO TO JAIL."

253   BRANDT ASKED:" FOR WHAT?"

254.   GARCIA ANSWERED:" DISTURBING THE PEACE."

255.   PLAINTIFF, BEING VERY WELL INFORMED ON THE DISTURBING THE PEACE LAWS - CONSIDERING ITS NAME APPEARS IN THE ANNOTATIONS FOR C.R.S. §18-9-106 - BRANDT ADVISED GARCIA TO GO READ

A2-2                                    (page)

THE LAW ON DISTURBING THE PEACE.

256. GARCIA TURNED TOWARD HIS LIEUTENANT, STARR-GIMENO, AND SPOKE TO HER BRIEFLY BEFORE TRANSFERRING POSSESSION OF BRANDT'S ID TO HER.

257. BRANDT ALSO TURNED TOWARD HER AND STOOD SILENTLY TRYING TO HEAR WHAT WAS BEING SAID.

258. STARR-GIMENO, NOW IN POSSESSION OF BRANDT'S ID, TURNED TOWARD BRANDT AND BEGAN TO ADDRESS HIM.

259. STARR-GIMENO SAID: "EXCUSE ME, SIR--".

260. SUDDENLY, WITHOUT ANY WARNING WHAT SO EVER, BRANDT WAS SHOVED BY GARCIA FROM THE SIDE TOWARD THE DOORS.

261. BRANDT JUMPED BACK AND EXCLAIMED: "YOU TOUCHED ME?"

262. SODARO EXCLAIMED: "OH! YEAH! THAT'S ASSAULT!", "WOW!"

263. BRANDT RECOILED BACKWARDS THROUGH THE DOOR IN TERROR AS GARCIA LUNGED AT HIM WITH HIS FISTS RAISED IN A BOXING STANCE.

264. BRANDT CONTINUED RUNNING BACKWARDS FROM GARCIA ONCE OUTSIDE.

265. GARCIA PURSUED BRANDT WHILE WAVING HIS FISTS IN A BOXING MOVEMENT SCREAMING AT BRANDT: "YOU'RE A MAN! COME ON! LET'S DO IT! THERE'S NO CAMERA HERE! LET'S GO!"

A2-3

266. A TALL MALE LIEUTENANT HAD EITHER BEEN OUTSIDE OR FOLLOWED BRANDT AND GARCIA OUTSIDE. BRANDT NOTICED HIS INSIGNIA (TWO SILVER BARS). BRANDT CALLED OUT TO HIM "LIEUTENANT! YA BETTER CONTROL YOUR BOY HERE!"

267. SONADO RUSHED OUTSIDE AND SHOUTED AT GARCIA: "~~WHO IT~~ FUCK YOU! YOU PIECE OF SHIT! WHO THE FUCK DO YOU THINK YOU ARE!?"

268. BRANDT ALSO FOLLOWED WITH: "YEAH! WHO THE FUCK DO YOU THINK YOU ARE!?"

269. THE MALE LT MOMENTARILY STOPPED GARCIA FROM CHASING BRANDT.

270. BRANDT BEGAN CHANTING: "NO JUSTICE! NO PEACE! FUCK THE POLICE!"

271. JUST THEN, STAAB-GIMENO TAPPED BRANDT ON THE SHOULDER.

272. BRANDT STOPPED CHANTING AND TURNED AROUND TO FACE HER.

273. STAAB-GIMENO STOOD SILENTLY, HOLDING BRANDT'S ID IN ONE HAND.

274. BRANDT CALMLY SAID TO HER: "FIRST OF ALL, DON'T TOUCH ME. SECONDLY, GIVE ME BACK MY ID.

275. AT THIS POINT, SHOCKLEY, WHO HAD BEEN IN THE BACK OF THE LOBBY ON THE PROPERTY RETRIEVAL PHONE, RUSHED OUTSIDE.

A2-4                    (109)

276. AS SHOCKLEY RUSHED OUTSIDE, HE SHOUTED: "FUCK THE DENVER POLICE!"

277. THIS ENRAGED GARCIA WHO PLUNGED TOWARD HIM, AS SHOCKLEY BEGAN POINTING AT OFFICERS ONE-BY-ONE SAYING "FUCK YOU! FUCK YOU!..."

278. GARCIA RUSHED SHOCKLEY ~~[struck out]~~ WITH HIS DUKES RAISED AND BEGAN CHASING SHOCKLEY AS HE HAD BEEN CHASING BRANDT.

279. SHOCKLEY BEGAN RECOILING BACKWARDS SCREAMING "BACK UP FUCKLEBERRY! WHAT THE HELL YOU GETTING SO CLOSE FOR!"

280. BRANDT CONTINUED TO DEMAND STARR-GIMENO TO GIVE HIM BACK HIS I.D., AS GARCIA CHASED SHOCKLEY AROUND IN A QUASI FIGURE-EIGHT PATTERN.

281. SUDDENLY, GARCIA LUNGED TOWARD BRANDT AGAIN CRASHING THROUGH HIM AND STARR-GIMENO.

282. THIS STARTLED BRANDT WHO EXCLAIMED! "ARE YOU GONNA THREATEN ME AGAIN?!"

283. GARCIA BUMBLED THROUGH TO GET TO SHOCKLEY.

284. BRANDT AGAIN DEMANDED HIS I.D. BE RETURNED TO HIM.

285. SHOCKLEY BEGAN SHOUTING: "OH! SO NOW YOU'RE STEALING HIS PROPERTY TOO? GET THE FUCK OUTTA HERE! YOU FUCKING PRICK!"

A2-5

286.    AS GARCIA CONTINUED TO CHASE SHOCKLEY AROUND IN TUMULT.

287.    SHOCKLEY TOLD HIM: "I HOPE YOU KNOW YOU'RE BEING RECORDED, YOU DUMB FAT FUCK!"

288.    GARCIA SNIDELY BLURTED OUT: "GOOD!"

289.    BRANDT DEMANDED OF STARR-GIMENO AGAIN: "GIVE ME MY FUCKING PROPERTY AND THEN I WILL LEAVE!

290.    STARR-GIMENO ALLOWED BRANDT TO ENTER THE BUILDING FOR HIS PROPERTY.

291.    WHILE IN THE FOYER, BRANDT TOLD STARR-GIMENO: "GIVE ME MY ID, AND GIVE ME MY PROPERTY OR I WILL CHARGE YOU WITH THEFT." THIS WAS AT LEAST THE 13TH TIME BRANDT DEMANDED THE RETURN OF HIS ID.

292.    JUST THEN, SORRAO EXITED THE BUILDING; SHE HAD GONE INSIDE AND RECOVERED ALL THE PROPERTY IN THE BINS. SHE HANDED BRANDT HIS WALLET, PHONE, AND SUBWAY SANDWICH AND FOUNTAIN DRINK.

293.    BRANDT TURNED TO STARR-GIMENO AND SAID: "DETECTIVE: YOU BETTER FIX YOUR BOY HERE. HE'S THREATENING TO GO TO FISTICUFFS."

294.    STARR-GIMENO SAID: "EXCUSE ME?"

A1-6                    (110)

295.     JUST AS BRANDT WAS ⊗ ONCE AGAIN TRYING TO ENGAGE STARR-GIMENO IN PRODUCTIVE CONVERSATION, GARCIA BEGINS SCREAMING : " TURN IT OFF OR YOU GO TO JAIL! THERE'S ⊗ SIGN THAT SAYS 'NO RECORDING'! " ——

296.     BRANDT SUDDENLY HEARS COMA SCREAM! "WHOA! HEY! HEY! SOMEBODY GET MY PHONE!"

297.     BRANDT TURNED AROUND TO SEE GARCIA SLAMMING COMA INTO THE VENDING MACHINE ⊗ BY HIS THROAT AND COMA'S PHONE TUMBLING ACROSS THE FOYER.

298.     BRANDT SPUN AROUND AND TRIED TO CAPTURE COMA'S TUMBLING PHONE.

299.     STARR-GIMENO JUMPED ON BRANDT'S BACK AND SQUISHED HIM TO THE GROUND.

300.     JUST AS BRANDT WENT DOWN, HE WAS ABLE TO SEIZE COMA'S PHONE, AND CHUCKED IT BETWEEN HIS LEGS OUT THE DOOR, WHERE IT WAS QUICKLY SALVAGED BY WINSTON NOLES AND WALKED AWAY TO SAFETY. (NOLES WAS TAILING BEHIND AND HAD JUST WALKED UP.)

301.     BOTH COMA AND BRANDT WERE HAND-CUFFED AND WALKED INTO THE BUILDING WHERE THEY WERE PLACED IN HOLDING CAGES JUST TO THE NORTH OF THE INFO DESK.

302.     THIS CONCLUDES PLAINTIFF'S VERSION OF ACT II.

AL-7                    (11)

303. ACT II FROM THE PERSPECTIVE OF RODRIGUEZ GARCIA AND STARR-SIMENO IS MOST NOTEWORTHY IN THAT IT IS MUCH LESS EMBELLISHED - BUT STILL CONTAINS SUBSTANTIAL FALSEHOODS. IT ALSO IS MARKEDLY DEVOID OF GARCIA'S ALARMING CHASE SCENE SCENE. CONSIDERING THE INTENSITY OF THE CHASE SCENE WAS TRULY INSANE, IT SEEMS ODD THEY ALL AVOIDED DESCRIBING IT, ESPECIALLY SINCE THEY WENT INTO SUCH DETAILS TO MAKE-UP THE STORY ABOUT ACT I.

304. FOR ACT II, PLAINTIFF WILL BEGIN WITH OFFICER GARCIA'S ACCOUNT. BEGINNING AT THE BOUNDARY OF ACT I, GARCIA WROTE:
" my LIEUTENANT (STARR-SIMENO) CAME OUT TO TRY AND TALK TO MR. BRANDT, BUT ALL HE DID WAS CURSE HER OUT AND NOT LISTEN."

305. STARR-SIMENO DID INDEED ATTEMPT TO TALK TO BRANDT, SHE SAID EXACTLY THESE WORDS: "EXCUSE ME, SIR - -" BEFORE GARCIA AMBUSHED BRANDT FROM THE FLANK AND SHOVED HIM TOWARD THE DOOR. WHAT EVER SHE MIGHT HAVE SAID, NO ONE WILL EVER KNOW BECAUSE GARCIA OBLITERATED THE OPPORTUNITY.

306. GARCIA'S NEXT STATEMENT IS VERY SUSPICIOUSLY WORDED. GARCIA WRITES: " MR. BRANDT, ON HIS ON VOLITION, WALKED OUTSIDE OF H.Q. AND I FOLLOWED HIM."

A2-8

307. IT IS SUSPICIOUS HE WOULD OFFER THAT BRANDT "WALKED OUT" — "ON HIS OWN VOLITION" — IT WAS NOTHING CLOSE TO A WALK, AND NO REASONABLE OBSERVER COULD HAVE INTERPRETED IT AS VOLUNTARY. SIMPLY PUT — BRANDT WAS ATTACKED AND FLED IN TERROR. AND GARCIA CHASED HIM OUT TRYING TO FIGHT HIM.

308. THE ONLY REPORT THAT HINTS AT THE TRUE NATURE OF THIS ATTACK IS RODRIGUEZ, WHO SAID: "THE MAN SAID TO GARCIA COME ON ME AND YOU COME ON LITTLE MAN MF WAS MOVING HIS HANDS TO TELL GARCIA COME ON AS THE MAN WAS MOVING BACK OUT THE DOOR."

309. RODRIGUEZ ALMOST CAPTURES THE EVENT, EXCEPT THAT IT WAS GARCIA TAUNTING AND CHALLENGING BRANDT (AS ACCURATELY HEARD ON COMA'S RECORDING), AND BRANDT BACKED OUT IN A DEFENSIVE POSTURE.

310. GARCIA THEN ABBREVIATES THE OUTSIDE OCCURRENCE SIMPLY STATING BRANDT KEPT SCREAMING AND CUSSING ABOUT THE POLICE, BEFORE SHIFTING HIS REPORT TO BRIAN COMA. EVEN THE COMA PORTION IS BRIEF: "AS [BRANDT WAS LEAVING AFTER GETTING HIS STUFF], I OBSERVED [COMA] TAKING VIDEO OF US IN THE ATRIUM. I VERBALLY TOLD COMA TO STOP RECORDING DUE TO IT WAS A VIOLATION (8-9-117) TO VIDEO RECORD INSIDE THE BUILDING." COMA REFUSED ... SO I PUT COMA UP AGAINST THE WALL.

A2-9

(113)

311.    WHAT GARCIA FAILS TO ACKNOWLEDGE IS THAT HE NEVER GAVE LOMA A CHANCE TO COMPLY. HE NOTICED LOMA, WAS STILL HIGHLY ADRENALIZED, POINTED AT HIM, TOLD HIM TO TURN IT OFF, AND THEN IMMEDIATELY LUNGED AT HIM. HE ALSO FAILS TO MENTION THAT HE "SLAMMED" LOMA INTO THE WALL — BY HIS NECK.

312.    THIS INTENSE SCENE IS VERY CLEARLY CAPTURED BY LOMA'S CAMERA.

313.    IN HER 2019 JUNE EMAIL TO HER DEPARTMENT, DEFENDANT B. ARCHER (DEPUTY CHIEF) STATES OFFICERS SHOULD GIVE A CITIZEN THE OPPORTUNITY TO COMPLY, AND THAT ARREST SHOULD BE THE "LAST RESORT".

314.    AS FAR AS STAHL-GIMENO, SHE STATES: "DURING THE ENTIRE EPISODE, BRANDT WAS CURSING, YELLING AND SWEARING AT OFFICERS" (EMPH ADDED).

315.    THIS IS NOT TRUE. NOTABLY, EACH TIME BRANDT ATTEMPTED TO, OR WAS APPROACHED BY STAHL-GIMENO, HE INITIATED IN A CALM CONVERSATIONAL TONE. IT WAS NOT UNTIL SHE REFUSED TO GIVE BACK HIS ID THAT HE TOLD HER TO "GIVE MY FUCKING SHIT BACK." — HARDLY "ENTIRE".

A240    (114)

316. STAHL-SIMPSON, DESCRIBING ACTIVITIES OUTSIDE, STATES: "BRANDT WAS TOLD REPEATEDLY TO LEAVE THE PREMISES BY MYSELF AND OTHER OFFICERS".

317. GARCIA TOLD BRANDT TO LEAVE, BUT NO ONE ELSE DID. THAT NOTWITHSTANDING, NONE OF THOSE OFFICERS HAVE ANY AUTHORITY TO REMOVE BRANDT FROM THE PLAZA IN FRONT OF THE BUILDING ANYWAY.

318. STAHL-SIMPSON STATES: "BRANDT STATED HE WOULD LEAVE AFTER HE RETRIEVED HIS ITEMS FROM THE SECURITY BELT INSIDE THE BUILDING."

319. THIS IS A RARE ELEMENT OF TRUTH. MORE CRITICAL HERE IS THE OBVIOUS "STATE OF MIND OF LT STAHL-SIMPSON: BRANDT WAS FREE TO LEAVE ⇒ NOT UNDER ARREST.

320. SHE ALSO WRITES: "BRANDT THREW HIS DRINK, SPLASHING MY LEGS AND THEN THREW HIMSELF TOWARD MY LEGS."

321. THIS IS A WELL-CALCULATED STATEMENT TO TRY TO SUPPORT HER DESIRED CHARGES OF ASSAULTING A POLICE OFFICER, WHICH LUCERO TOLD HER LATER THE VIDEO DOES NOT SUPPORT.

322. WHAT ACTUALLY HAPPENED IS THAT SHE TRIED TO GRAB THE PHONE SIMULTANEOUSLY AND GOT MAD WHEN BRANDT BEAT HER TO IT, SO SHE SHOVED HIM DOWN "SPLASHING" HERSELF

A7-11                    (115)

323: IN SUMMARY, ACT II REVEALS THAT GARCIA, WITHOUT PROBABLE CAUSE, BEHAVED IN OUTRAGEOUS, VIOLENT, AND FRANKLY - CRIMINAL WAYS, AND HIS SUPERVISORS AND FELLOW OFFICERS ALLOWED HIM AND HELPED WITH DO IT. AND THEN WROTE THEIR STATEMENTS IN A WAY TO DEFLECT ATTENTION AWAY FROM HIS HORRIFIC CONDUCT AS IF IT NEVER HAPPENED, AND INSTEAD TRIED TO PAINT PLAINTIFF AS AN UNPROVOKED MANIAC. IT REVEALS THAT EACH OF THE THREE TIMES BRANDT AND STARR-SIMENO INITIATED RESPECTFUL AND PRODUCTIVE DIALOG, GARCIA HIMSELF DID SOMETHING VIOLENT AND SHOCKING TO CURTAIL THE ATTEMPT DEBUNKING HIS CLAIM THAT "ALL HE [BRANDT] DID WAS CURSE HER OUT AND NOT LISTEN TO HER [STARR-SIMENO]. AND IT REVEALS THAT GARCIA TERRORIZED NOT ONLY BRANDT, BUT SHOCKLEY AND COMA AS WELL.

324. GARCIA CAUSED A MASSIVE, CRIMINALLY DISRUPTING, DISTURBANCE OF THE DEGREE WHICH RESULTED IN TWO OF HIS VICTIMS, BRANDT AND COMA, IN CUSTODY.

THIS CONCLUDES ACT II.

A2-12

116

# ACT III: DAMAGE CONTROL

325. ACT I LEFT US WITH BRANDT ADVISING GARCIA THAT HE DOES NOT ANSWER QUESTIONS AFTER BOTH RODRIGUEZ AND GARCIA FEEL INSULTED.

326. ACT II LEFT US WITH GARCIA GOING BERSERK IN RETALIATION FOR BRANDT NOT ANSWERING HIS QUESTIONS.

327. ACTS I AND II INTRODUCES THE CIVILIAN ACTORS, AND NON-DEFENDANT OFFICER MAN, AND DEFENDANT GOVERNMENT AGENTS GARCIA, RODRIGUEZ AND STARR-GIMENO.

328. ALSO IN ACTS I AND II WE DISCOVER THAT, THANKS TO THE FACT BRIAN COMA WAS RECORDING, WE KNOW THAT THOSE THREE OFFICIAL REPORTS ARE SUBSTANTIALLY AND MATERIALLY UNTRUE.

329. ACTS I AND II EXPOSE MOTIVES AGAINST PLAINTIFF POSSESSED BY THOSE THREE DEFENDANTS NARROWLY ATTRIBUTED TO THIS INSTANT DAY, AND HISTORICAL MOTIVES ESPECIALLY ATTRIBUTED TO RODRIGUEZ.

330. ACT III WILL NOW TIE THEIR CONDUCT TO THE MUCH WIDER SCHEMES BY THE CITY TARGETTING AND RETALIATING AGAINST BRANDT AND COMA SPECIFICALLY, AND THEIR ASSOCIATES BY CLASSIFICATIONS.

A3-0

331.    ACT III RELIES HEAVILY ON THE FOUNDATIONS
PUT FORTH IN THE ELEVEN-YEAR HISTORY DESCRIBED
IN THE MONELL LIABILITY SECTION, AND BRINGS
IN THE REMAINING DIRECTLY PARTICIPATING
DEFENDANTS - CHAVEZ, LUCERO, PHILLIPS AND
STRAMP.

332.    THE THEME OF ACT III IS COVER-UP;
NOW THAT THEY HAVE ARRESTED BRANDT, THEY
KNOW THEY HAVE A PROBLEM, AND THEY SPEND
DAYS TRYING TO FIGURE OUT A WAY TO
STRUCTURE A PLAUSIBLE STORY THROUGH WHICH
THEY COULD SECURE A CONVICTION, AND
HOPEFULLY, GARNER A SEVERE CONSEQUENCE
AGAINST BRANDT. INSULATION FROM LIABILITY
IS ALSO A MOTIVE.

333.    ACTS I AND II WERE SUBSTANTIALLY EVIDENCED
BY BRIAN LOMA'S VIDEO/AUDIO RECORDING, WITH
SUPPORT FROM HALO FOOTAGE.

334.    ACT III IS SUPPORTED BY A WIDE
VARIETY OF EVIDENCE: HISTORICAL; CIRCUMSTANTIAL;
BRANDT AND LOMA'S EYE- AND EAR- WITNESSING;
AND ALSO BY INTERMITTENT BODY-WORN CAMERA
FOOTAGE FROM PHILLIPS AND LUCERO.

335.    AS SUCH, BRANDT FULLY INCORPORATES BY
REFERENCE ALL SUCH RECORDINGS, AS THEY
ARE CENTRAL TO THE ISSUES.

123-1        (115)

336. DENVER POLICE WERE DISPATCHED TO HQ TO ASSIST WITH "PROTESTERS" (U.S.S. SECURITY CHRISTINE ARMIZZO: "ONE OF THE PROTESTERS"; DEFENDANT PHILLIPS: "I RESPONDED TO POLICE HQ TO ASSIST THE OFFICERS THERE WITH PROTESTERS"), OR "DEMONSTRATORS" (DEFENDANT LUCERO: "[I] RESPONDED TO A CALL FOR ASSISTANCE AT POLICE HQ. REGARDING A GROUP OF DEMONSTRATORS.").

337. OF THE NUMEROUS OFFICERS RESPONDING, THREE ARE NAMED DEFENDANTS, AND ONE IS A MATERIAL WITNESS. OFFICER ANGELA HUNTER P18044 IS ONLY A WITNESS, AND NOT A DEFENDANT, AND RYAN PHILLIPS P04106, SGT JAMIE LUCERO P98061, AND LT KENNETH CHAVEZ P_____ ARE EACH NAMED DEFENDANTS.

338. PROSECUTING ATTORNEY ELIZABETH SHARP IS A NAMED DEFENDANT HERE BECAUSE SHE IS IDENTIFIED BY LUCERO AS THE D.A. MAKING THE DETERMINATION OF CHARGES.

339. ACT III PICKS UP THE STORY WITH BRANDT AND LOMA IN HANDCUFFS, AND IN TWO METAL CAGES BEHIND THE INFORMATION DESK.

340. BRANDT AND LOMA HAD AN EXCELLENT VANTAGE POINT FROM WHICH TO OBSERVE THE DEFENDANTS CONDUCT OVER THE NEXT 3 HOURS.

A3-2

341. HUNTER, PHILLIPS, LUCERO AND CHAVEZ ARRIVED AND STOOD DIRECTLY OUTSIDE BRANDT'S CASE WHERE GARCIA AND STARR-GIMENO JOINED THEM TO RECOUNT THEIR STORIES. THE STORIES WERE RETOLD SEVERAL TIMES IN AN EVER GROWING EPIC AND HEROIC TALE, EVOLVING WITH EACH ITTERATION.

342. MEANWHILE, OFFICER TRAN COULD BE SEEN BY BRANDT SITTING AT HIS DESK TYPING. WE KNOW FROM SYSTEM TIMESTAMPS THAT TRAN WAS TYPING HIS OFFICIAL STATEMENT. THE ARREST OCCURRED AROUND 0930, AND BY 1041, TRAN HAD COMPLETED HIS REPORT, WHILE THE OTHERS WERE STILL WORKING OUT THEIR "VERSIONS" OF EVENTS.

343. AS A RESULT OF COMPLETING HIS REPORT INDEPENDENTLY OF THE DISCUSSIONS ENGAGED IN BY HIS FELLOW OFFICERS, TRAN'S REPORT IS NOT CONTAMINATED WITH THE SAME FALSE STATEMENTS AS THE OTHERS. TRAN'S REPORT IS IN STARK CONTRAST TO THE OTHERS AND POSSESSES A MUCH HIGHER FIDELITY TO THE OBJECTIVE EVIDENCE.

344. WHILE TRAN WROTE HIS REPORT LUCERO AND CHAVEZ MASSAGED THE STORY OUT OF RODRIGUEZ, OR GARCIA AND STARR-GIMENO RUNNING VARIOUS THEORIES OF PROSECUTION BACK AND FORTH.

A3-3

345. For Coma, the charges were easy. Coma was believed to be recording, and the city attorney and police chiefs had just recently decided this would be a crime. Coma was charged with 18-9-117(1)(6) - Unlawful conduct on public property - use restricted by rule. It is this department rule is being challenged in claim XIII.

346. Lucero released Coma on summons, "instead of jailing ... in part, because his part in the incident was limited and non-violent."

347. This implies by logical inference that he considered Brandt's behavior to be violent, or at the least attempts to suggest so.

~~[struck through text, illegible]~~

~~[struck through text, illegible]~~

~~[struck through text, illegible]~~

348. Defendants struggled to solve their Eric Brandt problem. Lucero and Clark, as a result of their past experiences with Brandt, were particularly motivated to find some charge that could stick. They were also aware of the city's published plan to take down Brandt and Coma by name (see Craven-Smith email chain E1DL35)

A3-4

350. BRANDT OBSERVED DEFENDANTS MULL OVER THE STORY ATTEMPTING TO MAKE FACTS BELIEVABLE TO SUPPORT CHANGES RANGING FROM PETTY OFFENCES, TO MISDEMEANORS, AND TO FELONIES.

351. STARR-GIMENO WANTED BRANDT CHARGED WITH FELONY ASSAULT ON POLICE, WHICH LUCERO, AFTER WATCHING THE HALO VIDEO CONCLUDED COULD THIS COULD NOT BE SUPPORTED.

352. OTHER CHANGES CONSIDERED INCLUDED OBSTRUCTION, TRESPASS, HARASSMENT, AND INTERFERENCE WITH GOVERNMENT OPERATIONS.

353. WHEN IT SEEMED HOPELESS FOR THEM, LT STARR-GIMENO, EXASPERATED, TOSSED HER HANDS IN THE AIR AND SAID " CAN'T WE JUST CHARGE HIM WITH BEING A JACKASS IN PUBLIC ?" THIS WAS CAPTURED IN EMBARRASSINGLY HIGH RESOLUTION ON LUCERO'S BODY CAMERA.

354. CHAVEZ AND LUCERO WERE PARTICULARLY CONCERNED, BECAUSE THEY KNEW A WARRANTLESS ARREST OF BRANDT WITHOUT A CONVICTION HAD A HIGH RISK OF LITIGATION. CHAVEZ INSISTED THEY MUST FIND A WAY TO MAKE THE STORY FIT A CONVICTION. CHAVEZ INSTRUCTED LUCERO TO CONTACT THE PROSECUTION AND FIGURE SOMETHING OUT

143-5.    (122)

355. OF THE FACTS DISCUSSED BETWEEN DEFENDANTS WAS THE FACT THAT RODRIGUEZ WAS NOT "TECHNICALLY" A LAW ENFORCEMENT OFFICER. AS SUCH, DEFENDANTS AGREED RODRIGUEZ COULD QUALIFY AS A "PRIVATE CITIZEN". CONSISTENT WITH THERE ONGOING, WELL-ROOTED, IGNORANCE OF THE LAW, CHAVEZ AND LUCERO REMAIN CONVINCED THAT "PRIVATE CITIZENS", UNLIKE POLICE OFFICERS, CANNOT BE "INSULTED".

356. THESE FACTS WERE RELAYED TO D.A. SHARP, AND IT WAS DETERMINED BRANDT WOULD BE CHARGED WITH "DISORDERLY CONDUCT" FOR "CALLING RODRIGUEZ A SHITBAG".

357. ULTIMATELY, PHILLIPS WROTE A PROBABLE CAUSE STATEMENT AND TRANSPORTED BRANDT TO THE DOWNTOWN DETENTION CENTER WHERE HE WAS BOOKED ON 18-9-106 (1)(a) -DISORDERLY CONDUCT -FIGHTING WORDS-

358. BRANDT WAS MADE TO POST A MONETARY BOND AND WAS RELEASED EARLY THE NEXT DAY.

359. BRANDT WAS FORCED TO ENDURE THE RIGORS OF A CRIMINAL PROSECUTION FOR MANY MONTHS BEFORE HIS CHARGES WERE ULTIMATELY DISMISSED IN HIS FAVOR ON THE MERRITS OF THE FACTS

A3-8

(123)

## ACT IV: FAILURE TO ADEQUATELY TRAIN & SUPERVISORY LIABILITY.

360.    IN ACT I, WE LEARN THAT RODRIGUEZ WAS PRETEXTUALLY IRRITATED WITH BRANDT AND WAVED OVER GARCIA, WHO WAS IMMEDIATELY TYRANICAL. AT THE END OF ACT I, BRANDT CALMLY ADVISED GARCIA: "I DON'T ANSWER QUESTIONS."

361.    THEN IN ACT II, GARCIA BECOMES OUTRAGED BY BRANDT'S ASSERTION OF RIGHT AND BECOMES VIOLENTLY OUT OF CONTROL RESULTING IN BRANDT AND CAMO BEING ARRESTED.

362.    THIS YIELDS TO ACT III WHERE DEFENDANTS SPEND 3 HOURS STRUGGLING TO FIND ANY WAY POSSIBLE TO FIND ANY PROBABLE CAUSE, AND RESORT TO FALSE ALLEGATIONS, AND IGNORANCE OF THE LAW TO LEVERAGE CITY CONTRACTED SECURITY GUARD RODRIGUEZ AS A SO-CALLED "PRIVATE CITIZEN VICTIM."

363.    NOW, IN ACT IV, WE WILL EXAMINE THE CITY'S DEEP-ROOTED FAILURES TO ADEQUATELY TRAIN AND SUPERVISE ITS OFFICIALS, WHICH CREATED AND NURTURED THE CONDITIONS LEADING UP TO BRANDT'S MALICIOUS PROSECUTION. MORE INCIDEOUS IN THEIR DELIBERATE INDIFFERENCE TO BRANDT'S RIGHTS AS VIOLATED HEREIN IS THE CITY'S PUBLISHED AND UNPUBLISHED PLANS

EXPRESSLY DESIGNED TO ACHIEVE "ANOTHER CONVICTION" IN THEIR "CONTINUED VIGOROUS PROSECUTION OF THESE FOLKS" IN ORDER TO "COMPELL THE COURT TO ISSUE REAL SANCTIONS" AGAINST "EITHER MR. BRANDT OR MR. LOMA."

364. IT IS EXTRA-ORDINARY TO HAVE A CASE WHERE THE GOVERNMENT HAS AN ACTUAL WRITTEN COMMUNICATION FORMING A POLICY FOR LAW ENFORCEMENT AND PROSECUTION TO EXPRESSLY TARGET A GROUP OR INDIVIDUAL. GENERALLY, SUCH OBJECTIVES ARE DIFFICULT TO PROVE THROUGH SCANT CIRCUMSTANTIAL EVIDENCE.

365. THIS CASE IS ONE SUPPORTED BY EXCELLENT "SMOKING GUN" EVIDENCE ALREADY KNOWN TO PLAINTIFF.

366. THIS CASE IS A COMBINATION OF CLASS DISCRIMINATION, PERSONAL MOTIVES, AND NAMED OBJECTIVES — TO WIT: CITIZEN RECORDERS, FIRST AMENDMENT AUDITORS, OCCUPY DENVER, ERIC BRANDT ASSOCIATES, DEMONSTRATORS, PROTESTORS, ERIC BRANDT BY NAME AND BRIAN LOMA BY NAME.

367. THUS, IT IS NOT MERELY A FAILURE TO TRAIN AND SUPERVISE, BUT AN INTENTIONAL AND WANTON INSTRUCTION TO CAUSE VIOLATIONS.

368. AS PUT FORTH IN DETAIL UNDER MONELL LIABILITY SECTION, BRANDT AND DENVER HAVE AN EXTREMELY LENGTHY AND INVOLVED HISTORY. CHAVEZ AND LUCERO ALONE ARE PERSONALLY INVOLVED ACTORS IN AT LEAST 29% AND 10% OF PLAINTIFF'S INDEXED INCIDENTS.

369. THE CPL ADOLPH CHAVEZ INCIDENT 2018NOV04 WAS A MASSIVE MOTIVATOR FOR LT CHAVEZ, IN PARTICULAR, AND THE CITY'S SUBSEQUENT FAILURES TO SECURE CONVICTIONS AND HARSH SANCTIONS AGAINST BRANDT, LOMA AND OTHERS BECAME A DESPERATE SITUATION.

370. BOTH THE DENVER POLICE DEPARTMENT AND DENVER SHERIFF'S DEPARTMENT HAVE CONDUCTED COUNTLESS "BRIEFINGS" ON BRANDT AND HIS ASSOCIATES FOR OVER A DECADE. DISCUSSIONS ABOUT BRANDT, ET AL. HAVE REGULARLY INCLUDED THE DISTRICT ATTORNEY'S OFFICE, THE CITY ATTORNEY'S OFFICE, THE MAYOR'S OFFICE, THE PRESIDING JUDGES, AND MORE.

371. AS A RESULT OF THESE INNUMERABLE COMMUNICATIONS, THE CITY SOUGHT TO DEFINE PATHWAYS BY WHICH THEY COULD CURTAIL THE RIGHTS OF THOSE GROUPS AND NAMED INDIVIDUALS.

372 UPON INFORMATION AND BELIEF, DEFENDANTS

A4-1

(126)

City Attorney, Kristin Bronson, & lead prosecutor Marley Bordovsky, her predecessor - Melissa Drazen-Smith, police chief Paul Pazen, and assistant police chief Barbara Archer each actively participated in drafting, promulgating, and fostering both written and informal policies designed to target the groups and individuals, including Baunti, as demonstrated throughout this complaint.

373. The perhaps most incriminating document string discovered thus far begins with Melissa-Drazen-Smith's email 7619mar04, and it's progeny. This email chain involved the major interested businesses of the 16th Street Mall, and multiple city departments, including the Denver Police Department.

374. This initial email is so critical that it is quoted below, with emphasis added by plaintiff:

SUBJECT: Victim Impact Statement

Body: Thank you all for participating in the efforts to accommodate free speech on the mall. I appreciate the difficulty when there are people in the group who consistently step on that line. We continue to prosecute those folks vigorously, but have had limited success in getting a

A4-3                    (127)

THAT REALLY DETERS THE BEHAVIOR.

PLEASE FEEL FREE TO SEND ME AN EMAIL ABOUT THE IMPACT EITHER MR. BRANDT, OR MR. LOMA'S BEHAVIOR ON YOU AND YOUR BUSINESS.

I WILL MAKE SURE THE JUDGE GETS A COPY OR I MAY HAVE OUR ATTORNEY READ IT INTO THE RECORD.

HOPEFULLY, WHEN WE GET ANOTHER CONVICTION, THE COURT WILL FIND IT COMPELLING AND ISSUE A REAL CONSEQUENCE ON THEM INCLUDING AN AREA RESTRICTION.
                                        -MELISSA

375.  THIS EMAIL DEMONSTRATES THERE WAS SOME SORT OF "PARTICIPATION" IN SOME SORT OF "EFFORTS" AGAINST AT LEAST ONE "GROUP" (PRESUMABLY OCCRP), AND THAT EVERYONE WAS DISMAYED THAT DESPITE ONGOING VIGOROUS PROSECUTION, THEY HAD NOT BEEN WINNING, AND NEEDED TO RAMP UP THEIR GAME IN ORDER TO STOP ERIC BRANDT AND BRIAN LOMA, SPECIFICALLY.

376.  THIS WAS A GROUP EFFORT ON THE PART OF THE CITY, AND BUSINESSES WERE ACTIVE IN THEIR PARTICIPATION AS WELL.

377.  THE MONTHS FOLLOWING YIELDED INTENSE POLICE ACTION DIRECTLY TARGETTING THEIR PLAN TO "REALLY DETER [FIRST AMENDMENT] BEHAVIORS."

378.  THIS INSTANT MATTER IS JUST ONE

A4-11                           (128)

MORE IN A LONG TRAIN OF USURPATIONS EMBASED IN BOTH PRIOR TO, AND AFTER THIS DATE LODGED AGAINST THESE VERY CITIZENS - ESPECIALLY ERIC BRANDT.

329.      THE CITY PUBLISHED CONFLICTING DOCUMENTS, POLICIES AND SCHEMES.  IT WAS THEIR POLICY MAKING AUTHORITIES WHICH CREATED WHAT THEY BELIEVED TO BE CLEVER CIRCUMVENTIONS OF RIGHTS BY SHREWD SCHEMES THEY THOUGHT WOULD BE IMMUNE FROM ACCOUNTABILITY.

380.      CHAVEZ, IN PARTICULAR, WAS MOTIVATED TO SECURE THESE ENDS AS THE DISTRICT 6 LIEUTENANT - AND HAD PERSONAL VENGEANCE IN MIND AGAINST BRANDT AND HIS ILK.

381.      AND COUPLED WITH CHAVEZ' EXPRESS HISTORY WITH FAILED PROSECUTIONS WHERE HE ENCOURAGED "THE OFFENDED CITIZEN" PATHWAY, IT IS OBVIOUS THE CITY WAS DELIBERATELY INDIFFERENT TO THESE KINDS OF VIOLATIONS, AND/OR ACTED WITH RECKLESS, IF NOT WANTON DISREGARD TO BRANDT'S RIGHTS.

382.      THERE IS NO REASONABLE DOUBT THE CITY'S POLICY MAKERS - AND THESE DEFENDANTS IN PARTICULAR KNEW THIS RISK AND PRACTICE DID NOT EXIST.

PY-5

# CLAIMS FOR RELIEF

383    EACH OF THE FACTS, STATEMENTS, AND PARAGRAPHS PUT FORTH THROUGHOUT THIS COMPLAINT ARE FULLY INCORPORATED AS APPLICABLE INTO EACH OF THE CLAIMS FOR RELIEF AS IF EACH HAD BEEN PUT FORTH FULLY VERBATIM THEREIN.

384    EACH DEFENDANT WAS ACTING WITH FULL COLOR OF LAW AT ALL TIMES RELEVANT TO THIS COMPLAINT.

385.    DEFENDANTS' ACTIONS AND/OR INACTIONS CONSTITUTES 'CONDUCT'

386.    DEFENDANTS ENGAGED IN THEIR CONDUCT INTENTIONALLY, WANTONLY, MALICIOUSLY, KNOWINGLY, WILLFULLY, NEGLIGENTLY, AND/OR RECKLESSLY, AND/OR IN RECKLESS DISREGARD OF- AND/OR WITH DELIBERATE INDIFFERENCE TO- PLAINTIFF'S CONSTITUTIONAL RIGHTS AS APPLICABLY DESCRIBED, WHICH WERE CLEARLY WELL-EST- ABLISHED AT THE TIME OF THESE EVENTS; AND OF WHICH ANY REASONABLE OFFICIALS IN THEIR POSITIONS KNEW, OR CERTAINLY SHOULD HAVE KNOWN, AT THE TIME.

387.    DENVER'S CUSTOMS, POLICIES, AND/OR PRACTICES WERE THE MOVING FORCE BEHIND DEFENDANTS' VIOLATIONS OF PLAINTIFF'S CONSTITUTIONAL RIGHTS.

388.    DEFENDANTS CONDUCT CAUSED, DIRECTLY AND PROXIMALLY, PLAINTIFF TO SUFFER INJURIES.

389. PLAINTIFF'S INJURIES ARE INCLUDING, BUT NOT LIMITED TO: HUMILIATION, EMOTIONAL DISTRESS, MENTAL PAIN AND ANGUISH, LOSS OF LIBERTIES, LOSS OF ENJOYMENT OF LIFE, ECONOMIC LOSSES, FEAR, ANXIETY, LOSS OF SENSE OF SECURITY AND OTHER LOSSES, DAMAGES OR INJURIES.

390. BECAUSE DEFENDANTS ACTED WITH SINISTER/ IMPROPER MOTIVES, RETALIATION, BAD FAITH, DECEIT, AND/OR MALICE, PLAINTIFF IS ENTITLED TO PUNITIVE DAMAGES.

391. PLAINTIFF ASSERTS VIOLATIONS OF CONSTITUTIONAL RIGHTS IN ALL CLAIMS, AND INVOKES JURISDICTION PURSUANT TO 42 U.S.C. §1983 THEREIN.

392. PLAINTIFF ASSERTS ACTIONS WHICH LIE IN GENERAL STATE TORT IN CLAIMS IV (CONVERSION), V (ASSAULT/BATTERY), AND VI (DEFAMATION PER SE), AND REQUESTS THE COURT PICK UP SUPPLEMENTAL JURISDICTION PURSUANT TO 28 USC § 1367 THEREIN.

393. PLAINTIFF ASSERTS DEFENDANTS CONSPIRED TO VIOLATE PLAINTIFF'S RIGHTS IN CLAIMS VIII — XI, AND INVOKES JURISDICTIONS PURSUANT TO 42 U.S.C. §§ 1985 AND 1986.

394. DEFENDANTS ACTED ARBITRARILY AND CAPRICIOUSLY.

122

(131)

FIRST CLAIM FOR RELIEF - §1983

EQUAL PROTECTION VIOLATION; "CLASS OF ONE"

5TH AND 14TH DUE PROCESS VIOLATIONS

AGAINST GARCIA IN HIS INDIV. CAPACITY

395. DEFENDANT GARCIA DISCRIMINATED AGAINST PLAINTIFF BECAUSE OF HIS PROTECTED SPEECH, WHEN HE IMPOSED ADDITIONAL RESTRICTIONS ON BRANDT IN ORDER TO BE GRANTED ENTRY INTO POLICE H.Q. LOBBY.

396. PLAINTIFF WAS TREATED DIFFERENTLY FROM OTHER SIMILARLY SITUATED INDIVIDUALS, NAMELY: SHOCKLEY, LOMA AND THE UNKNOWN WOMAN; AND ALSO BRANDT'S PREVIOUS ENTRIES.

397. THE DIFFERENTIAL TREATMENT WAS, WITHOUT ANY POLICY, RULE, OR LAW AUTHORIZING HIS CONDUCT; GARCIA EMBARKED ON INTENTIONAL, IRRATIONAL, AND WHOLLY ARBITRARY OBSTRUCTIVE SCHEME TO LIMIT BRANDT'S ACCESS TO THE LOBBY UNLESS BRANDT WAIVED HIS RIGHT TO SILENCE AND TO NOT ANSWER QUESTIONS - WHICH NO ONE ELSE IS REQUIRED TO DO.

398. GARCIA'S CONDUCT LACKED REASONABLE BASIS.

399 GARCIA SELECTIVELY TREATED BRANDT

I/

(32)

BASED ON IMPERMISSIBLE CONSIDERATIONS OF
PROTECTED SPEECH, MOTIVATED SOLELY BY A
SPITEFUL EFFORT TO "GET" HIM FOR REASONS
UNRELATED TO ANY LEGITIMATE STATE
OBJECTIVE.

400.    PLAINTIFF ASSERTS A "CLASS OF ONE"
AS TO HIS TREATMENT BY GARCIA.

401.    GARCIA VIOLATED CLEARLY WELL
ESTABLISHED RIGHTS SECURED FOR PLAINTIFF
PURSUANT TO THE 5TH AND 14TH
AMENDMENTS TO THE EQUAL PROTECTIONS
UNDER THE LAW, WHICH HE KNEW, OR
SHOULD HAVE KNOWN.

INTENTIONALLY LEFT BLANK

I-2                            133

SECOND CLAIM FOR RELIEF - §1983

UNREASONABLE SEIZURE #1: WALLET

4TH AMENDMENT VIOLATION

AGAINST GARCIA AND DENVER

402.    PLAINTIFF HAD BEEN FULLY COMPLIANT WITH POSTED SECURITY SCREENING PROCEDURES WHEN HE PRESENTED TO SECURITY BY PLACING HIS BELONGINGS IN THE X-RAY BINS AND STOOD BESIDE HIS BIN AWAITING FURTHER INSTRUCTIONS.

403.    THE SCOPE OF THESE SCREENINGS IS LIMITED TO WEAPONS, AND DANGEROUS CONTRABAN.

404.    GARCIA KNEW THE PROPERTY IN THE BIN BELONGED TO PLAINTIFF, AND WAS NOT ABANDONNED.

405.    GARCIA REACHED INTO THE BIN AND SEIZED CONTROL OF BRANDT'S WALLET BY GRABBING IT AND REMOVING IT FROM THE BIN.

406.    BECAUSE GARCIA LACKED ANY WARRANT TO SEIZE BRANDT'S WALLET, THE SEIZURE IS PRE-SUMPTIVELY UNREASONABLE.

407.    PLAINTIFF WAS NOT UNDER ARREST.

408.    GARCIA HAD NO PROBABLE CAUSE, NOR REASONABLE SUSPICION THAT THERE EXISTED ANY CONTRABAN WITHIN PLAINTIFF'S WALLET.

409.    GARCIA DID NOT AT ANY TIME PRIOR TO SEIZING BRANDT'S WALLET POSSESS ANY PROBABLE CAUSE WHAT SO EVER THAT BRANDT WAS

II-1                                    (139)

was engaging in any criminal behavior

410.    Lacking any legally recognized justification, Garcia's seizure of Brandt's wallet was objectively unreasonable in light of the circumstances confronting him at that time.

411.    By seizing Brandt's wallet, Garcia violated plaintiff's rights to be free from unreasonable government seizures pursuant to the Fourth Amendment of to the constitution for the United States.

412.    Garcia knew, or should have known this right to be clearly well-established at the time.

413.    Denver has a history of tolerating unreasonable seizures of people's property. Denver's customs/practices are the moving force behind Garcia's Fourth Amendment violations.

INTENTIONALLY LEFT BLANK

135

THIRD CLAIM FOR RELIEF: §1983

UNREASONABLE SEARCH #1 : WALLET

4TH AMENDMENT VIOLATION

AGAINST GARCIA, STARR-GIMENO AND DENVER

414. PLAINTIFF INCORPORATES THE FACTS PUT FORTH IN CLAIM II HEREIN AT SPECIAL FOUNDATION TO THIS CLAIM.

415. GARCIA OPENED AND SEARCHED BRANDT'S SEIZED WALLET AND SOUGHT FROM IT BRANDT'S ID.

416. STARR-GIMENO WAS PRESENT WHEN GARCIA UNLAWFULLY SEIZED BRANDT'S WALLET, AND WHEN HE SEARCHED IT. STARR-GIMENO KNEW THE SAME FACTS GARCIA DID. SHE KNEW THE SEIZURE WAS UNREASONABLE.

417. DESPITE BEING GARCIA'S DIRECT SUPERVISOR, AND DESPITE KNOWING THERE WAS NO JUSTIFICATION TO SEARCH BRANDT'S WALLET, AND DESPITE HAVING THE PRESENT ABILITY TO INTERVENE AND STOP GARCIA'S UNLAWFUL SEARCH OF BRANDT'S WALLET, SHE DID ABSOLUTELY NOTHING.

418. FOR THE REASONS STATED, GARCIA'S SEARCH OF BRANDT'S WALLET FOR 10 DOCUMENTS WAS OBJECTIVELY UNREASONABLE.

419. SEARCHING PLAINTIFF'S WALLET FOR ID

VIOLATED PLAINTIFF'S LEGITIMATE EXPECTATION OF PRIVACY IN HIS WALLET TO BE FREE FROM UNREASONABLE GOVERNMENT SEARCH, SECURED BY THE FOURTH AMENDMENT TO THE CONSTITUTION FOR THE UNITED STATES, WHICH WAS CLEARLY WELL-ESTABLISHED AT THAT TIME.

420. GARCIA AND STARK-SIMENO KNEW, OR SHOULD HAVE KNOWN, SEARCHING BRANDT'S WALLET FOR HIS ID WAS A CLEARLY WELL ESTABLISHED VIOLATION.

421. DENVER'S CUSTOMS, PRACTICES AND POLICIES FORMED THE MOTIVATING FORCE BEHIND THESE VIOLATIONS.

INTENTIONALLY LEFT BLANK

FOURTH CLAIM FOR RELIEF:

§1983; §1367 — 4TH, 5TH, 14TH AMENDS.

UNREASONABLE SEIZURE #2: IDENTIFICATION;

CONVERSION, CIVIL TORT

AGAINST GARCIA, STARR-GIMENO, DENVER

422.  PLAINTIFF INCORPORATES CLAIMS II AND III

ESPECIALLY HERE AS FOUNDATION.

423.  GARCIA REMOVED BRANDT'S ID FROM HIS

WALLET AND TOSSED THE WALLET, SANS ID, BACK

INTO THE BIN.

424.  GARCIA HELD BRANDT'S ID UP, AT

WHICH POINT BRANDT ATTEMPTED TO RECOVER IT.

425.  GARCIA THEN TAUNTED BRANDT WITH

THE ID, PLAYING A KEEP AWAY WITH IT.

426.  IN RESPONSE TO BRANDT OBJECTED TO

UNLAWFUL SEIZURE OF HIS ID, GARCIA ORDERED

BRANDT TO LEAVE, WITHOUT RETURNING HIS ID

TO HIM.

427.  INSTEAD, GARCIA TRANSFERRED POSSESSION

OF THE ID TO STARR-GIMENO.

428.  USURPING CONTROL OVER, AND TRANSFERRING

THAT CONTROL OF BRANDT'S ID CONSTITUTES

THE TORT OF CONVERSION,

429.  BRANDT'S ID WAS NEVER RETURNED TO

HIM FOLLOWING THE INCIDENT.

430.  GARCIA AND STARR-GIMENO ABSOLUTELY

IV-1

(38)

KNEW BRANDT DID NOT GIVE CONSENT TO THEIR CONTINUED POSSESSION OF HIS $ID$, CAPTURED ON COMA'S RECORDING, BRANDT MADE NO LESS THAN 13 DEMANDS FOR THE RETURN OF HIS $ID$; 6 WHILE INSIDE, AND ANOTHER 7 OUTSIDE WHILE THE $ID$ WAS IN STARR-GIMENO'S POSSESSION.

431.    BRANDT'S $ID$ WAS A VALUABLE PAPER/DOCUMENT WHICH REQUIRED ASSEMBLAGE OF CERTAIN PRE-REQUISITE DOCUMENTS, PERSONAL INCONVENIENCE, AND PAYMENT OF STATUTORY FEES IN ORDER TO REPLACE.

432.    PLAINTIFF SUFFERED LOSSES OF LIBERTY, PROPERTY AND ENJOYMENT OF LIFE BY NOT HAVING HIS $ID$ UNTIL HAVING APPLIED FOR AND PAID FOR ITS REPLACEMENT.

433.    STARR-GIMENO WAS THE LAST KNOWN POSSESSOR OF BRANDT'S IDENTIFICATION.

434.    DEFENDANTS CONDUCT VIOLATED CLEARLY WELL ESTABLISHED RIGHTS BELONGING TO PLAINTIFF TO BE FREE FROM UNREASONABLE SEIZURES PURSUANT TO THE FOURTH AMENDMENT TO THE CONSTITUTION FOR THE UNITED STATES.

435.    DEFENDANTS CONDUCT DEPRIVING PLAINTIFF OF POSSESSION AND USE OF HIS IMPORTANT DOCUMENTS VIOLATED HIS CLEARLY ESTABLISHED RIGHTS TO NOT BE DEPRIVED OF LIFE OR

IV-2                                    (139)

property without the due processes of law pursuant to the Fourth, Fifth and 14th Amendments to the Constitution for the United States.

436. Defendants knew or should have known their conduct violated these rights.

437. Starr-Gimeno not only failed to intervene and stopped her junior officer from seizing Barnot's ID, but she actually participated in its conversion and perpetual deprivation.

437. Denver University conducted multiple studies regarding Denver police treatment which they published as parts of their "Too High A Police" series. About 60% of those surveyed for the study reported that the Denver police kept their wallets, money, identification or other valuable documents at least once in the preceding months. Thus the permanent theft of this genre constitutes a wide-spread, well-entrenched custom or practice by the City of Denver, which Denver knew the risk was substantial but failed to adequately train or supervise to curb this misconduct.

IV-3                            (140)

FIFTH CLAIM FOR RELIEF §§ 1983; 1367

UNREASONABLE SEIZURE #3 (EXCESSIVE FORCE;
ASSAULT; BATTERY

AGAINST GARCIA, STARR-GIMENO, DENVER

438.    WHILE BRANDT HAD HIS ATTENTION TURNED
TOWARD STARR-GIMENO, GARCIA SUDDENLY, AND
WITHOUT WARNING SHOVED BRANDT FROM THE
SIDE TOWARD THE EXIT DOORS

439.    BRANDT HAD THE LAWFUL RIGHT TO
OCCUPY THE LOCATION HE WAS STANDING IN; THE
RIGHT TO TRAVEL IMPLIES THE RIGHT TO
REMAIN.

440.    SHOVING BRANDT VIOLENTLY, GARCIA
INTENDED TO RELOCATE HIM.

441.    GARCIA POSSESSED NO JUSTIFIED
BELIEF THAT BRANDT WAS A SAFETY
RISK TO ANYONE PRESENT.

442.    NOR DID HE HAVE OBJECTIVELY
REASONABLE PROBABLE CAUSE THAT
BRANDT WAS INVOLVED IN CRIMINAL ACTIVITY.

443.    GARCIA'S APPLICATION OF FORCE TO
SHOVE BRANDT TOWARD THE DOORS WHILE HIS
ATTENTION WAS FOCUSSED ON HIS LIEUTENANT WAS
NOT IN THE PURSUIT OF JUSTICE, BUT RATHER
A WANTON ACT OF PHYSICAL AGGRESSION.

444.    GARCIA ACTED WITH THE REQUISITE

(41)

OBJECTIVE BENT STATE OF MIND NECESSARY TO CONSTITUTE ~~AN~~ AN EXCESSIVE APPLICATION OF FORCE.

445. GARCIA'S CONDUCT WAS OBJECTIVELY UNREASONABLE AND VIOLATED PLAINTIFFS CLEARLY ESTABLISHED RIGHTS TO TRAVEL (OR REMAIN) PURSUANT TO THE 14TH AMENDMENT, AND 4TH AMENDMENT RIGHT TO BE FREE FROM UNREASONABLE SEIZURES, AND 8TH AMENDMENT RIGHT TO BE FREE FROM EXCESSIVE FORCE AND CRUEL PUNISHMENT.

446. GARCIA'S UNWANTED VIOLENT CONTACT CONSTITUTED THE CIVIL TORT OF BATTERY.

447. THEN GARCIA PURSUED BRANDT WITH HIS FISTS RAISED AND CHALLENGED BRANDT TO PHYSICAL FIGHT.

448. GARCIA WAS FULLY ARMED AND HAD THE BACKING AND SUPPORT OF HIS SUPERVISOR, STAFF-SERGEANT AND FELLOW OFFICERS ~~GANG MEMBERS~~.

449. BRANDT WAS STRICKEN WITH TERROR AND IN FEAR FOR HIS PERSONAL SAFETY AND WELL-BEING.

450. IT WAS OVERWHELMINGLY CLEAR THAT IT WAS GARCIA'S INTENTION TO ENGAGE

V-2

BRANDT IN A PHYSICAL ALTERCATION.

451. GARCIA'S CONDUCT CONSTITUTED THE CIVIL TORT OF ASSAULT WHEN HE VIOLENTLY PURSUED BRANDT.

452. GARCIA'S CONDUCT CONSTITUTED AN IMMEDIATE BREACH OF THE PEACE PURSUANT TO 18-9-106.

453. STAAR-GIMENO WITNESSED THIS CONDUCT, FOLLOWED GARCIA OUTSIDE, WITNESSED HIS CONTINUED CONDUCT, AND DID ABSOLUTELY NOTHING TO STOP IT, DESPITE POSSESSING THE FULL DUTY AND OPPORTUNITY AND AUTHORITY TO DO SO.

454. DEFENDANTS KNEW OR SHOULD HAVE KNOWN THEIR CONDUCT VIOLATED PLAINTIFF'S 4TH, 8TH AND 14TH AMENDMENT RIGHTS CLEARLY WELL ESTABLISHED AT THE TIME.

455. DENVER'S CUSTOMS, PRACTICES AND POLICIES FORMED THE MOTIVATING FORCE BEHIND THESE VIOLATIONS.

INTENTIONALLY LEFT BLANK

V-3

(143)

SIXTH CLAIM FOR RELIEF

FALSE REPORTING - DUE PROCESS : §1983
4TH, 5TH, 14TH AMENDS.
DEFAMATION OF CHARACTER PER SE §1367
AGAINST RODRIGUEZ, GARCIA, STARR-SIMENO, DENVER

456. THIS CLAIM FOR RELIEF IS OF PARTICULAR IMPORT TO OUR CIVILIZED SOCIETY BECAUSE IT EXEMPLIFIES THE NEED TO PROTECT THE RIGHTS OF CITIZENS TO RECORD POLICE IN PERFORMANCE OF THEIR DUTIES, IN PUBLIC PLACES.

457. THE SAD TRUTH IS THAT LAW ENFORCEMENT AND GOVERNMENT OFFICIALS ROUTINELY LIE.

458. THE BRIAN LOMB RECORDING NOT ONLY EXPOSES THE REALITIES OF THIS SERIOUS EVIL WITHIN THE CITY OF DENVER, BUT IT ALSO EXEMPLIFIES THE BEST MEDICINE; LIARS ARE A SERIOUS EVIL, AND PRIVATE CITIZENS RECORDINGS ARE THE BEST MEDICINE!

459. THE STATEMENTS SUBMITTED BY RODRIGUEZ, GARCIA AND STARR-SIMENO LACK TRUTH BECAUSE THEY ARE MATERIALLY MISLEADING, INCOMPLETE (IN MATERIAL WAYS) OR FLAT OUT FALSE.

460. PLAINTIFF ANALYSED THEIR REPORTS AND FOUND RODRIGUEZ TO BE 20% FALSE, STARR-SIMENO ABOUT 70% FALSE AND GARCIA ABOUT 60% FALSE.

141

461.    WHEN ONE REMOVES FROM THEIR STATEMENTS THOSE WHICH ARE OF LESS RELEVANT QUALITY (NAMES, ADDRESSES, DATES, ETC.), THE PERCENTAGES OF FALSEHOODS SKYROCKETS. THE MOST "MATERIAL" FACTS THEY ALLEGE ARE ALMOST ENTIRELY UNTRUE.

462.    DEFENDANTS ABSOLUTELY KNEW THEIR STATEMENTS WERE FALSE.

463.    DEFENDANTS FALSE STATEMENTS, BOTH ORALLY TO RESPONDING DEFENDANTS AND IN WRITING, WERE MADE IN BAD FAITH AND WITH A MALICIOUS INTENT.

464.    DEFENDANTS INTENDED TO INDUCE OTHERS TO TAKE ADVERSE ACTION AGAINST PLAINTIFF.

465.    SPECIFICALLY, THEY INTENDED TO IMPUNE PLAINTIFF IN CRIMINAL ACTIVITY.

466.    DEFENDANTS INTENDED FOR OTHERS HEARING OR READING THEIR FALSE STATEMENTS TO THINK HIGHLY OF THEMSELVES, AND TO THINK POORLY OF PLAINTIFF.

467.    DEFENDANTS WERE SUCCESSFUL IN INDUCING RESPONDING OFFICERS(8 (BAILLIE, LUCERO, AND CHAVEZ), AND D.A. SHARP TO COMMENCE A CRIMINAL PROSECUTION AGAINST PLAINTIFF WITH THEIR DECEITFUL FALSE STATEMENTS.

468. PUBLISHING KNOWINGLY AND MALICIOUSLY FALSE STATEMENTS INTENDING TO IMPUNE CRIMINAL CONDUCT TO ANOTHER PERSON CONSTITUTES THE CIVIL TORT OF DEFAMATION OF CHARACTER PER SE.

469. PLAINTIFF REQUESTS THIS COURT TAKE UP THE DEFAMATION TORT UNDER SUPPLEMENTAL JURISDICTION PURSUANT TO 28 § 1367.

470. DEFENDANTS RODRIGUEZ, GARCIA AND STANA-GIMENO ARE LIABLE PERSONALLY FOR DEFAMATION OF CHARACTER PER SE.

471. ADDITIONALLY, GARCIA AND STANA-GIMENO ARE LIABLE FOR VIOLATING PLAINTIFF'S DUE PROCESS RIGHTS.

472. FILING FALSE POLICE REPORTS VIOLATES PLAINTIFF'S CLEARLY WELL-ESTABLISHED RIGHTS TO NOT BE DEPRIVED OF LIBERTY OR PROPERTY WITHOUT THE DUE PROCESSES OF LAW SECURED FOR HIM BY THE FIFTH, FOURTH AND 14TH AMENDMENTS TO THE CONSTITUTION WHICH ANY REASONABLE OFFICER IN THEIR POSITIONS KNEW OR SHOULD HAVE KNOWN.

473. DENVER'S CUSTOMS, PRACTICES AND POLICIES TOLERATING AND CONDONING FALSE REPORTING FORMS THE MOVING FORCE BEHIND THESE VIOLATIONS

V1-3                    (146)

SEVENTH CLAIM FOR RELIEF

5TH AMENDMENT RETALIATION

5TH AMENDMENT VIOLATION = §1983

AGAINST GARCIA, CHAVEZ, STARR-GIMENO,

LUCERO, PHILLIPS, AND RODRIGUEZ

474.    GARCIA, RODRIGUEZ AND STARR-GIMENO WERE EYE- AND EAR- WITNESSES TO BRANDT'S EXERCISING HIS 5TH AMENDMENT RIGHT TO NOT ANSWER GARCIA'S QUESTIONS. BRANDT'S CALM STATEMENT "I DON'T ANSWER QUESTIONS." WAS THE FINAL TRIGGER TO GARCIA'S CONDUCT IN CLAIMS I, II, III, IV, V, VI, VII, IX, X, XI; AND RODRIGUEZ CONDUCT IN CLAIM VI, VII, IX, X, XI; AND STARR-GIMENO'S CONDUCT IN CLAIMS V, VI, VII, IX, X, XI, AND XII.

475.    GARCIA, RODRIGUEZ AND STARR-GIMENO DISCUSSED THESE FACTS WITH PHILLIPS, LUCERO AND CHAVEZ.

476.    THESE FACTS WERE SUBSTANTIALLY MOTIVATING TO PHILLIPS, LUCERO AND CHAVEZ DRIVING THEIR CONDUCT IN CLAIMS VIII, IX, X, XI; AND LUCERO AND CHAVEZ IN CLAIM XII.

477.    DEFENDANTS CONDUCT WAS MOTIVATED BY SINISTER DESIRES TO PUNISH BRANDT FOR DEFYING THE QUESTIONING AND THEIR AUTHORITY RATHER THAN TO BRING TO JUSTICE A PERSON BELIEVED TO HAVE COMMITTED A CRIME.

VII - 1                                (147)

478. DEFENDANTS RETALIATORY CONDUCT WOULD CHILL AN ORDINARY PERSON FROM ENGAGING IN SIMILAR CONDUCT EXERCIZING THEIR 5TH AMEND RIGHT TO NOT ANSWER QUESTIONS BY POLICE.

479. PLAINTIFF'S RIGHTS TO BE FREE FROM OFFICIAL OPPRESSION HAS BEEN CLEARLY WELL-ESTABLISHED IN THE 10TH CIRCUIT FOR DECADES.

480. DEFENDANTS VIOLATED PLAINTIFF'S CLEARLY WELL-ESTABLISHED RIGHT TO BE FREE FROM OFFICIAL OPPRESSION FOR HIS EXERCIZE OF HIS FIFTH AMENDMENT RIGHTS, WHICH DEFENDANTS KNEW, OR SHOULD HAVE KNOWN.

481. DENVER'S CUSTOMS, PRACTICES AND POLICIES FORMED THE MOTIVATING FORCE DRIVING THESE VIOLATIONS

INTENTIONALLY LEFT BLANK

VII-2                    148

EIGHTH CLAIM FOR RELIEF

UNREASONABLE SEARCH/SEIZURE #4

FALSE ARREST - CONSPIRACY

4TH AMENDMENT VIOLATIONS: §1983, §§1985,86

AGAINST GARCIA, CHAVEZ, STARR-GIMENO

CUCENO, PHILLIPS, RODRIGUEZ,

SHARP, DENVER.

482.   GARCIA, STARR-GIMENO AND RODRIGUEZ
DISCUSSED THEIR FALSE ALLEGATIONS AND OTHER
FACTS OF THE INCIDENT WITH PHILLIPS, CUCERO
AND ENABEL.   ETC.

483.   CUCERO THEN DISCUSSED THESE DETAILS
WITH D.A. SHARP.

484.   PHILLIPS ULTIMATELY CHARGED BRANDT
WITH VIOLATION OF 18-9-106(1)(a) - DISORDERLY
CONDUCT BY "FIGHTING ~~WORDS~~ WORDS" FOR
ALLEGEDLY CALLING RODRIGUEZ "A SHITBAG".

485.   EVEN IF THIS ALLEGATION HAD BEEN
TRUE, IT WOULD NOT HAVE PROVIDED
PROBABLE CAUSE FOR FIGHTING WORDS UNDER
THE CIRCUMSTANCES CONFRONTING THEM.

486.   DEFENDANTS SPENT DAYS WORKING ON
THEIR SCHEME BEFORE AGREEING WITH EACH
OTHER ABOUT THEIR UNLAWFUL PLOT AGAINST BRANDT.

487.   DEFENDANTS KNEW THERE EXISTED NO
PROBABLE CAUSE TO ARREST BRANDT.

488. DEFENDANTS, ACTING IN CONCERT WITH ONE ANOTHER, ARRESTED, SEARCHED, AND CAUSED BRANDT'S CONTINUED CONFINEMENT.

489. DEFENDANTS CONDUCT WAS MOTIVATED SIMPLY BY THEIR DESIRES TO PUNISH BRANDT FOR HIS PAST AND PRESENT EXERCISE OF HIS FIRST AND FIFTH AMENDMENT RIGHTS.

490. DEFENDANTS' CONDUCT WAS OBJECTIVELY UNREASONABLE GIVEN THE CIRCUMSTANCES CONFRONTING THEM.

491. DEFENDANTS' CONDUCT VIOLATED CLEARLY WELL-ESTABLISHED RIGHTS SECURED FOR PLAINTIFF TO BE FREE FROM UNREASONABLE SEIZURES AND SEARCHES PURSUANT TO THE FOURTH AMENDMENT TO THE CONSTITUTION WHICH ANY REASONABLE OFFICIALS IN THEIR POSITIONS KNEW OR SHOULD HAVE KNOWN.

492. DENVER'S CUSTOMS, PRACTICES AND POLICIES FORMED THE MOVING FORCE BEHIND THESE VIOLATIONS

INTENTIONALLY LEFT BLANK

VIII. 2                              150

NINTH CLAIM FOR RELIEF

MALICIOUS PROSECUTION - DUE PROCESS

4TH, 5TH AND 14TH AMENDMENTS

§§ 1983, CONSPIRACY §§ 1986, 1985

AGAINST GARCIA, CHAVEZ, STARR-GIMENO,

LUCERO, PHILLIPS, RODRIGUEZ,

SHARP, DENVER

493.    DEFENDANTS GARCIA, RODRIGUEZ, STARR-GIMENO,
PHILLIPS, LUCERO AND CHAVEZ, AND DEFENDANT
SHARP, ACTED IN CONCERT WITH ONE ANOTHER
AND WITHOUT PROBABLE CAUSE, PROCURED
GROUNDLESS CHARGES AGAINST PLAINTIFF IN ORDER
TO MALICIOUSLY BRING ABOUT PLAINTIFF'S CRIMINAL
PROSECUTION.

494.    DEFENDANTS WERE MOTIVATED BY AN
IMPROPER PURPOSE TO PUNISH PLAINTIFF IN
AN EFFORT TO DIVERT ATTENTION FROM THEIR
OWN MISCONDUCT AND TO INSULATE THEMSELVES
FROM CIVIL LIABILITY, ALONG WITH A PURPOSE
TO DISCOURAGE PLAINTIFF OR OTHERS FROM
ENGAGING IN FUTURE FIRST AND FIFTH
AMENDMENT PROTECTED ACTIVITY.

495.    DEFENDANTS CONDUCT VIOLATED PLAINTIFF'S
CLEARLY WELL ESTABLISHED RIGHTS SECURED FOR
PLAINTIFF BY THE 4TH, 5TH AND 14TH
AMENDMENTS TO THE CONSTITUTION FOR

IX-1                        (151)

UNITED STATES WHICH ANY REASONABLE
OFFICIALS IN THEIR POSITIONS KNEW, OR
SHOULD HAVE KNOWN.

496.   DENVER'S CUSTOMS, POLICIES AND
PRACTICES FORMED THE MOTIVATING FORCE
BEHIND THESE VIOLATIONS.

497.   DEFENDANTS 1) CAUSED PLAINTIFF'S
CONTINUED PROSECUTION; WHICH 2) TERMINATED
IN PLAINTIFF'S FAVOR ON THE MERITS OF
THE CASE; WHILE 3) NO PROBABLE CAUSE
SUPPORTED THE ARREST; AND 4) DEFENDANTS
ACTED WITH MALICE; AND 5) CAUSED PLAINTIFF
TO SUFFER DAMAGES.

INTENTIONALLY LEFT BLANK

IX-2

(152)

TENTH CLAIM FOR RELIEF

FIRST AMENDMENT RETALIATION-
CONSPIRACY

1ST AMENDMENT VIOLATIONS

§§ 1983, 1985, 1986

AGAINST ALL DEFENDANTS

498. PLAINTIFF WAS ENGAGED IN PROTECTED
SPEECH WHEN HE ADVISED RODRIGUEZ AND
GARCIA TO PERFORM THEIR JOBS AS
PUBLIC SERVANTS, WHEN HE ADVISED GARCIA
HE HAD THE RIGHT TO ENTER A PUBLIC
BUILDING, AND WHEN HE INFORMED
GARCIA HE DOES NOT ANSWER QUESTIONS
BY POLICE.

499. PLAINTIFF WAS ENGAGED IN PROTECTED
SPEECH WHEN HE ADVISED GARCIA SEIZING
HIS WALLET AND ID WAS UNLAWFUL, AND
DEMANDING RETURN OF HIS ID.

500. PLAINTIFF HAD A LONG HISTORY OF
PROTECTED SPEECH CRITICAL OF DENVER, AND
THE POLICE, AND LT CHAVEZ & HIS OFFICERS.

501. PLAINTIFF'S EXPRESSIONS WERE ON MATTERS
OF GREAT PUBLIC CONCERN.

502. DEFENDANTS EACH ACTED JOINTLY AND ON
THEIR OWN ACCORDS IN RETALIATION FOR
PLAINTIFF'S SPEECH.

X-1                              153

503. DEFENDANTS' RETALIATORY ACTIONS WERE SUBSTANTIALLY MOTIVATED BY PLAINTIFF'S PAST AND PRESENT SPEECH.

504. IN ADDITION TO RODRIGUEZ, GALLIA'S AND STARR-GIMENO'S MOTIVES FOR THE INSTANT SPEECH, DENVER POLICE INCLUDING PHILLIPS, LUCERO, CHANCE, PAZEN AND THEKEN, AND O.R. SMITH, AND CITY ATTORNEYS BRONSON AND BORDOVSKY, WERE ENGAGED IN AN ONGOING SCHEME TO GO AFTER BRANDT AND LOMA (BY NAME, FOLLOWING THE BRAUN-SMITH EMAIL CHAIN) AND AGAINST CITIZEN RECORDERS, FIRST AMENDMENT AUDITORS, PROTESTERS AND OCCUPY BY CLASSIFICATION.

505. BY UNLAWFULLY ARRESTING AND PROSECUTING PLAINTIFF, DEFENDANTS' ACTED IN FURTHERANCE OF THEIR UNLAWFUL GOAL TO SECURE "REAL SANCTIONS", "CONVICTIONS", AND "AREA RESTRICTIONS" IN ORDER TO "DETER [FIRST AMENDMENT] BEHAVIOR". IT WAS THEIR INTENTIONALLY DEVISED SCHEME TO DETER PLAINTIFF AND OTHERS FROM ENGAGING IN FIRST AMENDMENT ACTIVITIES SUCH AS THOSE DESCRIBED HEREIN.

506. ANY REASONABLE PERSON OF ORDINARY

X-2

FIRMNESS WOULD BE CHILLED BY A GOVERNMENT CONSPIRACY TO RETALIATE AND CRUSH THOSE WHO WOULD DARE TO SPEAK OUT AGAINST DENVER.

507. DEFENDANTS WERE ENGAGED IN CONDUCT PURSUANT TO DENVERS CUSTOMS, PRACTICES, AND ACTUAL POLICIES WHICH ENCOURAGES, CONDONES, TOLERATES, AND RATIFIES THE RESTRAINT OF SPEECH AND EXPRESSIVE ACTIVITIES BY ITS OFFICIALS OF INDIVIDUALS OR GROUPS EXPRESSING VIEWPOINTS CRITICAL OF DENVER OR ITS OFFICIALS, OR FOR EXERCIZING THEIR RIGHTS OF EXPRESSION AND DISSENT.

INTENTIONALLY LEFT BLANK

ELEVENTH CLAIM FOR RELIEF

CONSPIRACIES AGAINST RIGHTS/

EQUAL PROTECTION - PROTECTED CLASSES

14TH AMENDMENT VIOLATIONS

§§ 1983, 1985, 1986

AGAINST ALL DEFENDANTS

508.    DEFENDANTS COMMUNICATED WITH EACH OTHER OVER A PERIOD OF MONTHS PRIOR TO THIS INCIDENT, AND FOR MONTHS FOLLOWING THE INCIDENT AND AGREED UPON COURSES OF CONDUCT — SOME LAWFUL, OTHERS UNLAWFUL, ENTERING A COMMON SCHEME TO PUNISH PLAINTIFF IN RETALIATION FOR HIS PROTECTED CONDUCT, BOTH PAST AND PRESENT.

509.    DEFENDANTS EACH ENGAGED IN CONDUCT IN FURTHERANCE OF THEIR SCHEMES.

510.    DEFENDANTS CONDUCT TARGETED PLAINTIFF NOT ONLY INDIVIDUALLY, BUT ALSO BECAUSE OF HIS ASSOCIATIONS WITH OTHER INDIVIDUALS WHICH DENVER CONSIDERS TO BE MEMBERS OF GROUPS OF INDIVIDUALS WHO ENGAGE IN SIMILAR PROTECTED CONDUCT.

511.    DEFENDANTS VIOLATED CLEARLY WELL ESTABLISHED RIGHTS BELONGING TO PLAINTIFF TO ENJOY THE DUE PROCESSES OF LAW AND TO BE FREE FROM GOVERNMENT CONSPIRACIES.

512.    EACH DEFENDANT WAS AWARE OF THE UNLAWFUL SCHEMES TO "GET" ERIC BRANDT AND BRIAN LOMA AND ASSOCIATES.

513.    DEFENDANTS, AWARE PLAINTIFF'S RIGHTS WERE IMMINENTLY GOING TO BE VIOLATED IN FURTHERANCE OF THE CONSPIRACY, DID NOTHING TO INTERVENE AND STOP IT.

514.    DEFENDANTS DID NOT ATTEMPT TO TERMINATE THEIR OWN PARTICIPATION IN THE CONSPIRACY.

515.    UPON INFORMATION AND BELIEF, THERE EXISTS DOZENS OF RECORDS WHICH SUPPORT THIS ALLEGATION WHICH WILL BE REVEALED THROUGH THE DISCOVERY PHASE OF THIS SUIT.

516.    THIS IS A RARE SITUATION WHERE THE GOVERNMENT ACTUALLY PUBLISHED THEIR UNLAWFUL SCHEMES AGAINST PLAINTIFF.

517.    IN ADDITION TO LIABILITY UNDER 42 U.S.C. §1983, DEFENDANTS ARE ALSO LIABLE UNDER 42 U.S.C. §§ 1985 AND 1986 FOR CONSPIRACY CONDUCT.

INTENTIONALLY LEFT BLANK

T-2

(157)

TWELFTH CLAIM FOR RELIEF

SUPERVISORY LIABILITY

FAILURE TO TRAIN/SUPERVISE/DISCIPLINE

14TH AMENDMENT VIOLATIONS - §1983

AGAINST CHAVEZ, STARR-GIMENO, LUCERO,

BRONSON, PAZEN, ARCHER, DENVER

517.    BRONSON FAILED TO TRAIN AND SUPERVISE

HER LEAD PROSECUTING ATTORNEYS ~~DRAZEN~~ DRAZEN-

SMITH AND BORKOVSKY.

518.    PAZEN AND ARCHER FAILED TO TRAIN

AND SUPERVISE THEIR OFFICERS, INCLUDING

STARR-GIMENO, CHAVEZ, LUCERO, GARCIA AND

PHILLIPS.

519.    DEFENDANTS WERE WELL AWARE THOSE

PATTERNS OF ABUSE WERE BEING COMMITTED

AND FAILED TO TAKE ADEQUATE CORRECTIVE

ACTION.

520.    PLAINTIFF HAS GOOD FAITH BELIEF

THAT DISCOVERY WILL YIELD RECORDS

DEMONSTRATING INTENSE, HIGH-LEVEL

COMMUNICATIONS REGARDING THE GENRES

OF VIOLATIONS PUT FORTH THROUGHOUT

THIS COMPLAINT SPANNING MANY MONTHS.

521.    DEFENDANTS ACTED WITH DELIBERATE

INDIFFERENCE TO PLAINTIFF'S RIGHTS

WHEN THEY TOLERATED, CONDONED, RATIFIED

FOSTERED, AND SOMETIMES EVEN PROMOTED THESE VIOLATIONS.

522. CHAVEZ, WHO SUPERVISES LUCERO AND PHILLIPS DIRECTLY, ALREADY HAD HISTORY WITH THESE EXACT VIOLATION AGAINST THIS EXACT SET OF INDIVIDUALS AND CONTINUED TO ACT WITH DELIBERATE INDIFFERENCE.

523. DEFENDANTS IGNORED THIS SUBSTANTIAL HISTORY OF ABUSE, AND CONTINUED TO PERPETRATE THESE VIOLATIONS INTO THE FUTURE.

524. DEFENDANTS WERE CLEARLY ON NOTICE THAT TRAINING IN THESE PARTICULAR AREAS WAS DEFICIENT AND LIKELY TO CAUSE INJURY.

525. DENVER'S CUSTOMS, PRACTICES AND POLICIES FORM THE MOVING FORCE BEHIND THESE VIOLATIONS.

526. DENVER'S TRAINING PROGRAMS WERE INADEQUATE AND SO WIDESPREAD AS TO JUSTIFIABLY REPRESENT MUNICIPAL POLICY.

527. DISCOVERY PHASE OF THIS SUIT IS CERTAIN TO EXPOSE THESE FAILURES TO MORE CLOSELY REPRESENT WANTON MALICE THAN MERE RECKLESSNESS.

527.5 DEFENDANTS VIOLATED PLAINTIFF'S WELL-ESTABLISHED 14TH AMENDMENT RIGHTS TO DUE PROCESS OF LAW.

THIRTEENTH CLAIM FOR RELIEF

FACIAL CHALLENGE TO POLICE BAN

ON VIDEO RECORDING.

FIRST AMENDMENT VIOLATION -§1983

FOURTEENTH AMENDMENT -DUE PROCESS §1983

AGAINST BRONSON, PAZEN, ARCHER,

BORDONSKY, DENVER

528. DENVER POLICE DEPARTMENT INSTITUTED A BAN ON RECORDING CRIMINALLY PUNISHABLE PURSUANT TO 18- -117 - UNLAWFUL CONDUCT ON PUBLIC PROPERTY.

529. THIS BAN WAS IMPLEMENTED IN CONJUNCTION BY CHIEF PAZEN, ASST CHIEF ARCHER, CITY ATTY BRONSON, AND ASST CITY ATTY BORDONSKY.

530. IMPLEMENTING A REGULATION WITH CRIMINAL LIABILITY IS TANTAMOUNT TO A LEGISLATIVE ACT.

531. IT IS CLEARLY WELL ESTABLISHED THAT EXECUTIVE BRANCH OFFICIALS, SUCH AS THESE DEFENDANTS, MAY NOT ENGAGE IN LEGISLATIVE FUNCTIONS - OR QUASI-LEGISLATIVE CONDUCT - WITHOUT FOLLOWING ADMINISTRATIVE RULE-MAKING PROCEDURES.

532. THE CITY AND COUNTY OF DENVER REQUIRES EXECUTIVE OFFICIALS TO COMPLY

WITH DENVERS ADMINISTRATIVE RULE PROCEDURES;
THESE PROCEDURES ARE SIMILAR TO THE
ADMINISTRATIVE RULE-MAKING PROCEDURES ACTS
PROVISIONED FOR BOTH BY COLORADO STATE
LEGISLATION AND FEDERAL LEGISLATION.

533. DEFENDANTS IMPLEMENTED THEIR RECORDING
BAN REGULATION WITHOUT ENGAGING IN ANY
OF THE REQUIRED ADMINISTRATIVE RULE-
MAKING PROCEDURES WHAT SO EVER.

534. PAZEN AND BACHER ARE THE TOP
POLICY MAKERS FOR THE DENVER POLICE
DEPARTMENT.

535. THE RECORDING BAN WAS IMPOSED
NOT TO SECURE ANY LEGITIMATE GOVERNMENT
INTERESTS, BUT TO IMPROPERLY SHIELD
THEMSELVES FROM PUBLIC CRITICISM.

536. THE BAN IS UNCONSTITUTIONALLY OVERBROAD
BECAUSE IT IS NOT NARROWLY TAILORED
TO ACHIEVE A LEGITIMATE GOVERNMENT
INTEREST, IT LEAVES OPEN NO VIABLE
ALTERNATIVES FOR COMMUNICATION, AND IT
FORMS A RESTRICTION ON PRESS.

537. IT IS ONLY THROUGH CHIEF PAZEN'S
SELF AUTHORITY THAT A CITIZEN MAY
RECORD IN THE OPEN-TO-THE-PUBLIC
LOBBY(S) OF DENVER POLICE STATIONS.

XII-2

537. NO REASONABLE PERSON COULD BE COMPELLED TO BELIEVE PAZEN WOULD EVER GIVE PERMISSION TO RECORD HIS OFFICERS ENGAGED IN MISCONDUCT.

538. THE PUBLIC HAS A WELL-ESTABLISHED RIGHT TO RECORD POLICE IN PERFORMANCE OF THEIR DUTIES IN PUBLIC PLACES.

539. DENVER RECOGNIZED THIS RIGHT IN THEIR OWN TRAINING BULLETIN PUBLISHED 4 DAYS BEFORE IMPOSING THEIR BAN.

540. THIS RIGHT IS STATUTORILY LEGISLATED BY THE STATE OF COLORADO.

541. THE BAN IS CONTRARY TO STATE LEGISLATION.

542. PLAINTIFF HAS STANDING TO CHALLENGE THIS BAN BECAUSE HE DESIRES TO ENGAGE IN RECORDING IN THE FUTURE, HAS ENGAGED IN THIS CONDUCT IN THE PAST, AND HAS A LEGITIMATE FEAR OF ARREST SHOULD HE DO SO.

543. DENVER HAS ARRESTED MULTIPLE PEOPLE FOR VIOLATING THIS BAN; NONE HAVE EVER RESULTED IN CONVICTIONS.

544. DENVER DOES NOT RENOUNCE THEIR CONVICTION TO ARREST UNDER THIS BAN FOR FUTURE RECORDING ACTIVITY.

VII-3

162

~~THIRTEENTH CALL FOR RELIEF~~

AS APPLIED CHALLENGE TO
§18-9-106 C.R.S.
FIRST AMENDMENT VIOLATION - §1983
AGAINST GARCIA, CHAVEZ, STERN-GIMENO,
LUCERO, PHILLIPS, DENVER

545. TO THE EXTENT ANY DEFENDANTS MAY
NOT HAVE ACTUALLY KNOWN THEIR UNLAWFUL CONDUCT
WAS ILLEGAL, PLAINTIFF ASSERTS AN
AS-APPLIED CHALLENGE TO 318-9-106 (1)(a).

546. ENFORCEMENT UNDER THESE CONDITIONS
COULD NOT HAVE REASONABLY TENDED TO
INCITE AN IMMEDIATELY VIOLENT REACTION
BY ANYONE PRESENT.

547. RODRIGUEZ IS A UNIFORMED SECURITY
OFFICER WITH MANY YEARS OF TRAINING
AND EXPERIENCE IN DEALING WITH THE
PUBLIC, AN AS SUCH IS EXPECTED TO
ADHERE TO A HIGHER STANDARD.

548 PUBLIC EMPLOYEES ARE EXPECTED
TO ACCEPT VERBAL CRITICISM.

549. PLAINTIFF ENGAGED IN NO THREATS.

550. APPLICATION OF THIS LAW UNDER THESE
CIRCUMSTANCES WOULD PROSCRIBE PROTECTED
EXPRESSION THAT IS MERELY ANNOYING OR
INSULTING.

551. THIS IS TRUE EVEN IF THE "SHIT BAG" ALLEGATION
WERE TRUE.

(163)

# PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF PRAYS THIS COURT ENTER JUDGEMENT IN PLAINTIFF'S FAVOR AND ORDER AT LEAST THE FOLLOWING RELIEF:

(a) ALL APPROPRIATE RELIEF AT LAW AND EQUITY;

(b) ACTUAL DAMAGES ESTABLISHED AT TRIAL;

(c) COMPENSATORY AND PECUNIARY DAMAGES/LOSSES;

(d) SPECIAL DAMAGES;

(e) PUNITIVE DAMAGES;

(f) FORMAL HAND-WRITTEN APOLOGY LETTERS FROM EACH DEFENDANT;

(g) IMPOSITION OF POLICY CHANGES DESIGNED TO AVOID FUTURE MISCONDUCT OF THIS TYPE;

(h) MANDATORY TRAINING TO AVOID FUTURE SIMILAR MISCONDUCT;

(i) PRE AND POST-JUDGEMENT INTEREST AT THE HIGHEST LAWFUL RATES;

(j) APPLICABLE ATTORNEY, INVESTIGATIVE, AND LEGAL COSTS ASSOCIATED WITH THE CRIMINAL PROSECUTION AND THE CIVIL SUIT.

(k) INJUNCTIVE AND DECLARATIVE RELIEF AS ALLOWED BY LAW.

(l) SUCH FURTHER RELIEF AS JUSTICE DEMANDS.

PLAINTIFF DEMANDS TRIAL BY JURY ON ALL MATTERS SO TRIABLE.



ATTACHMENT A "OCCUPY DENVER" ACCORDING TO DENVER RECORDS REQUEST

U.S. POSTAGE PITNEY BOWES

ZIP 81054 $ 008.55°
02 4W
0000358347 SEP 09 2021

CONFIDENTIAL

LEGAL MAIL
SEP 09 2021

ERIC BIGNOT
191131
BENT COUNTY CORRECTIONAL FACILITY
11560 COUNTY ROAD FF. 75
LAS ANIMAS, CO 81054

CONFIDENTIAL

LEGAL MAIL
SEP 09 2021

BIGNOT V. GARCIA
21-CV-02140
1ST AMEND COMPLAINT
20035609

UNITED STATES DISTRICT COURT
901 19TH ST  RM 105A
DENVER, CO 80294

LEGAL MAIL
SEP 09 2021

CONFIDENTIAL



BCCF          9/9/21
FACILITY          DATE REC'D

Conley        A988651 A
DOC EMPLOYEE LAST NAME      ID #      INT

191131        BRANOT, F      SB
DOC #        OFFENDER LAST NAME    INT

CONFIDENTIAL

LEGAL MAIL

SEP 09 2021